Bethany G. Lukitsch (SBN 314376)
blukitsch@bakerlaw.com
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310-820-8800
Facsimile: 310-820-8859

Michael A. Kushner (SBN 335840)
mkushner@bakerlaw.com
**BAKER & HOSTETLER LLP**
600 Anton Blvd., Suite 900
Costa Mesa, CA 92626-7221
Telephone: 714-754-6600
Facsimile: 714-754-6611

*Attorneys for Defendants*
LOWE'S COMPANIES, INC. and
LOWE'S HOME CENTERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JUSTIN BRADSHAW, and GUSTAVO LOPEZ, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LOWE'S COMPANIES, INC., a North Carolina corporation, and LOWE'S HOME CENTERS, LLC, a North Carolina limited liability company,

Defendants.

Case No.: 3:25-cv-00742-DMS-MMP

[*Assigned to the Hon. Dana M. Sabraw*]

**DEFENDANTS LOWE'S COMPANIES, INC. AND LOWE'S HOME CENTERS, LLC's NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE § 638.51)**

*[Filed concurrently with Declaration of Bethany Lukitsch ISO Motion to Dismiss First Amended Class Action Complaint]*

Date: July 18, 2025
Time: 1:30 p.m.
Courtroom: 13A

**TO THE HONORABLE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 18, 2025 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 13A of the James M. Carter and Judith N. Keep United States Courthouse, located at 333 West Broadway, San Diego, CA 92101, Defendants Lowe's Companies, Inc. ("Lowe's Companies") and Lowe's Home Centers, LLC ("Lowe's Home Centers")[1] (collectively, "Lowe's") will and hereby does move (the "Motion") for an order dismissing Plaintiffs Justin Bradshaw and Gustavo Lopez's (collectively, "Plaintiffs") First Amended Class Action Complaint for Violation of California Invasion of Privacy Act, Cal. Penal Code § 638.51 ("FAC"). This Motion is made pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(2), and 12(b)(6) on the grounds that Plaintiffs have not established Article III standing, this Court does not have personal jurisdiction over Lowe's Companies, and Plaintiffs otherwise fail to state a claim against Lowe's upon which relief can be granted.

Lowe's bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities, and Proposed Order, the pleadings, papers and records on file in this action, and such oral argument as may be presented at the time of the hearing.

Dated: June 13, 2025

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch, Esq.
Michael A. Kushner, Esq.

*Attorneys for Defendants*
LOWE'S COMPANIES, INC. and
LOWE'S HOME CENTERS, LLC

[1] Lowe's Home Centers, LLC owns and operates lowes.com and all Lowe's stores. Lowe's Companies, Inc. is the parent company of Lowe's Home Centers, LLC.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. PROCEDURAL HISTORY ..... 3

III. BACKGROUND ..... 4

IV. LEGAL STANDARD ..... 6

A. Standard for Conferring Personal Jurisdiction. ..... 6

B. Standard for Constitutional Standing. ..... 7

C. Standard for Failure to State a Claim. ..... 7

V. ARGUMENT ..... 8

A. This Court Lacks Personal Jurisdiction Over Lowe's Companies, Inc. ..... 8

1. Lowe's Companies, Inc. Is Not Subject to General Jurisdiction. ..... 8

2. Lowe's Companies, Inc. is Not Subject to Specific Jurisdiction. ..... 9

B. Plaintiffs Lack Article III Standing. ..... 10

C. Plaintiffs Fail To State A Cause of Action Under Section 638.51 Because Neither The TikTok Cookie or Microsoft Cookie are a "Trap and Trace" Device. ..... 19

1. The Statutory Framework Confirms that Section 638.51 Only Applies to Devices Used for Telephonic Surveillance. ..... 20

2. The Legislative History of Section 638.51 Confirms That It Was Only Intended to Apply to Telephonic Surveillance. ..... 24

3. Plaintiffs' Application of Section 638.51 to the TikTok Cookie and Microsoft Cookie Contravene Public Policy. ..... 25

D. Plaintiffs' Claim Fails Because Lowe's Consented to The Use of The Website Technology on Its Website ..... 27

E. Plaintiffs Fail to Allege the Required Scienter. ..... 28

F. Plaintiffs Cannot Bring a Private Right of Action under CIPA Without Injury. ..... 29

G. Plaintiffs Have Failed to State a Claim Against Lowe's Companies ..... 29


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

VI. CONCLUSION .......... 30

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Application of United States of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) .................. 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................. 8

*Barragan v. Superior Court*, 148 Cal. App. 4th 1478 (2007) .................. 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................. 7

*Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009) .................. 27

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) .................. 10

*Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2007) .................. 26

*In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................. 28

*In re First T.D. & Inv., Inc.*, 253 F.3d 520 (9th Cir. 2001) .................. 21

*Gabrielli v. Insider, Inc.*, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .................. 29

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .................. 23

*Hartley v. Urb. Outfitters, Inc.*, 2024 WL 3445004 (E.D. Pa. July 17, 2024) .................. 17

*Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) .................. 29

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 29

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Sup. Mar. 13, 2024) .......... 22

*Lorillard v. Pons*,
434 U.S. 575 (1978) .......... 25

*Malibu Media, LLC v. Doe*,
2019 WL 2537671 (D. Conn. June 20, 2019) .......... 26

*Mejia v. Reed*,
31 Cal. 4th 657 (2003) .......... 21

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 29

*Miller v. Hearst Communications, Inc.*,
2012 WL 3205241 (C.D. Cal. Aug. 3, 2012) .......... 29

*Performance Designed Prods. LLC v. Plantronics, Inc.*,
2019 WL 3082160 (S.D. Cal. July 15, 2019) .......... 8

*Sparshott v. Feld Ent., Inc.*,
311 F.3d 425 (D.C. Cir. 2002) .......... 27, 28

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 10

*In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a Pen Reg. & Trap & Trace Device*,
890 F. Supp. 2d 747 (S.D. Tex. 2012) .......... 22, 23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 10

*In the Matter of the Application of the United States of America for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process, (2) Access to Customer Records, and (3) Cell Phone Tracking (“In re US”)*,
441 F. Supp. 2d 816 (S.D. Tex. 2006) .......... 20

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 26

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

*United States v. Jenkins*,
2019 WL 1568154 (N.D. Ga. Apr. 11, 2019) .......... 26

*United States v. Pacheco*,
225 F.3d 148 (2d Cir. 2000) .......... 25

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017) .......... 26

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 25

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 29

**Statutes**

Cal. Penal Code § 20 .......... 28

Cal. Penal Code § 637.2 .......... 29

Cal. Penal Code § 638.50 .......... 21

Cal. Penal Code § 638.51. .......... *passim*

Cal. Penal Code § 638.52. .......... 21, 22

Cal. Penal Code § 638.53 .......... 21

**Rules**

Fed. R. Civ. P. 12(b). .......... 7, 10

**Other Authorities**

2015 California Assembly Bill No. 929, California 2015–2016
Regular Session .......... 20, 24, 27

# I. INTRODUCTION

This action is part of a tidal wave of "pixel" litigation filed across the country—an attempt to apply criminal wiretapping law to nearly ubiquitous website analytics and advertising technology ("website technology"). Here, Plaintiffs Justin Bradshaw and Gustavo Lopez (collectively, "Plaintiffs") target Lowe's Home Centers, LLC's publicly accessible, free website, www.lowes.com (the "Website" or "Lowe's Website") for the use of certain website technology installed on the Website.

The FAC asserts a single cause of action against both Lowe's Companies, Inc. ("Lowe's Companies") and Lowe's Home Centers, LLC ("Lowe's Home Centers") (collectively, "Lowe's") for a violation of CIPA, claiming that Lowe's' use of popular and common website technology, including the TikTok Pixel ("TikTok Cookie") and Microsoft Bat Bing ("Microsoft Cookie"), constitutes an illegal "trap and trace" device under Cal. Penal Code § 638.51. Plaintiffs' claim, however, suffers from numerous flaws, none of which can be rectified through amendment.

*First*, this Court lacks personal jurisdiction to hear Plaintiffs' claim against Lowe's Companies, Inc., the parent company of Lowe's Home Centers, LLC, the owner and operator of the Lowe's Website. Lowe's Companies, Inc. is neither incorporated nor has its principal place of business in California. Further, Plaintiffs have not pled any facts connecting it to this action, nor could it. Its contacts with California, to the extent that they exist, have nothing to do with the purported installation of an alleged "pen register" on the Website that Lowe's Companies, Inc. neither owns nor operates.

*Second*, Plaintiffs lack Article III standing to bring this claim. The FAC is premised entirely on an alleged pure statutory violation. As the Supreme Court has made clear, however, an injury in law is not an injury in fact. Plaintiffs must allege something beyond a mere statutory violation to establish Article III standing—they must present factual allegations showing that they suffered a cognizable injury.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**Here, Plaintiffs fail to allege *any* facts about their alleged visits to the Website.** This is particularly pertinent because their FAC opines on what the TikTok Cookie and Microsoft Cookie *could potentially* collect, rather than asserting anything either cookie *actually collected*. Indeed, Plaintiffs fail to adduce any facts as to when their visits to the Website occurred, the devices/browsers used to visit the Website, whether they created a Lowe's account, what webpages they visited on the Website, whether they utilized the search function on the website, whether they purchased any items on the Website, whether they opted out of allowing the website technology to collect information, whether they actually have TikTok or Microsoft accounts, or, frankly, any pertinent details. Plaintiffs' boilerplate allegation that they have suffered a cognizable injury rings hollow given their complete failure to allege any facts identifying what Lowe's collected from them or any resulting injury.

*Third*, even if Plaintiffs have standing (they do not), Plaintiffs' claim would still fail because the website technology at issue does not qualify as a "trap and trace device" under CIPA as a matter of law. Specifically, the alleged website technology clearly falls outside of CIPA's intended scope based on the statute's plain language, legislative history, and analogous case law. Indeed, a "trap and trace device" involves the recording of telephone numbers associated with incoming calls and does not extend to software embedded on a website. Moreover, accepting Plaintiffs' strained reading of CIPA would have vast and harmful public policy implications. The very function of the internet relies on the exchange of information from a web user's browser to website, and without it, the internet could not exist.

*Fourth*, even if the website technology could be considered a trap and trace device, no violation of Section 638.51 exists because Lowe's Home Centers, as the Website's owner and a "user" of its "electronic communication service," plainly gave its consent, a codified exception to CIPA liability.

*Fifth*, Plaintiffs have failed to allege any facts (nor can they) showing that the Lowe's entities had the criminal intent necessary to establish a violation of CIPA—

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

a criminal statute that requires a showing of scienter. In fact, the FAC repeatedly recognizes that the website technology is used for analytics as well as advertising purposes, both legal reasons for installing the website technology.

*Sixth*, Plaintiffs fail to allege any actual harm, which in addition to its necessity for standing purposes, also is necessary under the plain text of CIPA. A private cause of action for an alleged violation of CIPA can only be brought by a plaintiff "who has been injured" by the alleged violation. Plaintiffs' failure to plead facts establishing this element, and their lack of actual injury, is just as fatal to their claim under Rule 12(b)(6) as it is under Rule 12(b)(1).

*Lastly,* to the extent this Court finds it has personal jurisdiction over Lowe's Companies, Plaintiffs' claim fails under Rules 8 and 12(b)(6) against this Defendant because Plaintiffs' alleged pen register violation consists of action taken solely on the Website and, other than conclusory group pleading, Plaintiffs have not identified any connection between Lowe's Companies and the Website actions which form the basis of the FAC.

For these reasons, and as further explained below, this Court should grant Lowe's' Motion and dismiss Plaintiffs' FAC with prejudice.

## II. PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint against Lowe's Companies on March 31, 2025. [ECF 1.] On June 2, 2025, counsel for the Parties participated in a telephonic, pre-filing conference with Judge Sabraw. Declaration of Bethany Lukitsch in Support of Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Lukitsch Decl."), ¶ 3. On this call, counsel for Lowe's Companies reiterated as stated in its informal statement in advance of the conference that Plaintiffs' Complaint wrongly sued Lowe's Companies and likely intended to sue Lowe's Home Centers, the owner of www.lowes.com. *Id.* The Court ordered Lowe's to provide Plaintiffs documents to verify the identity of the proper defendant and set deadlines for Plaintiffs' FAC and the anticipated motion to dismiss. [ECF 12.]

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

On June 5, 2025, Lowe's sent the Declaration of Sara Ash Regarding Named Defendant in Action ("Ash Decl.") to Plaintiffs via email correspondence. Lukitsch Decl., ¶ 4, Ex. A. In it, the Senior Counsel of Litigation at Lowe's Companies attested that Lowe's Home Centers, LLC, and not Lowe's Companies, Inc., owns and operates the lowes.com website, which forms the basis of the operative allegations, and the Lowe's stores in California. *Id*. at Ex. A. On June 10, 2025, and after reviewing Ms. Ash's Declaration, Plaintiffs filed their FAC naming *both* Lowe's Companies and Lowe's Home Centers as named defendants. [ECF 14.] On June 11, 2025, summons was issued for the newly added defendant Lowe's Home Centers. [ECF 15.] In an effort to avoid ambiguity, avoid repetitive briefing and ensure compliance with the Court's order [ECF 12], both Lowe's Home Centers and Lowe's Companies jointly move the Court for dismissal.

## III. BACKGROUND

Defendant Lowe's Companies is the parent company to Defendant Lowe's Home Centers. Ash Decl., ¶ 5. These entities, among others, collectively form Lowe's, a home improvement company. Notably, only Lowe's Home Centers operates Lowe's' retail stores across the United States (including California) as well as the Website, which is a consumer-facing retail website allowing visitors to browse Lowe's' products and services, find Lowe's stores and suppliers, and purchase products sold in the stores, among other related services. *See* www.lowes.com (last visited: June 13, 2025); *id.* at ¶¶ 3-4. Lowe's Companies neither operates the website or any physical Lowe's store in California. *Id.*

Plaintiffs' FAC provides essentially no information about themselves or their relationship with Lowe's, TikTok, or Microsoft, to the extent that such relationships exist. The sole allegation specific to Plaintiffs is that both claim to be California residents and both "visited the Lowes Website during the relevant period," a time period not defined in the FAC. FAC, ¶¶ 11, 12. Plaintiffs' FAC otherwise is noticeably silent as to when their visits to the Website occurred, the devices and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

browsers they used to visit the Website, whether they created or signed into a Lowe's account, whether this was their first visit to the Website, what webpages they visited on the Website, whether they utilized the search option on the Website, whether they entered/typed any information into the Website, whether they purchased any items on the Website, whether they opted out of allowing the website technology to collect information, or whether they actually have TikTok or Microsoft accounts. Finally, while Plaintiffs claim a "violation of privacy rights," they fail to allege any facts in support of any actual injury or reasonable expectation of privacy in any information allegedly collected while visiting the Website. *Id.*, at ¶ 57.

The remaining allegations are generic to a potential website visitor and speculate as to what the Website and technology *might be* configured to do. For example, the FAC generally alleges that Lowe's "secretly utilize[s] various trackers, including the TikTok Pixel and Microsoft Bing … to collect their IP addresses, unique identifiers, and browsing information." *Id.,* at ¶ 3. Plaintiffs allege that the TikTok Cookie generally "collects and reports supplementary metadata, including timestamp … IP address … unique identifiers … device details … and browser information." *Id.*, at ¶ 31. Further, the TikTok Cookie purportedly may engage "in a process known as 'fingerprinting' through which it collects as much information as possible about the Lowes Website user and matches that information to the existing data from TikTok's database that has been gathered from other website with the TikTok Pixel installed, which includes millions of users." *Id.*, at ¶ 32. They also allege the TikTok Cookie can use AutoAdvanced Matching technology, where visitor information "such as name, date of birth, and address" is sent to TikTok when submitted to a website that installed the TikTok Cookie. *Id.*, at ¶ 35.

Plaintiffs also identify the Microsoft Cookie as collecting a user's Microsoft ID, which is a "unique identifier that Microsoft generates and assigns to a specific browser to track users' activity across the internet" (FAC, ¶ 44), as well as "specific user actions," and "unique identifiers," and "information about the user." *Id.,* at ¶¶

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

44, 46. Plaintiffs do not specify what particular identifiers or user actions the Microsoft Cookie collects.

While Plaintiffs emphasize the TikTok and Microsoft Cookie's capabilities, the FAC plainly fails to connect those Cookies to any of Plaintiffs' purported visits to the Website. *See generally*, FAC. Plaintiffs generalize about what the website technology *might* be capable of doing (primarily on other websites, not Lowe's), but fail to identify any specific information captured by the website technology in connection with their own visits to the Website. Again, this is not surprising, given that ***Plaintiffs do not allege any facts about their alleged visits to the Website***. *See id*. Further, Plaintiffs do not allege that they ever affirmatively provided ***any*** information to Lowe's, such as their names or email addresses, such that they could possibly have been captured by the website technology. *Id*.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## IV. LEGAL STANDARD

### A. Standard for Conferring Personal Jurisdiction.

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis": it must satisfy the applicable state long-arm statute and federal due process. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994). But, California's long arm statute is coextensive with due process limits, requiring a single analysis. *See* Cal. Civ. Proc. § 410.10; *Greystone Hous. Found., Inc. v. Fantasy Holdings, LLC*, No. 16-CV-0300, 2016 WL 11621591 (S.D. Cal. May 19, 2016). Due process requires that a defendant have minimum contacts with the forum state such that exercising jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). General personal jurisdiction can be established if defendant's contacts with the forum state are "continuous and systematic," such that a defendant is considered "at home" in the state. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (finding absent exceptional circumstances, a corporation is at home if it is incorporated in or has its principal place of business in the state). Alternatively, specific personal jurisdiction

is met if there is a "strong relationship between the quality of the defendant's forum contacts and the cause of action." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986).

The plaintiff bears the burden of establishing personal jurisdiction over a defendant. *San Diego County Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1095 (S.D. Cal. 2018).

**B. Standard for Constitutional Standing.**

Under Federal Rule 12(b)(1), the Court must dismiss actions that lack subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). At the core of the Court's jurisdictional inquiry is Article III's standing requirement. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). The "'irreducible constitutional minimum' of standing consists of three elements": "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Lujan*, 504 U.S. at 560-61). Where a case is "at the pleading stage, the plaintiff must clearly allege facts demonstrating[] each element." *Ferry v. DF Growth REIT*, No. 22-cv-02001, 2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024) (cit. omitted).

**C. Standard for Failure to State a Claim.**

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. *See* Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*." *Id.* (emph. added). "Threadbare recitals of the elements of a cause of action,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Id.* at 679. Thus, wholly unelaborated claims do not fare well upon a motion to dismiss, as courts are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Performance Designed Prods. LLC v. Plantronics, Inc.*, No. 3:19-cv-00536, 2019 WL 3082160, at *3 (S.D. Cal. July 15, 2019) (cit. omitted).

## V. ARGUMENT

### A. This Court Lacks Personal Jurisdiction Over Lowe's Companies, Inc.

#### 1. Lowe's Companies, Inc. Is Not Subject to General Jurisdiction.

For a corporation, like Lowe's Companies, Inc., the place of incorporation and principal place of business are 'paradig[m] … bases for general jurisdiction." *Daimler*, 571 U.S. at 141 (internal citation omitted). Otherwise, only "in an exceptional case" should a court find a corporation's operations in the forum to be "so substantial and of such a nature as to render the corporation at home in that State," such that personal jurisdiction is appropriate. *Id.* at 761 n.19.

Lowe's Companies is incorporated in North Carolina, where its headquarters is also located. Ash Decl., ¶ 5. While Plaintiffs collectively describe Lowe's' contacts with California (FAC ¶ 8), they do not identify any specific purported contacts by Lowe's Companies. Simply put, the facts put forth by Plaintiffs do not suffice to establish the "exceptional case" for exerting general personal jurisdiction over Lowe's Companies. *See Daimler*, 571 U.S. at 139; *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127 (S.D. Cal. 2016) (no general personal jurisdiction where defendant was registered to do business in California, sold more products to purchasers in California than any other state, and operated nationally-accessible website with page specifically dedicated to California consumers); *Pestmaster*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Franchise Network, Inc. v. Mata*, No. 16-cv-07268, 2017 WL 1956927, at *3 (N.D. Cal. May 11, 2017) (no general personal jurisdiction where defendant's nationally accessible website did not target California consumers and defendant operated three physical locations in California).

2. Lowe's Companies, Inc. is Not Subject to Specific Jurisdiction.

Specific jurisdiction over a defendant exists only where the "'nature and quality' of the defendant's contacts with the forum state are significant in relation to the specific cause of action." *Decker Coal Co.*, 805 F.2d at 839 (quoting *Data Disc, Inc. v. Sys. Tech. Associates*, 557 F.2d 1280, 1287 (9th Cir. 1977)). This inquiry uses a three-prong test: *first,* the defendant must have "purposefully availed himself of the privilege of conducting activities in the forum;" *second*, plaintiff's claim must arise out of or result from the defendant's forum-related activities; and *third*, the exercise of jurisdiction must be reasonable. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986). Plaintiffs bear the burden of proving the first two prongs, but the burden then shifts to the defendant for prong three. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). However, if plaintiff fails to carry its burden, then "the jurisdictional inquiry ends and the case must be dismissed." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citation omitted)).

Here, Plaintiffs squarely fail the second element of this inquiry, which requires their claim to arise out of Lowe's Companies forum-related activities. Plaintiffs' only cause of action against Lowe's Companies is for the purported installation of a pen register device on the Website. Even if Lowe's Companies purposefully conducted activities in California, none of those contacts pertain to the Website because Lowe's Companies does not own or operate the Website. Ash

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Decl., ¶ 3.[2] Thus, no specific jurisdiction exists here.

**B. <u>Plaintiffs Lack Article III Standing.</u>**

The FAC should be dismissed pursuant to Rule 12(b)(1) because Plaintiffs fail to allege any facts that could plausibly demonstrate they have Article III standing. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Whether a harm qualifies as "concrete" hinges on whether the alleged injury to the plaintiff bears a "close relationship" to a harm "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). A "bare procedural violation divorced from any concrete harm ... does not suffice for Article III standing." *Id.* at 440. Indeed, an injury in fact does not necessarily exist merely because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. This is because, for purposes of Article III standing, "***an injury in law is not an injury in fact***." *Id.* (emph. added).

Moreover, naked assertions that a plaintiff suffered an invasion of privacy harm are not enough to establish standing. *TransUnion LLC*, 141 S. Ct. at 2204; *Kobayashi v. McMullin*, No. 2:19-CV-06591, 2023 WL 11822286, at *8 (C.D. Cal. July 7, 2023), *report and recommendation adopted*, 2023 WL 11822282 (C.D. Cal. Sept. 1, 2023) (claims that are "based upon nothing more than repeated conclusory allegations of 'invasion of privacy'" do not satisfy federal pleading requirements); *Starkey v. Rushmore Loan Mgmt. Servs. LLC*, No. SACV191588, 2019 WL 8989907, at *3 (C.D. Cal. Dec. 10, 2019) (finding use of the phrase "invasion of privacy" insufficient to allege injury-in-fact). Federal district courts have routinely dismissed similar claims for lack of standing, particularly where—as is the case here—plaintiffs fail to allege that any "specific personal information" was

[2] *Masry v. Lowe's Companies, Inc.,* 2024 WL 3228086 (N.D. Cal. 2024), is distinguishable. In that case, both Lowe's Companies and Lowe's Home Centers jointly contested personal jurisdiction based on different grounds and Lowe's Companies, Inc. did not raise the argument addressed here—that it does not own or operate the Website. The Court's holding likewise did not address this issue.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

intercepted by or improperly disclosed to a third party. *See, e.g.*, *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023) (finding lack of Article III standing where "[p]laintiff does not identify any personal or sensitive information she disclosed on the website"); *Lightoller v. Jetblue Airways Corp.*, No. 23-cv-00361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (Huff, J.) ("Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact."); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023) (Huff, J.) (motion to dismiss CIPA claim for lack of standing granted where no personal information was disclosed to or collected by the defendant); *Hughes v. Vivint, Inc.*, No. CV 24-3081, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (motion to dismiss granted for lack of injury-in-fact from defendant's use of "TikTok Software" on its website); *Gabrielli v. Insider, Inc.*, No. 24-cv-01566, 2025 WL 522515, at *8 (S.D.N.Y. Feb. 18, 2025) (dismissing Section 638.51 claim for lack of standing); *Xu v. Reuters News & Media Inc.*, No. 24 civ. 2466, 2025 WL 488501, at *4 (S.D.N.Y. Feb. 13, 2025) (same).[3]

Whether any of Plaintiffs' intangible harms constitute an Article III injury-in-fact hinges on whether Plaintiffs have suffered a well-pleaded injury under the "close … common-law analogue." *TransUnion LLC*, 141 S. Ct. at 2197.

Here, Plaintiffs' FAC falls woefully short of establishing that they suffered

[3] To the extent Plaintiffs seek to rely on their baseless allegations that the collection of otherwise anonymous information could be used by third parties to make an identification through a "fingerprinting" process (*see* FAC, at ¶ 32), any such attempt must fail. *See Vivint, Inc.*, *supra*, at *5 (holding that without an allegation that plaintiff has an account associated with the relevant third party's platform such that the collection of otherwise anonymous information could be used to make an identification through the "fingerprinting" process, no privacy harm could have occurred). Here, Plaintiffs do not allege that either of them maintained an account with TikTok or Microsoft. Thus, Plaintiffs' "fingerprinting" allegations relate only to what "fingerprinting" technologies are *generally* capable of. *See* FAC, at ¶ 32. Moreover, it is illogical that Plaintiffs could be somehow harmed by providing TikTok with information – such as name, type of device, email, etc. – that TikTok likely would already have if Plaintiffs signed up on TikTok's platform.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*any injury*—let alone a concrete injury sufficient to establish Article III standing. Plaintiffs only conceivable allegation of a harm suffered is that Plaintiffs' unspecified "private information was acquired by Lowes" through the website technology and that Plaintiffs suffered a "violation of privacy rights." FAC, ¶ 57. The common law analogue for this alleged violation of privacy harm—an invasion of privacy claim under California common law—requires pleading three "threshold issues": "a legally protected privacy interest, reasonable expectation of privacy, and serious invasion of privacy." *Loder v. City of Glendale*, 14 Cal.4th 846, 891 (Cal. 1997). To evaluate these issues, courts ask whether there exists a "reasonable expectation of privacy" in the information and whether the intrusion by defendant was "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Here, Plaintiffs do not and cannot plead—much less prove—any of these elements.

1. <u>Plaintiffs Have Not Plausibly Pled Any Collection of Their Personal Information.</u>

As courts routinely recognize in website activity cases, when there has been no disclosure of personally identifiable and private information, conclusory and factually unsupported allegations of "invasion of privacy" are wholly insufficient to establish injury in fact as a matter of law. *See Lightoller*, 2023 WL 3963823 (S.D. Cal. June 12, 2023) (no injury-in-fact from collection of website activity because plaintiff did not allege he disclosed personal information when visiting the website); *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-cv-0402, 2024 WL 5114133 at *4 (S.D. Cal. Dec. 13, 2024) ("Rather than identify personal information he shared during his visit to the Website, Plaintiff makes generalized and conclusory allegations" that "are insufficient to assert that Plaintiff suffered a concrete injury."); *Mikulsky*, 682 F. Supp. 3d at 864 (no injury-in-fact because Plaintiff did not "identify the specific personal information she disclosed that implicates a protectable privacy interest.") (internal quotation omitted); *Byars*, 2023 WL 2996686 at *3 (C.D. Cal.

Apr. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest."); *Hughes*, 2024 WL 5179916 at *5 ("As Plaintiff does not clearly allege what personalized information of hers was actually collected, she does not identify any harm to her privacy."); *Henson v. Turn, Inc.*, No. C 15-01497 JSW, 2018 WL 6605624, at *4 (N.D. Cal. Dec. 17, 2018) ("Because Plaintiffs have not alleged that their data is confidential and readily recognizable and identifiable as belonging to any particular person, the Court finds that they have failed to state a cognizable injury.").

Here, there can be no invasion of Plaintiffs' privacy because Plaintiffs do not and cannot allege that Lowe's collected any information that identifies them. Plaintiffs make no allegation that their name, postal address, email address, telephone number, birthdate or any other of their personal identifiers were collected. And while they do allege that Lowe's generally has the capability to collect "users' IP address," "unique identifiers," and "browsing information," (FAC, ¶ 25), none of these pieces of information ***identify Plaintiff***. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1023 (9th Cir. 2018) (listing "personal identifying information" as "names, account numbers, passwords, email addresses, billing and shipping addresses."). Consequently, Plaintiffs' invasion of privacy claim must fail. *See Hughes*, 2024 WL 5179916, at *5 (if "Plaintiff's identity would not be connected with the anonymous information, … [then] seemingly no harm would have occurred.").

Plaintiffs cannot be identified solely through an IP address, as an IP address does not "personally identify" any one person. *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. sec. 2703(d),* 830 F. Supp. 2d 114, 120 (E.D. Va. 2011) ("IP address information, by itself, cannot identify a particular person."); *see Gabrielli*, 2025 WL 522515 at *4 ("Not only does an IP address fail to identify the actual individual user, but the geographic information that can be gleaned from the IP address is only 'as granular as a zip code'"); *In re Nickolodeon Consumer Priv.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Litig.*, 827 F.3d 262, 283 (3d Cir. 2016) ("an IP address … would likely be of little help in trying to identify an actual person."). It can, at most, identify the *general* location of the gateway (or router) that the *user's device* was connected to when browsing the internet. *United States v. Kidd*, 394 F. Supp. 3d 357, 366 (S.D.N.Y. 2019) ("To be sure, an IP address does not refer to a physical location itself.").

Notably, however, an IP address does not indicate *who* is using the device or even identify any specific *device* on a network: if more than one device is used on a network, the IP address does not differentiate between devices on that network, and *all* devices on that network would be using the same IP address. *Kidd*, 394 F. Supp. 3d at 363-64 (IP address provides only "location at which one of *any number of computer devices* may be deployed") (emphasis added) (citing *United States v. Monroe*, 350 F. Supp. 3d 43, 49 (D.R.I. 2018); *U.S. v. Latham*, No. 06-CR-379, 2007 WL 4563459, at *4 (D. Nev. Dec. 18, 2007) ("a single IP address usually supports multiple computer devices"). Thus, it is common that one person can act through multiple IP addresses (e.g. by connecting to the internet from their home IP address and later, while using the same device, connecting from a different IP address associated with an airport, coffee shop, etc.), or that one IP address has numerous unique devices and persons connected to it (e.g. multiple internet users at a residential home or college campus). *See United States v. Jenkins*, No. 1:18-CR-00181, 2019 WL 1568154 at *4 (N.D. Ga. Apr. 11, 2019) ("IP address information … does not follow [a] person around. Indeed, *it does not even identify the user*, just the location of internet access.") (emphasis added); *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) (stating that IP addresses have no "bearing on any person's day-to-day movement."); *see also Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018) (copyright infringer could not be identified because "IP address, standing alone, does not create a reasonable inference that [the individual that registered the IP address] is also the infringer."). And IP addresses can change over time, as they are owned by internet service providers and simply

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

leased to particular gateway devices. *See In re Application of the U.S. for an Order Pursuant to 18 U.S.C. sec. 2703(d),* 830 F. Supp. 2d at 120 ("Depending on the ISP, a customer's IP address can change each time he logs on to the internet.") (citing *U.S. v. Christie*, 624 F.3d 558, 563 (3d Cir. 2010)); *Klimas v. Comcast Cable Communications, Inc.*, No. 02-cv-72054, 2003 WL 23472182 at *5 (E.D. Mich. 2003) ("[d]ynamic IP addresses constantly change and unless an IP address is correlated to some other information … it does not identify any single subscriber by itself."). In short, an IP address is ***neither device-specific nor user-specific.***

Because an IP address does not identify a person, courts have repeatedly rejected any notion of a cognizable injury based upon their collection. *Gabrielli*, 2025 WL 522515 at *4 ("…an IP address which cannot identify an individual user and at most conveys general geographic information does not justify [that a legally protected privacy interest is implicated]"); *United States v. Matish*, 193 F. Supp. 3d 585, 615 (E.D. Va. 2016) ("Generally, one has no reasonable expectation of privacy in an IP address when using the Internet."); *Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) ("There is no legally protected privacy interest in IP addresses alone[.]"); *Jenkins*, 2019 WL 1568154, at *5 ("Defendant Jenkins had no reasonable expectation of privacy in an IP address assigned by the Internet Service Provider[.]"); *Xu*, 2025 WL 488501 at *4 (collecting cases).[4]

For the same reason, to the extent that Lowe's could have collected other information such as "browsing information," unique identifiers, cookies, or device

[4] Given these characteristics, an IP address is analogous to a ZIP code. With only a ZIP code, one can identify the general area where something is located but cannot glean where exactly in that ZIP code something is located. Courts in California and elsewhere have routinely found that disclosure of a ZIP code alone does not result in an invasion of privacy. *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co*., 635 F. App'x 351, 354 (9th Cir. 2015) ("California does not recognize any common law or constitutional privacy right causes of action for requesting, sending, transmitting, communicating, distributing, or commercially using ZIP Codes."); *Hancock v. Urb. Outfitters, Inc.,* 830 F.3d 511, 514 (D.C. Cir. 2016) ("If, as the Supreme Court advised, disclosure of an incorrect zip code is not a concrete Article III injury, then even less so is Hancock and White's naked assertion that a zip code was requested and recorded without any concrete consequence.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

details[5] (FAC, ¶¶ 3, 24), there can be no invasion of privacy when such information is associated only with an IP address that does not identify either Plaintiff. *See, e.g.*, *Massie v. Gen. Motors, LLC*, No. 21-787, 2022 WL 534468 (D. Del. Feb. 17, 2022) ("Plaintiffs fail to explain how either GM's or Decibel's possession of anonymized, non-personal data regarding their browsing activities on GM's website harms their privacy interests in any way."). Indeed, courts have routinely found that there is no protectable privacy interest in such information even when it is connected to an individual device. *See Lightoller*, 2023 WL 3963823, at *4 (no standing to allege CIPA claim because text "entered into an information field" and pages visited were not "private" information); *Esparza v. Kohl's Inc.,* 723 F. Supp. 3d 934, 945-46 (S.D. Cal. 2024) (browser history is not sensitive, personally identifiable information); *Saeedy v. Microsoft Corp.*, No. 23-cv-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) ("[M]ouse movements, clicks, keystrokes, keywords, URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities" are insufficiently personal); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. July 12, 2012) ("The information disclosed to third parties … including a numeric code associated with a user and the URL of the profile page viewed, does not meet the standard set by California courts."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. July 15, 2021) (finding no cognizable privacy interest in keystrokes, page clicks, page views, and browsing activities); *Ji v. Naver Corp.*, No. 21 Civ. 5143, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "user and device identifiers" could not give rise to "a privacy injury"). Collectively, this information, at best, gives insight into the *device* that is being used

[5] As the name would suggest, a device identifier identifies only a *device* and not a specific person and can be shared by multiple persons. It cannot identify an individual without being connected to some other personal identifier, not alleged here. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (collection of device serial number cannot, on its own, identify an individual).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to access the website; not a person.

Plaintiffs fail to establish standing otherwise because Plaintiffs do not allege ***any facts about their visit to the Website whatsoever***, nor does the FAC identify any information that if collected (a fact they do not allege) would arise to the level of a privacy invasion. Plaintiffs ***do not*** allege: (1) when they visisted the Website, (2) the devices they used, (3) whether they created or signed into a Lowe's account, (4) what webpages they visited, (5) whether they made searches on the Website, (6) whether they made purchases on the Website, (7) whether they opted out of allowing the Website technology to collect information, (8) whether they have TikTok or Microsoft accounts, (9) what "electronic impulses" of theirs were captured (if any), (10) what information those electronic impulses contained, (11) how they got to the Website, (12) how they accessed the website (were they on public wifi, a work network, a public or private IP address); or (13) that they entered any personal or identifying information into the Website. *See generally*, FAC.

Plaintiffs' allegations about the TikTok Cookie and Microsoft Cookie are cast in hypothetical and conclusory terms and are entirely untethered to Plaintiffs' own experiences. *See generally, id.* General allegations about what the website technology *may be capable* of collecting do not sufficiently establish what the website technology *actually collected* from Plaintiffs (if anything). *See Hartley v. Urb. Outfitters, Inc.*, No. Civ. 23-4891, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."); *Gary v. Dynatrace, Inc.*, 747 F.Supp.3d 245, 249 (D. Mass. 2024) (description of how website technology "*could* be used" fall short of concrete injury) (emphasis in original). Aside from these vague allegations, Plaintiffs cannot plausibly claim that any personal information was collected from them or *caused them harm*, because they have not alleged any basic facts about their interactions with the Website.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2. Plaintiffs Cannot Claim a Reasonable Expectation of Privacy in Any Information Collected by Lowe's.

Even if the Court were to overlook Plaintiffs' failure to plead that they provided, and Lowe's collected, information that identifies Plaintiffs, they also fail to establish the *reasonable expectation of privacy* required for standing. Whether and to what extent a reasonable expectation of privacy exists depends on "the sort of information revealed" by the purported invasion. *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1271 n. 17 (9th Cir. 1998). Given Plaintiffs' failure to sufficiently identify *any* of their personal information that was captured by the website technology, Plaintiffs have not fulfilled their burden in establishing that a reasonable expectation of privacy exists in the information at issue, which appears to be basic browsing information from Plaintiffs' visits to the Website.

However, even if Plaintiffs can establish a *subjective* view that any unidentified information collected was afforded a reasonable expectation of privacy, Plaintiffs must establish that their subjective belief was also *reasonable*. Here, the Website is publicly available and does not specialize in collecting particularly sensitive information, like an online medical portal or a bank website might. It is untenable that Plaintiffs had a reasonable expectation of privacy in information that they have failed to identify.

3. Nothing Lowe's Did Was Highly Offensive.

Even if Plaintiffs could establish that any information collected was identifiable and attributable to them (versus a device or IP address) and that they had a reasonable expectation of privacy in the information purportedly collected (they cannot), they still fail to show that Lowe's engaged in "highly offensive" conduct. Although the highly offensive test is context-specific, the alleged invasion must be "sufficiently serious and unwarranted as to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 295 (Cal. 2009). No court has found that the collection and disclosure of general location information,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

like the information obtained from an IP address or ZIP code, device identifiers or general browsing information on a public, unauthenticated website are "highly offensive." *See Esparza,* 723 F. Supp. 3d at 946 (capture of "Plaintiff's 'personal details' and 'browsing history,'…and IP address…is insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest."); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (Cal. Ct. App. 2011), *as modified* (June 7, 2011) (finding that the collection and use of ZIP codes "does not meet the standard of 'highly offensive'") (internal quotes omitted); *In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of "the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices…does not constitute an egregious breach of social norms"). In fact, California courts have dismissed invasion of privacy claims (under both California's Constitution and common law) when far more sensitive data allegedly was collected and disclosed. *See, e.g., Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (disclosure of Social Security Numbers "do[es] not constitute an egregious breach" of social norms); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d at 864 (no standing because "basic contact information does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts"). Because Plaintiffs have not alleged any identifying information of theirs that the technology at issue collected, that held a reasonable expectation of privacy, or that Lowe's alleged acts were highly offensive, Plaintiffs' purported "invasion of privacy" is not a cognizable injury-in-fact and the matter must be dismissed.

### C. <u>Plaintiffs Fail To State A Cause of Action Under Section 638.51 Because Neither The TikTok Cookie or Microsoft Cookie are a "Trap and Trace" Device.</u>

Even if Plaintiffs can establish standing (which they cannot), the alleged website technology does not constitute a trap and trace device as a matter of law.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs (and their counsel) advance a grossly expanded definition of a "trap and trace" device well beyond its intended use (as an investigatory tool for law enforcement) by applying it to a popular internet technology. Plaintiffs' application should be rejected for several reasons. *First*, the statutory framework of CIPA makes clear that Section 638.51 only applies to trap and trace devices that are used in ***telephonic*** surveillance. *Second*, the legislative history ***confirms*** that Section 638.51 was intended only to apply to telephone devices. And *third*, applying CIPA to website software would be contrary to public policy and common sense as it would essentially criminalize basic website functionality and overload the courts.

1. <u>The Statutory Framework Confirms that Section 638.51 Only Applies to Devices Used for Telephonic Surveillance.</u>

Cal. Penal Code § 638.51 makes it unlawful for a person to "install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Historically, pen registers and trap and trace devices have been used by law enforcement personnel to capture data related to telephone calls and conduct telephonic surveillance. *See In the Matter of the Application of the United States of America for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process, (2) Access to Customer Records, and (3) Cell Phone Tracking* ("*In re US*"), 441 F. Supp. 2d 816, 818 (S.D. Tex. 2006) ("In 1986, Congress enacted the ECPA to regulate the process under which law enforcement could install…trap and trace devices, ***which capture phone numbers of incoming calls***."); *see also* California Bill Analysis, A.B. 929 Assem. ("Bill Analysis, A.B. 929") (April 21, 2015); *see also* Bill Analysis, A.B. 929 (pen registers and trap and trace devices "generally track ***incoming and outgoing telephone calls***" and "are often utilized by law enforcement to track which people in an investigation are communicating with one another.") (emph. added).

CIPA *generally* defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). While the definition of "trap and trace" does not explicitly address whether general website software is covered under CIPA; given its historical usage, and the cross-referenced provisions in Sections 638.52 and 638.53, it clearly does not.

Indeed, as outlined in Sections 638.52 and 638.53, *before* ***law enforcement*** can use a trap and trace device they must obtain a court order. To obtain a court order, however, law enforcement must provide specific information related to ***the particular telephone they are seeking to trap and trace***. Cal. Penal Code §§ 638.52(d)(1)-(3) (requiring that an order "authorizing or approving the installation and use of a pen register or a trap and trace device" shall specify, *inter alia,* the "identity, if known, of the person to whom is leased or in whose name is listed the ***telephone line*** to which the pen register or trap and trace device is to be attached" and the "***number*** and, if known, physical location of the ***telephone line*** to which the pen register or trap and trace device is to be attached[.]"; Cal. Pen. Code, § 638.52(c) ("Information acquired solely pursuant to the authority for a pen register, or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the ***telephone number***.") (emph. added).

The numerous references to telephones or telephone numbers in Sections 638.52 and 638.53 demonstrate that a "pen register" and "trap and trace device" apply only to the interception of specific, targeted ***telephonic communications***, and not to IP addresses or other data, if any, captured by general website advertising technology.[6] To hold otherwise would lead to absurd results. In effect, a party could

[6] When a federal court interprets a California statute, California's rules of statutory construction and interpretation apply. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). California's "well-established rules of statutory construction" require that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." *Mejia v.*





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

be held liable for using a trap and trace device without a court order when (because the technology used does not involve a telephone line) a court order could never be issued. That is what Plaintiffs' interpretation is seeking here. A court order to use the website technology as a "trap and trace" device could never be issued because compliance with Section 638.52 requires the identification of a "telephone line" to which the software could "attach." *See Barragan v. Superior Court*, 148 Cal. App. 4th 1478, 1484 (2007) (Under California law, courts should "not interpret statutes in a manner that results in absurd consequences that could not have been intended by the Legislature."). The only logical way to give effect to *both* Sections 638.51 and 638.52 is to limit the applicable trap and trace devices to those that could be used after obtaining a court order. Because the website technology at issue here does not involve telephonic communications, it cannot be connected to a telephone line, and therefore a court order could never be obtained, so Section 638.51 does not apply.

Several cases involving similar allegations have held that a "trap and trace device" is limited to its more traditional definition and does not apply to website-use technologies like the website technology complained of here. *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Sup. Mar. 13, 2024); *In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a Pen Reg. & Trap & Trace Device*, 890 F.Supp.2d 747 (S.D. Tex. 2012). In *Hickory Farms*, the plaintiff sued for violation of the trap and trace laws based on the defendant's installation of software on its website. The court dismissed, finding allegations related to "a 'device' without any actual specific reference to a mobile phone or other potential form of communication device potentially qualifying as a cellular device," fail to allege a violation of Section 638.51. *Id.*

In *In re Trap & Trace Device*, the court considered whether a "stingray" device was either a pen register or a trap and trace device under identical language

---

*Reed*, 31 Cal. 4th 657, 663 (2003). As such, Sections 638.51 and 638.52 "must be read together and so construed as to give effect, when possible, to all the provisions thereof." *Id.*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

used in the analogous federal Pen/Trap statute. 890 F. Supp. 2d at 748. There, the stingray was capable of "detect[ing] radio signals emitted from wireless telephone numbers in the vicinity of the [subject of the investigation]" and "identify[ing] the telephones (e.g., by transmitting the telephone's serial number and phone number to the network for authentication)," in order to ultimately identify "the telephone number corresponding to the [Subject's] Telephone." *Id*. The court focused on the plain language of the Pen/Trap statute, including the prerequisites that need to be met before an order authorizing a trap and trace or pen register device can be issued, and found that the stingray did not qualify as one such device. *Id.* Looking to Congress's "mandate" that "the telephone number or other such identifier" of the target of the device be included in the order, the court questioned how it could possibly include the target number if the device was being used to identify the target number in the first place. *Id.* at 751. In other words, unless a trap and trace device is attached or assigned to a specific telephone or account, as opposed to *all* devices within a general vicinity, it cannot be a trap and trace device within the Pen/Trap statute's purview.

The factual scenario here is even more attenuated than the stingray scenario, but the *In re Trap & Trace Device* logic still applies. Plaintiffs do not allege that Lowe's attached a trap and trace device to *their* computer. Instead, they claim that the software was installed ***on Lowe's website*** which they voluntarily visited. FAC, at 25. As discussed above, this theory cannot be squared with the plain language of CIPA and requires the dismissal of the FAC with prejudice.[7]

[7] Any reliance on *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) (Bashant, J.) would be misplaced. In *Greenley*, the court found that the plaintiff plausibly alleged that a third-party data broker violated Section 638.51 by surreptitiously installing tracking software ***on plaintiff's cell phone***. Here, unlike *Greenley*, the website technology is allegedly embedded on Lowe's Website—there is no allegation or connection to a telephone of any kind. *See generally*, FAC.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2. <u>The Legislative History of Section 638.51 Confirms That It Was Only Intended to Apply to Telephonic Surveillance.</u>

As outlined above, the explicit wording of Section 638.51 clearly indicates that it pertains solely to telephone communications. Should the Court find any ambiguity and want guidance beyond its plain language, the legislative history of Section 638.51 further supports Lowe's' position, confirming that the Legislature did not intend for Section 638.51 to apply to website technology like the technology alleged here.

In 2015, the Legislature enacted (and the Governor signed) Assembly Bill 929, which introduced various provisions to the California Penal Code regarding the "trap and trace device" language relevant to this case. *See* 2015 California Assembly Bill No. 929, California 2015–2016 Regular Session ("Assembly Bill 929"). The Legislative Counsel's Digest, at the beginning of Assembly Bill 929, explained the purpose of the bill: to "clarify that any location information obtained by a pen register or a trap and trace device is limited to the information that can be determined ***from the telephone number***." *Id.* (emph. added). Additionally, Regular Session comments clearly limit the application to a telephone. *See* Senate Committee on Public Safety Bill Analysis, AB 929, 2015-2016 Regular Session (June 15, 2015) ("…a pen register/trap and trace device *only records the numbers dialed to or from a **particular phone number***."); Assembly Floor Bill Analysis, AB 929, 2015-2016 Regular Session (July 8, 2015)) ("… a 'pen register' [] allows law enforcement officers to record all outgoing *numbers from a particular **telephone line***.") (emph. added).

Had the Legislature intended to prohibit data collection from website software or cookies, it could have explicitly done so. Nothing in the legislative history supports the application of Section 638.51 to the operation of website technology despite the prevalent use of such technology at the time it was enacted. Indeed, unlike other portions of CIPA, the relevant provisions, §§ 638.50 *et seq.*, were



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

enacted in 2015—at a time when the internet and website tracking software were both known and highly utilized. Thus, there is no need for the Court to evaluate whether they were intended to evolve and apply to future (unimaginable) technologies. *See, e.g., In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1227 (C.D. Cal. 2017).

Courts interpreting the exact language that CIPA adopted from the federal Pen Register Act have concluded that the prohibited devices apply solely to those that can be "attached to a telephone line." *See, e.g., Application of United States of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995). Specifically, the *Cellular Tel. Digit. Analyzer* court opined that the specific language and references to telephones throughout the Pen Register Act "cannot be assumed to be inadvertent." *Id.*; *see also Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("Where … Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."); *United States v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000) (Under the "whole act rule," a statutory provision is to be "interpret[ed] . . . in a way that renders it consistent with the tenor and structure of the whole act or statutory scheme of which it is a part.") (cit. omitted). Similarly, the numerous references to telephone communications within the statute provide clear insight into the legislature's intent. Thus, the statute's plain language and legislative history point to the same conclusion: Section 638.51 ***does not*** apply to the website technology on the Website.

3. Plaintiffs' Application of Section 638.51 to the TikTok Cookie and Microsoft Cookie Contravene Public Policy.

Setting aside that Plaintiffs have not alleged any facts to suggest that any information was collected from them during their visits to the Website (which is dispositive), Plaintiffs' strained interpretation of Section 638.51 would essentially break the internet by either significantly impairing how websites operate and



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

criminalizing even basic general website functionality, or requiring the logical absurdity of companies cluttering the courts, continuously seeking court orders in advance of every new IP address created. For example, Plaintiffs generally allege that the website technology "gathers IP addresses, unique identifiers, and browsing information", as well as "timestamp," "device details," and "browser information." FAC, ¶¶ 3, 31. As discussed above, these allegations merely suggest that Lowe's obtains ***IP addresses*** from visitors, which identify the approximate geographic location of the device at the time they visited the website. But, website owners ***must*** "necessarily capture [a visitor's IP address] … to operate the website." *Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093, 2007 WL 2080419 (C.D. Cal. May 29, 2007); *see also United States v. Ulbricht*, 858 F.3d 71, 84 (2d Cir. 2017) (An IP address "indicates the online identity of the communicating device."); *Jenkins*, 2019 WL 1568154 at *4 ("IP address information merely shows the location at which a device accesses the internet during a specific session.").

Not only must a user provide their device's IP address to view a given webpage, but this offering is also *voluntarily* and *intentionally* made by the user to send their viewing request. *See Forrester*, 512 F.3d at 510 ("IP addresses are not merely passively conveyed through third party equipment but rather are voluntarily turned over in order to direct the third party's servers."). By virtue of this voluntary exchange, courts—including the Ninth Circuit—have held that internet users ***have no expectation of privacy in their devices' IP address***. *See Ulbricht*, 858 F.3d at 96 ("[A] 'person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," including "IP addresses."); *id.* at 510 ("Internet users have no expectation of privacy in the … IP addresses of the websites they visit."); *Malibu Media, LLC v. Doe*, No. 3:19-cv-00808, 2019 WL 2537671, at *3 (D. Conn. June 20, 2019) ("[T]here is no expectation of privacy in . . . an IP address.").

Accordingly, the mere collection of an IP address cannot be a violation of Section 638.51. Finding otherwise would open the door for *any* website owner to



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

theoretically incur *criminal* liability anytime someone visited their website, making it logically and financially unsound to operate a website. The reverberating effect that this decision would have on internet usage and the economy at large cannot be overstated. As one court aptly recognized, "the Internet could not function" if we criminalize the collection of IP addresses "because standard computer operations require recording IP addresses." *Capitol Records Inc. v. Thomas-Rasset*, No. 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009).

**D. Plaintiffs' Claim Fails Because Lowe's Consented to The Use of The Website Technology on Its Website.**

Even *assuming arguendo* that the website technology can constitute a trap and trace device (which it cannot), Plaintiffs' claim would still fail because Section 638.51 includes an exception for the use of pen registers and trap and trace devices "if the ***consent of the user of that service*** has been obtained." Cal. Pen. Code § 638.51 (b)(5) (emph. added). Here, based on Plaintiffs' own allegations, Lowe's (and not Plaintiffs) is the "user" of the website technology, an electronic service, and Lowe's has "consented" to its limited use on its Website. *See, e.g.*, FAC, ¶ 25 ("***Lowe's has implemented the Trackers on its website***…") (emph. added).

The statute's use of the singular "user" for Section 638.51's consent requirement is a notable and intentional departure from other provisions of CIPA (such as Section 631's prohibition on wiretapping), that require the consent of all parties. Because pen registers and trap and trace devices do not provide the "content of the messages," they are not subject to the same level of scrutiny as wiretaps. *See* Assembly Bill 929, California 2015-2016 Regular Session. Indeed, if it was a requirement to obtain the consent of *all* parties before installing a trap and trace device, then "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting identical provision of federal law on which Section 638.51 was modeled). A caller ID system, after all, enables the recipient of an inbound

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

communication to identify and record the identity of the initiating party. *See id.* Therefore, if statutes like Section 638.51 were interpreted (contrary to their text) to require the consent of all parties to any communication, then all users of caller ID would be subject to criminal liability—since such users do not first obtain consent from incoming callers before retrieving their identity through the caller ID system. *See id.*; *see also In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (finding that because website operators are the "users" of advertising cookies placed on their website, a similar consent exception in the Electronic Communications Privacy Act applied). The same reasoning applies to Section 638.51 and warrants the same conclusion. The "user" consent exception under Section 638.51(b)(5) applies to Lowe's, and Plaintiffs have expressly alleged that Lowe's consented to the use of the website technology on its Website. Consequently, Plaintiffs' claim fails.

**E. <u>Plaintiffs Fail to Allege the Required Scienter.</u>**

Because CIPA is a criminal statute, to establish liability, Plaintiffs must establish scienter. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent"). Even if the website technology would qualify as a trap and trace device (it does not) to be liable under Section 638.51, Lowe's must have installed the website technology with knowledge and intent that it illegally identifies anonymous visitors without a court order. Here, Plaintiffs have not alleged (nor can they) that either Lowe's entity had any such intent or knowledge. Even accepting the FAC's allegations as true, ***it is third parties and not Lowe's*** who are able to identify the source of a wire or electronic communication. *See e.g.*, FAC, at ¶ 32 ("The TikTok [Cookie] … matches that information to the existing [collected] data from TikTok's database"). Thus, Plaintiffs have not alleged any facts (nor can they) that *Lowe's* did any identifying or had any intent to do so in violation of criminal law. To the contrary, Plaintiffs allege the opposite—perfectly legal activity (analytics and advertising). *See id.*, at ¶

36 ("Lowe's can use the information for analytics as well as for advertising purposes."). Plaintiffs' inability to allege that Lowe's possessed the requisite scienter is dispositive. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."). Accordingly, Plaintiffs' purported criminal violation fails and must be dismissed with prejudice.

### F. Plaintiffs Cannot Bring a Private Right of Action under CIPA Without Injury.

Finally, Plaintiffs' claim also fails because they have not suffered injury as a result of any alleged violation of CIPA. By CIPA's very terms, a plaintiff may only bring a private right of action if they have "***been injured by a violation*** of this chapter[.]" Cal. Penal Code § 637.2 (emph. added). In other words, to bring suit for a violation of CIPA, Plaintiffs must adequately allege not only a violation but also that the violation resulted in some other injury. *Miller v. Hearst Communications, Inc.*, No. CV 12-0733, 2012 WL 3205241, at *7 (C.D. Cal. Aug. 3, 2012) ("Because Plaintiff fails to allege a cognizable injury, she lacks statutory standing for her…claim, regardless of whether her allegations are sufficient to state a violation of the…law"). As detailed in Section V.A, Plaintiffs have not suffered a cognizable injury to support their CIPA claim. They have not identified any actual concrete harm suffered through the Website's data practices that in addition to an alleged technical statutory violation would support a claim. *See, e.g., Hughes*, 2024 WL 5179916; *Mikulsky*, 682 F. Supp. 3d at 864-65; *Gabrielli*, 2025 WL 522515; *Xu*, 2025 WL 488501. Plaintiffs therefore cannot bring a private action under CIPA against Lowe's.

### G. Plaintiffs Have Failed to State a Claim Against Lowe's Companies

Lastly, should Plaintiff's claim against Lowe's Companies survive the jurisdictional challenges outlined above (it should not), their claim must be

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

dismissed as to Lowe's Companies under Rules 8 and 12(b)(6) because Plaintiffs have failed to allege any facts to support that Lowe's Companies had any involvement in operation of the Website. Plaintiffs inappropriately group both entities as "Lowe's" and, without distinction or specificity, claim both are responsible for the alleged installation of a trap and trace device on the Website. Plaintiffs' vague group pleading fails under Rule 8 and likewise fails to support a cognizable legal theory that Lowe's Companies placed or was responsible for the alleged trap and trace device on a Website it does not own or operate. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations not entitled to presumption of truth); *see also Evans v. Sherman*, No. 1:19-cv-00226, 2020 WL 1923176, at *3 (E.D. Cal. Apr. 21, 2020) (plaintiff who "simply lumps all defendants together" makes it "impossible for the Court to draw the necessary connection between the actions or omissions" of the various defendants); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole") (quotation marks and citation omitted). Thus, this claim must be dismissed.

## VI. CONCLUSION

For all of the foregoing reasons, Lowe's respectfully requests that the Court dismiss Plaintiffs' FAC in its entirety with prejudice.

Dated: June 13, 2025

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Michael A. Kushner

*Attorneys for Defendants*
LOWE'S COMPANIES, INC. and
LOWE'S HOME CENTERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES