Jonathan D. Uslaner (Cal. Bar No. 256898)
(jonathanu@blbglaw.com)
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

Don Bivens (*pro hac vice* forthcoming)
(don@donbivens.com)
**DON BIVENS PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Tel: (602) 762-2661

*Counsel for Plaintiffs*

[Additional counsel listed on signature page.]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JUSTIN BRADSHAW, and GUSTAVO LOPEZ, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

LOWE'S COMPANIES, INC., a North Carolina corporation, and LOWE'S HOMES CENTERS, LLC, a North Carolina limited liability company,

Defendants.

Case No.: 3:25-cv-00742-DMS-MMP

*Assigned to the Hon. Dana M. Sabraw*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS LOWE'S COMPANIES, INC. AND LOWE'S HOME CENTERS, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE §638.51)**

Date: July 18, 2025
Time: 1:30 p.m.
Courtroom: 13A

Filed concurrently with:

1. *Declaration of Avi Josefson*
2. *Request for Judicial Notice*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 4

ARGUMENT ........ 6

A. The Court Has Personal Jurisdiction Over Lowe's Companies ........ 7

B. The Web Trackers are "Pen Registers" Under CIPA ........ 10

C. Plaintiffs Have Standing ........ 17

1. Plaintiffs Allege That They Visited The Lowes Website And That Lowes' Web Trackers Collected Their Information ........ 17

2. Statutory Violations Alone Are Sufficient To Give Rise To Claims Under CIPA Section 638.51 ........ 20

D. Defendants Remaining Arguments Fail ........ 25

CONCLUSION ........ 28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 6, 7

*Autobidmaster, LLC v. Alpine Auto Gallery, LLC*,
2015 WL 2381611 (D. Or. May 19, 2015) .... 9, 10

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .... 7, 10, 28

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .... 15, 22

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .... *passim*

*Evans v. Sherman*,
2020 WL 1923176 (E.D. Cal. Apr. 21, 2020) .... 28

*Friddle v. Epstein*,
21 Cal. Rptr. 85 (Cal. Ct. App. 1993) .... 20

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .... 22

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .... 20

*Grace v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) .... 23, 24

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .... 11, 12

*Heiting v. FKA Distrib. Co. LLC*,
2025 WL 1430663 (C.D. Cal. May 15, 2025) .... 24, 25, 26, 28

*Heiting v. FKA Distrib. Co. LLC*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .... 24, 28

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........................................................... 26

*Hill v. Gergun Transp., Inc.*,
2024 WL 4203379 (E.D. Cal. Sept. 16, 2024) ....................................................... 9

*Hughes v. Vivint*,
2024 WL 5179916 (N.D. Cal. July 12, 2024) ........................................................ 21

*iCall, Inc. v. Reliance Commc'ns Ltd.*,
2010 WL 11583236 (N.D. Cal. Sept. 16, 2010) ...................................................... 10

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. Nov. 8, 2023) ...................................................... 12

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ..................................................... 11, 13

*Kishani v. Royal Caribbean Cruises, Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ............................................ 23, 24, 25

*Kobayashi v. McMullin*,
2023 WL 11822286 (C.D. Cal. July 7, 2023) ........................................................ 21

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Sup. Mar. 13, 2024) ....................................................... 16

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .................................................. 15, 22

*Loder v. City of Glendale*,
14 Cal.4th 846 (Cal. 1997) .................................................................................. 3

*Masry v. Lowe's Cos., Inc.*,
2024 WL 3228086 (N.D. Cal. June 28, 2024) ........................................................ 8

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ....................................................... 12

*Meredith v. Oregon*,
321 F.3d 807 (9th Cir. 2003) ............................................................................. 16

*Mikulsky v. Bloomingdale's LLC*,
2024 WL 3091395 (S.D. Cal. May 14, 2024) ......................................................... 7

*Mikulsky v. Bloomingdale's, LLC*,
2025 WL 1718225 (9th Cir. June 20, 2025) ........ *passim*

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 865 (S.D. Cal. 2023) ........ 21

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ *passim*

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ *passim*

*In re Nexus 6P Prod. Liab. Litig.*,
293 F. Supp. 3d 888 (N.D. Cal. 2018) ........ 28

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 21

*Ribas v. Clark*,
38 Cal.3d 355 (Cal. 1985) ........ 20

*Ribas v. Clark*,
696 P.2d 637 (Cal. 1985) ........ 11

*Ryan S. v. UnitedHealth Group, Inc.*,
98 F.4th 965 (9th Cir. 2024) ........ 6, 7

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ........ *passim*

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. Oct. 21, 2024) ........ 14, 25

*Smith v. LoanMe, Inc.*,
483 P.3d 869 (Cal. 2021) ........ 11

*Starkey v. Rushmore Loan Mgmt. Servs. LLC*,
2019 WL 8989907 (C.D. Cal. Dec. 10, 2019) ........ 21

*In the Matter of the Application of the United States of America for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process (2) Access to Customer Records, and (3) Cell Phone Tracking ("In re US")*,
441 F. Supp. 2d 816 (S.D. Tex. 2006) ........ 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 22, 23, 24

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 15

*Usher v. City of Los Angeles*,
828 F.2d 556 (9th Cir. 1987) .......... 7

*Wakefield v. ViSalus Inc.*,
51 F.4th 1109 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1756 (2023) .......... 22, 23, 24

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... *passim*

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 14

**STATUTES AND RULES**

15 U.S.C. §1681 (Fair Credit Reporting Act) .......... 21

18 U.S.C., Ch. 119 (Electronic Communications Privacy Act) .......... 23

21 U.S.C. §841 .......... 12

Cal. Civ. Code §1785 .......... 21

Cal. Penal Code §630 .......... 10

Cal. Penal Code §631(a) .......... 22, 26

Cal. Penal Code §632.7 .......... 22

Cal. Penal Code §638.50 .......... *passim*

Cal. Penal Code §638.51 .......... *passim*

Cal. R. Prof. Conduct 3.3 .......... 14

Fed. R. Civ. P. 8 .......... 18

## INTRODUCTION

Defendants operate the Lowes Website,[1] which uses technology provided by third parties (TikTok and Microsoft) to secretly collect personally identifiable information from every person who visits the website. That information is shared with TikTok and Microsoft, which combine the information secretly gathered from the Lowes Website with data gathered elsewhere to build robust profiles of every such person. Defendants' motion to dismiss does not deny the use of such technology on the Lowes Website, or that this information is secretly shared with TikTok and Microsoft, or that Plaintiffs and the Class did not consent to the collection or sharing of this information.

Instead, Defendants complain that this lawsuit is part of a "tidal wave" of litigation through which California residents are seeking to hold corporations like Lowes accountable for spying on consumers by using secret website technology, provided by technology giants, to collect their personally identifiable and use it to build comprehensive profiles of all Californians.

Strikingly absent from Defendants' motion is the fact that this "wave" of litigation includes multiple court opinions finding that the very technology that Lowes uses to spy on its customers violates Section 638 of the California Invasion of Privacy Act ("CIPA"). Indeed, the central thesis of Defendants' motion is that the Microsoft "Bat Bing" and TikTok "Pixel" web trackers used by Lowes to spy on consumers are not "pen registers" under CIPA – an argument that has been flatly rejected by multiple courts:

---

[1] Capitalized terms not otherwise defined have the same meaning as set forth in Plaintiffs' First Amended Class Action Complaint for Violations of the California Invasion of Privacy Act (Cal. Penal Code §638.51) (the "Complaint") (ECF No. 14). References to "Def. Brief" are to Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (ECF No. 17). Unless otherwise specified, all emphasis is added, and all internal quotations and citations are omitted.

- *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *5 (C.D. Cal. Apr. 3, 2025) (Castillio, M.J.) (web trackers are pen registers in violation of CIPA);
- *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024) (Castillio, M.J.) (TikTok Pixel constitutes a pen register in violation of CIPA);
- *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *11-12 (S.D. Cal. Feb. 13, 2025) (Bashant, J.) (Facebook Pixel constitutes a pen register in violation of CIPA);
- *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (Breyer, J.) (web trackers are pen registers in violation of CIPA); and
- *Shah v. Fandom, Inc.*, 2024 WL 4539577, at *6 (N.D. Cal. Oct. 21, 2024) (Lin, J.) (web trackers are pen registers in violation of CIPA).

Rather than apprise the Court of those directly on-point cases (many of which Plaintiffs cite in their Complaint), Defendants rely on wholly irrelevant case law, such as their repeated citation of cases from other courts interpreting distinct federal statutes unrelated to CIPA. *See, e.g.*, Def. Brief at 20, 22, 23. Whether other courts would interpret unrelated statutes to define other spy technology as a "pen register" has no bearing on the application of CIPA to the Web Trackers used by Lowes that are at issue in this case. The overwhelming weight of authority in this District and throughout this Circuit is that Lowes spy technology constitutes a "pen register" under CIPA. Defendants' failure to discuss these recent, on-point decisions about CIPA Section 638.51, and their heavy reliance on wholly irrelevant cases and statutes, speaks volumes about the weakness of their arguments.

Those recent CIPA cases also make clear that CIPA Section 638.51 does not require plaintiffs to have incurred pecuniary harm separate and apart from the collection of their personally-identifiable information. "Federal district courts have consistently found that ***violations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact*** because instead of a bare technical violation of a statute, a CIPA violation involves a violation of privacy rights." *Conohan*, 2025

WL 1111246, at *5. Again, rather than share this on-point precedent with the Court, Defendants make generalized arguments about privacy rights based on unrelated cases that do not involve CIPA. *See* Def. Brief at 12, citing *Loder v. City of Glendale*, 14 Cal.4th 846, 891 (Cal. 1997) (assessing constitutional privacy claims related to drug testing program). The few CIPA cases that Defendants do cite nearly all involve distinct provisions of CIPA, which prohibit wiretapping or eavesdropping, and require subjective analysis of whether the allegedly captured information implicates privacy concerns. *See, e.g.*, Def. Brief at 12-13. Such subjective analysis is simply not an aspect of Plaintiffs' claims under CIPA Section 638.51.

Plaintiffs here allege that they visited the Lowes Website, and explain in depth the information that Lowes' spy technology – the TikTok Pixel and Microsoft Bat Bing Tracker – secretly collected from Plaintiffs and other users and send to TikTok and Microsoft. ¶¶23-49. Defendants ignore the well-pleaded allegations in the Complaint to wrongly suggest that these Web Trackers only collect a user's IP address, which Defendants contend would not violate CIPA. Def. Brief at 12-15. Putting aside whether the collection of an IP address alone is sufficient to violate CIPA (courts in this Circuit say it is), Plaintiffs allege that Lowes' spy technology collects far more information from visitors to the Lowes Website, including Plaintiffs and the Class, than mere IP addresses. ¶2. This includes IP addresses, unique identifiers, browsing information, device details (make, model, operating system), browser information, and each user's Microsoft ID. ¶¶3, 24, 25, 31, 44, 45. Microsoft and TikTok compile the user information surreptitiously captured from the Lowes Website with similar information gathered from other websites, highlighting the privacy concerns implicated by Lowes' violations of CIPA. ¶¶25, 27, 30-43.

Defendants also argue that the Court lacks personal jurisdiction over Lowe's Companies, Inc. ("Lowe's Companies"), which Defendants wrongly suggest is not responsible for the Lowes Website. These arguments are not supported by the

selective facts that Defendants proffer to support their argument. While Defendants provided a self-serving affidavit asserting that the Lowes Website is owned by Lowe's Home Centers, LLC ("Lowe's Home Centers") rather than Lowe's Companies, other public information makes clear that Lowe's Companies is directly responsible for the management of the Lowes Website, which it uses to market and sell its products to California residents. For example, the registration information for the Lowes Website cites Lowe's Companies as the "Tech Administrator" for the Lowes Website. Ex. 1[2] (Domain Name Lookup Page). The Chief Digital and Information Officer of Lowe's Companies, Seemantini Godbole, is charged with "overseeing the customer experience on Lowes.com," and the Chairman and CEO of Lowe's Companies (who directly supervises Godbole) described "online sales" as a source of Lowes "sustained strength" saying "[w]e've increased both online conversion and traffic." Ex. 2 (Goldpole Website Biography); Ex. 3 (3Q 2024 Earnings Call) at 3. These facts are more than sufficient to establish personal jurisdiction under clear Ninth Circuit law. *See, e.g., Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025).

But even if this were not enough (it is), at best, any questions about Lowe's Companies' purported lack of "ownership" over the Lowes Website would warrant jurisdictional discovery, not dismissal. For these reasons, as set forth more fully below, Defendants' motion should be denied.

## STATEMENT OF FACTS

The Lowes Website is used by Lowe's Companies and Lowe's Home Centers to market and sell products to California residents, market the Lowe's Companies brand, and to advertise the numerous Lowes retail locations throughout California. ¶¶1, 2. Lowes uses the Lowes Website to secretly spy on Californians, collecting a

---

[2] References to "Ex." Refer to the Exhibits to the Declaration of Avi Josefson, filed contemporaneously herewith.

host of personally identifiable data from every user who visits the Lowes Website. ¶¶3, 5. Users do not consent to Lowes' collection and sharing of that information. ¶¶5, 50-54. Defendants use the collected information to enhance their marketing efforts, and also share that information with TikTok and Microsoft. ¶¶3, 25.

Lowes uses two forms of spy technology to collect this information from visitors to the Lowes Website: the TikTok Pixel and the Microsoft Bat Bing Tracker (collectively, the "Web Trackers"). ¶3. The Web Trackers are examples of "Third-Party Trackers" which "collect and send information about a user's browsing history to other companies." ¶23, n.1. The information collected by the TikTok Pixel and Microsoft Bat Bing Trackers includes IP address, unique identifiers, timestamps, device and browser information. ¶¶3, 25, 31, 44, 45. Both Web Trackers operate by inserting a tracker onto the web browser of every visitor to the Lowes Website. ¶¶27, 28. The Complaint details the personally identifiable information that Lowes secretly collects from everyone that visits the Lowes Website:

- "Lowes secretly utilized various trackers, including the TikTok Pixel and Microsoft Bing (together, the "Trackers"), to collect their IP addresses, unique identifiers, and browsing information." ¶3.

- "Lowes has implemented the Trackers on its website in order to collect users' IP addresses, unique identifiers, and browsing information, and then share the information with TikTok and Microsoft without informing the website user or obtaining consent." ¶25.

- "Per TikTok, the TikTok Pixel gathers information about IP addresses in order to 'determine the geographic location of an event' on a website that has the TikTok Pixel installed." ¶25, n.3.

- "The pixel also collects and reports supplementary metadata, including timestamp (when an action took place), IP address (which can be used to determine the geographic location of the user), unique identifiers (which are assigned to a user's device or browser session that distinguish one user from another), device details (make, model, operating system), and browser information." ¶31.

- "The TikTok Pixel also engages in a process known as 'fingerprinting,' through which it collects as much information as possible about the Lowes Website user and matches that information to the existing data from TikTok's database that has been gathered from other websites with the TikTok Pixel installed." ¶32.

- "The Microsoft Bat Bing Tracker places the bat.bing cookie on a user's browser, which collects information about the user" including "an individual's Microsoft ID" which is a unique identifier that Microsoft generates and assigns to a specific browser to track users' activity across the internet." ¶¶44, 45.

Lowes shares the information it secretly gathers with both Microsoft and TikTok. ¶¶25, 30-35, 44. Both companies compile the user data collected from the Lowes Website with similar user data taken from other websites to build comprehensive databases about each user. As noted, the personally identifiable information gathered by the Microsoft Bat Bing Tracker includes a "Microsoft ID" – a unique identifier assigned to every user on whom Microsoft collects data. ¶¶44, 45. TikTok similarly aggregates user data using its "fingerprinting" process. ¶32. TikTok will then share this data, including the information secretly gathered from the Lowes Website, with undisclosed third parties. ¶37. The collection of personally identifiable information by TikTok itself presents significant concerns given the control exerted over TikTok by the Chinese government. ¶¶39-43. Indeed, there is evidence that TikTok employees have used the information it gathers from websites like the Lowes Website to surveil Americans and target journalists. ¶¶42, 43.

## ARGUMENT

To survive a motion to dismiss, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Factual allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party. *Ryan S. v. UnitedHealth Group, Inc.*, 98 F.4th 965, 970 (9th Cir. 2024). Indeed, the Court "must presume all factual allegations of the complaint to be true and draw all

reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "The motion should be denied if the claim is plausible on its face, that is, if 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ryan S.*, 98 F.4th at 970 (quoting *Iqbal*, 556 U.S. at 678).

**A. The Court Has Personal Jurisdiction Over Lowe's Companies**

Defendants' challenge to this Court's personal jurisdiction over Lowe's Companies, supported by a one-page declaration that does nothing to clarify the relationship between Defendants and the claims at issue, should be rejected. Courts may exercise personal jurisdiction over a nonresident defendant (not subject to general personal jurisdiction) if: 1) the defendant "purposefully direct[s] his activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which he purposefully avails himself of the privilege of conducting activities in the forum"; 2) "the claim . . . arises out of or relates to the defendant's forum-related activities"; and 3) "the exercise of jurisdiction . . . comport[s] with fair play and substantial justice, i.e. it [is] reasonable." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-51 (9th Cir. 2025).

The Ninth Circuit recently reaffirmed the exercise of jurisdiction in a CIPA case where the defendants' website "appeals to, and profits from, an audience in California . . . and is used to collect information intentionally from users, knowing that privacy harms will be suffered in California," as well as where the "alleged privacy injuries arise out of or relate to the website's contacts with California." *Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025). In *Mikulsky*, the plaintiff "alleged that Defendants reach[ed] . . . maintain[ed] an integrated website that pairs online use of the website with operations of its brick-and-mortar stores in California." *Mikulsky v. Bloomingdale's LLC*, 2024 WL 3091395, at *2 (S.D. Cal. May 14, 2024). Similarly, here the Complaint alleges that Lowes uses its website to "advertise products to California residents . . . for

purchases . . . through its numerous Lowes retail locations within California," and specifically explains that the website "identifies for shoppers the locations of the many Lowes retail stores located throughout California." ¶8.

In line with this precedent, Defendants do not contest this Court's jurisdiction over Lowes Home Centers conceding that use of the Lowes Website, which markets and sells products to California residents while secretly collecting information about them, is sufficient to confer personal jurisdiction.[3] With regard to Lowe's Companies, however, Defendants maintain that "none of [its] contacts pertain to the Website because Lowe's Companies does not own or operate the Website." Def. Brief at 9. In support, Defendants submit a one-page declaration (*see* Def. Ex. A), which offers selective facts about the operation of the Website.[4] That does not end the inquiry.

As the Ninth Circuit recently reaffirmed, it is not error to "exercise jurisdiction over [two] Defendants where each was alleged to have engaged in the same conduct and the allegations in the complaint were alleged collectively," as Plaintiffs allege here. *Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025). Courts in this Circuit have exercised personal jurisdiction over a defendant that "controlled or was otherwise affiliated with" the website at issue, even if that

---

[3] Indeed, as Defendants must acknowledge (Def. Brief at 10), the Northern District of California has previously found that personal jurisdiction exists over ***both*** Defendants in claims related to the Website. *Masry v. Lowe's Cos., Inc.*, 2024 WL 3228086, at *5 (N.D. Cal. June 28, 2024); *see also Conohan*, 2025 WL 1111246, at *5, *34 (personal jurisdiction where defendants' website "gathers device and browser information, geographic information, referral tracking, and URL tracking from California visitors to Rad's Website . . . and sends the details to TikTok, a California company" in violation of CIPA).

[4] While the declaration asserts that Lowe's Home Centers, LLC operates the Lowe's retail stores in California, it does not address Defendants' use of the Lowe's Website to collect personally identifiable data from California residents, which Defendants use to improve their targeting and marketing efforts (¶¶3, 28).

defendant denied it "personally operated" the website. *Autobidmaster, LLC v. Alpine Auto Gallery, LLC*, 2015 WL 2381611, at *2 (D. Or. May 19, 2015) ("website screen shots" linked the challenging defendant with the website). Despite Lowe's Companies' self-serving assertions that it does not "own or operate" the Website, there is significant evidence that it "controlled or was otherwise affiliated" (*id.*) with the website.[5]

***First***, A domain name search shows that Lowe's Companies, not Lowe's Home Centers, is the "Tech Administrator" for "lowes.com," clearly indicating involvement with the technical aspect of operating the Website. Ex. 1 (Domain Name Lookup Page).

***Second***, the Website's "U.S. Privacy Statement," which governs "how Lowe[s] collects, uses, shares, and protects personal information from and about [users]" – the data collection at issue in this litigation – is described as "cover[ing] the privacy practice of ***Lowe's Companies, Inc.*** and its U.S. operating subsidiaries and affiliates." Ex. 4 (Lowe's U.S. Privacy Policy).

***Third***, key personnel responsible for the Lowes Website are employees of Lowe's Companies. For example, Seemantini Goldbole is Lowes Vice President, Chief Digital and Information Officer, who is described by Lowe's Companies. as being "responsible for technology strategy . . . and technology operations across all channels, including digital, while also overseeing the customer experience on Lowes.com." Ex. 2 (Website Biography). In other words, her duties include "overseeing" the Website at issue in this litigation. Her offer letter confirms that her position is at "Lowe's Companies, Inc.," reporting directly to Marvin R. Ellison, the President and Chief Executive Officer of Lowe's Companies ("Ellison"), meaning that the CEO of Lowe's Companies, Inc. directly supervises the senior executive

---

[5] Courts may consider "supporting declarations and exhibits" when evaluating personal jurisdiction issues. *Hill v. Gergun Transp., Inc.*, 2024 WL 4203379, at *1, n.2 (E.D. Cal. Sept. 16, 2024).

responsible for the Lowes Website. Ex. 5 (Goldbole Offer Letter).[6]

***Finally***, Lowe's Companies' leadership readily took ownership of the Lowes Website in discussions with investors. For example, on Lowes' November 19, 2024, earnings call for the third quarter of 2024, CEO Ellison described "online sales" as one of the key areas where Lowes was "delivering," and further boasted that Lowes "increased both online conversion and traffic." Ex. 3 (3Q Earnings Call) at 3.

In other words, the facts show and the Complaint alleges that Lowe's Companies "controlled or was otherwise affiliated" with the Lowes Website, *Alpine Auto Gallery, LLC*, 2015 WL 2381611, at *2, that Lowe's Companies "directed its conduct toward California" and its residents "to obtain and use their personal data for its own commercial gain," *Briskin*, 135 F.4th at 755-56, and did so knowing the website "appeals to, and profits from, an audience in California." *Mikulsky*, 2025 WL 1718255, at *1. Defendants' motion to dismiss Lowe's Companies for lack of personal jurisdiction should be denied.[7]

**B. The Web Trackers are "Pen Registers" Under CIPA**

When it enacted CIPA to "protect the right of privacy of the people of" California, the legislature recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code §630. While the concept

---

[6] While a standard arbitration agreement attached to the offer letter references "your employment by Lowe's Home Centers, LLC," the counterparty to that agreement (and the Confidentiality Agreement) with Ms. Goldbole remained Lowe's Companies. *See* Ex. 5 (Goldbole Offer Letter).

[7] To the extent the Court believes there is still a dispute, the proper approach is to order jurisdictional discovery, allowing Plaintiffs to test the bases for jurisdiction. *iCall, Inc. v. Reliance Commc'ns Ltd.*, 2010 WL 11583236, at *4 (N.D. Cal. Sept. 16, 2010) ("In light of the dispute over who is the actual operator of relianceicall.com, the Court finds that jurisdictional discovery may be appropriate").

of a "pen register" may once have been limited to low-tech devices used in connection with telephone land lines, CIPA is regularly interpreted to apply to new technologies, including "Internet communications." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022). Moreover, as the Ninth Circuit observed in *Javier*, "the California Supreme Court has also emphasized that all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." 2022 WL 1744107, at *2, citing *Ribas v. Clark*, 696 P.2d 637, 639–41 (Cal. 1985); *Smith v. LoanMe, Inc.*, 483 P.3d 869, 879 (Cal. 2021).

CIPA prohibits the use of "pen registers" and "trap and trace" devices to spy on California residents. Specifically, CIPA provides that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code §638.51(a). CIPA defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted . . .". Cal. Penal Code §638.50(b). A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication." *Id.* §638.50(c).

To state a claim for a violation of CIPA's pen register provision, a plaintiff must allege that a "[d]efendant installed a pen register without a court order." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023). "Thus, at the motion to dismiss stage, the Court evaluates whether Plaintiff adequately alleges that 1) the third-party Trackers are 'pen registers,' as defined by CIPA, 2) Defendant installed pen registers, and 3) Defendant did so without a court order." *Mirmalek*, 2024 WL 5102709, at *3.[8]

---

[8] Defendants contend that the reference to a "court order" implicitly means that CIPA

The Complaint alleges that the Web Trackers used by Lowes to spy on users of the Lowes Website are "devices or processes" that record routing, addressing and signaling information transmitted by the users' devices when they visit the Lowes Website. ¶4. Courts interpreting CIPA have made clear that "process can take many forms." *Greenley*, 684 F. Supp. 3d at 1050. In *Greenley*, the court held that "surreptitiously embedded software" constituted a "pen register." *Id.*[9] Judge Bashant wrote in *Greenley* that "the Court cannot ignore the expansive language in the California Legislature's chosen definition," and "the plain meaning of a 'process'" surely includes "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'"

Following *Greenley*, numerous courts have held that software embedded in a website that captures information that identifies the user that is the source of the transmissions to the website constitutes a "pen register" under CIPA. Such interpretations of CIPA comport with the intent of the statute, as recognized by the California Supreme Court: "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*,

---

must only apply to telephones because, otherwise, "a party could be held liable for using a trap and trace device without a court order when (because the technology used does not involve a telephone line) a court order could never be issued." Def. Brief at 21-22. But courts routinely issue orders permitting law enforcement to employ the equivalent of pen registers and trap and trace devices to intercept Internet communications, and Defendants' argument here makes little sense. *See, e.g., In re Application of the United States of America for PRTT Order For One WhatsApp Account For Investigation Of Violation of 21 U.S.C. § 841*, 2018 WL 1358812, at *6 (D.D.C. Mar. 2, 2018) (authorizing the installation and use of pen register and trap and trace devices on a specific WhatsApp messaging account).

[9] The Web Trackers can also constitute a "device" under CIPA. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. Nov. 8, 2023) (noting that software is a device because "in order for software to work, it must be run on some kind of computing device").

2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).[10] Accordingly, following her own prior opinion in Greenley, Judge Bashant held in *Zarif v. Hwareh.com, Inc.*, that the "Meta Pixel" provided by Meta (formerly Facebook) – a third-party web tracker that is functionally identical to the TikTok Pixel and Microsoft Bat Bing Tracker – constituted a pen register, the use of which violated CIPA. 2025 WL 486317, at *11-12) (S.D. Cal. Feb. 13, 2025).[11]

Judge Bashant noted in the *Zarif* case that several other courts had concluded that similar spy technology embedded in websites constituted pen registers, the use of which violated CIPA. *Id.* at *12, citing *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024); *Mirmalek*, 2024 WL 5102709, at *3. The *Moody* case involved the TikTok Pixel – one of the same Web Trackers that Lowes used to spy on Plaintiffs and the Class. In *Moody*, Judge Klausner denied the motion to dismiss filed by operators of an educational website that used the TikTok Pixel to collect users' personal information without consent. 742 F. Supp. 3d at 1078. The court found that "Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of [CIPA] §§638.50 and 638.51" and therefore denied the motions to dismiss. *Id.* at

---

[10] *Matera*'s recognition of the need to construe CIPA broadly to effect the privacy protections intended by the legislature, and the Ninth Circuit's observation in *Javier* that CIPA must be read to apply to Internet technologies, rebut Defendants argument that CIPA's legislative history must be narrowly read to limit CIPA's application to telephonic communications.

[11] Defendants misconstrue the plain allegations of the Complaint to suggest that the Web Trackers cannot be pen registers because the Web Trackers are installed on the Lowe's Website, rather than on the computers and devices of Plaintiffs and the Class. Def. Brief at 23. But the Complaint clearly alleges that "When Plaintiffs and the other Class members visited the Lowes Website, the Lowes Website's code, at Lowes's direction, installed the Trackers onto the users' browser." ¶27. *See also*, ¶33 ("Once installed, the TikTok Pixel creates cookies on visitors' web browsers when they visit the website"); ¶44 ("The Microsoft Bat Bing Tracker places the bat.bing cookie on a user's browser, which collects information about the user.").

1076, 1078. Similarly, in *Mirmalek*, which involved the use of three third-party trackers similar to the Web Trackers used by Lowes, Judge Breyer held that "the third-party Trackers operate as pen registers under [CIPA] Section 638.50 because the Trackers are a process and/or device that collect users' internet protocol ("IP") addresses." 2024 WL 5102709, at *3.

More recently, *Conohan* sustained CIPA claims arising from defendant's use of the TikTok web tracker (the same used by Lowes here), which "serves as a de-anonymization process that identifies visitors for marketing and surveillance purposes for the benefit of both" TikTok and the defendant website owner. 2025 WL 1111246 at *1, *5. *See also Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. Oct. 21, 2024) (sustaining claims that the collection of users' IP addresses violated CIPA Section 638.51, because "the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information."), citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).

Defendants' primary response to the well-pleaded allegation that the Web Trackers are "pen registers" under CIPA is to simply ignore all of these cases, and argue that CIPA is limited to the interception of "telephone calls" or other archaic technology.[12] Def. Brief at 20.[13] This argument is entirely refuted by the cases cited above, and Defendants fail to cite any cases ***interpreting CIPA*** that supports their

---

[12] Defendants' position that the Web Trackers are not pen registers under existing law is belied by the fact that California's legislature, as of the time of this memorandum, is considering a statute that would ***amend*** existing law in order to exempt software like the Web Trackers; the most recent version of the bill eliminated retroactivity provisions. S.B. 690 (May 29, 2025). As a result, even if that bill passes it will not impact this litigation.

[13] Indeed, Defendants failure to identify for the Court the numerous cases, including *Zarif*, *Moody*, *Mirmalek*, *Shah*, and *Conohan*, that have held third-party trackers identical to Lowes' Web Trackers are pen registers that violate CIPA, call into question Lowes' compliance with its duty of candor under Rule 3.3 of the California Rules of Professional Conduct.

contention.

That Defendants' brief is entirely focused on cases interpreting statutes other than CIPA speaks volumes about the lack of relevant precedent that supports their position. For example, Defendants repeatedly cite a criminal case from Texas, decided nearly 20 years ago, which address the intentions of the U.S. Congress in enacting the Electronic Communications Privacy Act (the "ECPA") in 1986, roughly 40 years ago. Def. Brief at 20, citing *In the Matter of the Application of the United States of America for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process, (2) Access to Customer Records, and (3) Cell Phone Tracking ("In re US")*, 441 F. Supp. 2d 816, 818 (S.D. Tex. 2006). But as Judge Klausner noted in *Moody*, whether or not an unrelated federal statute applies to the interception of internet communications has no bearing on the scope of CIPA, which *Moody* and other courts have repeatedly held is not limited to telephonic communications. *Moody*, 742 F. Supp. 3d at 1076 ("Defendant cites a different district court case . . . in which a court found that a similar federal statute was limited to physical devices attached to a telephone line. However, this case concerned federal law, not California law" and is therefore "not binding."). Even if the Court were to look beyond the CIPA itself, other courts have recognized that devices that intercept internet communications are analogous to a pen register. *See, e.g., United States v. Forrester*, 512 F.3d 500, 504 (9th Cir. 2008) (concluding that "computer surveillance that enabled the government to learn the to/from addresses of [the defendant's] e-mail messages, the Internet protocol ('IP') addresses of the websites that he visited and the total volume of information transmitted to or from his account" was "analogous to the use of a pen register").[14]

---

[14] The few cases Defendants cite (for other purposes) that do relate to CIPA fail to support Defendants' contention that CIPA is limited to telephonic communications. Both *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) and *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal.

Defendants' reliance on *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Sup. Mar. 13, 2024) is similarly misplaced. In that case, the plaintiff's bare-bones complaint contained no specific information about the "device" or "process" purportedly used on the defendant's website, instead relying on a conclusory allegation that defendant used a pen register, which purportedly captured only IP addresses. Ex. 6 (*Licea* Complaint).[15] Absent any allegations regarding defendant's use of a third-party tracker or any specific device to capture plaintiff's IP address, the court found it "unclear from the conclusively pled complaint how Plaintiff's information was acquired" but nonetheless granted "leave to amend in order to allow Plaintiff an opportunity to improve the quality of the allegations." *Licea*, 2024 WL 1698147, at *4. In stark contrast, Plaintiffs' Complaint provides extensive details about the nature and functionality of the TikTok Pixel and Microsoft Bat Bing Tracker used by Lowes to spy on Plaintiffs and the Class, including the information (which goes beyond the mere IP addresses at issue in *Licea*) that Lowes captures and shares with third parties.

Defendants ultimately resort to scare tactics, baselessly claiming that holding Lowes accountable for using the TikTok Pixel and Microsoft Bat Bing Tracker to spy on users would "break the internet" and cause "any website owner" to "incur criminal liability" when anyone visited their website. Def. Brief at 26-27. This is nonsense, and clearly refuted by the fact that numerous courts have applied CIPA to bar spy technology similar to Lowes' Web Trackers, and yet the Internet remains

---

Apr. 5, 2023), which Defendants cite in support of their standing arguments, analyzed claims under CIPA's wiretapping / eavesdropping provisions arising from website communications, and did not find that CIPA inapplicable to such Internet communications. Def. Brief at 11.

[15] Courts may take judicial notice of the existence of state court filings. *Meredith v. Oregon*, 321 F.3d 807, 817 n.10 (9th Cir. 2003) (taking notice of pleadings in Oregon Court of Appeals).

unbroken and thousands of websites (that do not spy on their users) continue to operate. Histrionics aside, the fair application of CIPA to protect Californians from the type of spying in which Lowes is engaged, rather than harming the Internet, is necessary to ensure that Californians can use the Internet with their privacy rights intact, free from the corporate surveillance in which Lowes engages for its own profit.

**C. Plaintiffs Have Standing**

Defendants raise two arguments to challenge Plaintiffs' standing: that Plaintiffs (1) have not adequately alleged details about their visits to the Lowes Website; and (2) do not claim to have suffered pecuniary harm, separate and apart from Lowes' intentional violation of their privacy rights. Def. Brief at §V.B. Neither argument has merit.

**1. Plaintiffs Allege That They Visited The Lowes Website And That Lowes' Web Trackers Collected Their Information**

Both Plaintiffs allege that they visited the Lowes Website. ¶¶10, 11. Plaintiffs further allege that Lowes surreptitiously captured their user information (¶¶5, 27), and the Complaint details the types of information that Lowes' Web Trackers captured from visitors to the Lowes Website, including Plaintiffs. *See*, *e.g.*, ¶¶3, 25, 31, 44, 45. Nothing in the text of CIPA, or in the cases discussed herein that upheld CIPA claims based on privacy violations identical to those perpetrated by Lowes, requires any additional information to establish standing. Defendants list a variety of information that Plaintiffs did not allege, including the devices used to visit the website, whether they purchased items through the website, or whether they have "TikTok or Microsoft accounts." Def. Brief at 4-5. Plaintiffs also do not allege what they were wearing when they visited the Lowes Website, or what they had for breakfast that day – information that is equally irrelevant to the question of Plaintiffs' standing. Defendants do not articulate how the purportedly missing information undermines Plaintiffs' standing, or cite any cases requiring this level of detail in the

complaint. Rule 8 of the Federal Rules of Civil Procedure certainly does not require such allegations, nor does CIPA. *See, e.g. Conohan*, 2025 WL 1111246, at *6 (allegations that the TikTok pixel "'collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data'" including "'device and browser information, geographic information, referral tracking, and url tracking'" and that the pixel "'scans every website for information, such as name, date of birth, and address'" were "more than sufficient to demonstrate standing at this stage of the case"); *Moody*, 742 F. Supp. 3d at 1078 (finding "no credible dispute" as to standing where complaint alleged that defendants' website installed the TikTok pixel, the TikTok pixel collected user data, and plaintiff visited the website).

Defendants wrongly contend that Plaintiffs fail to allege that Lowes captured their information through the Lowes Website. Def. Brief at 6, 17 (Plaintiffs "fail to identify any specific information captured by the website technology in connection with their own visits to the Website."). This argument simply ignores the well-pleaded allegations of the Complaint. As summarized above, the Complaint alleges with particularity the types of identifying information that the Web Trackers collected from Plaintiffs and the Class, including IP addresses, unique identifiers, the Microsoft ID, timestamps, and device and browser information. ¶¶3, 25, 31, 44, 45. Indeed, Defendants' Brief confusingly recites many of these allegations, conceding that the Complaint alleges the Web Trackers "collect their IP addresses, unique identifiers, and browsing information" and "collects and reports supplementary metadata, including timestamp . . . IP address . . . unique identifiers . . . device details . . . and browser information," as well as using "a process known as 'fingerprinting' through which it collects as much information as possible about the Lowes Website user" and capturing the Microsoft ID, a "unique identifier that Microsoft generates and assigns to a specific browser to track users' activity" Def. Brief at 5, citing Complaint at ¶¶3, 31, 32, 45. Despite acknowledging these

particularized allegations from the Complaint, Defendants then inexplicably suggest that the Complaint "fails to connect those Cookies to any of Plaintiffs' purported visits to the Website" (Def. Brief at 6), wrongly describing Plaintiffs' well-pleaded allegations as merely presenting a "hypothetical" of what information the Web Trackers might have collected (Def. Brief at 17). This simply ignores Plaintiffs' allegations: the Complaint alleges that the Web Trackers that Lowes uses actually collects specific information from all visitors to the Lowes Website, and alleges that Plaintiffs visited the Lowes Website (¶¶10, 11) and that their information was secretly collected by the Web Trackers (¶¶5, 27). Nothing in these allegations present a "hypothetical" and nothing further is required to establish Plaintiffs' standing.

Adding further confusion, after referencing the numerous allegations regarding the various types of identifying information the Web Trackers collect in addition to users' IP addresses, Lowes provides a lengthy argument (predicated primarily on out-of-Circuit cases that do not involve CIPA) to argue that the collection of an IP address alone does not constitute a violation of privacy rights. Def. Brief at 13-16. As discussed above, Plaintiffs allege that Lowes secretly collected IP addresses together with other identifying information, including "unique identifiers" such as each user's Microsoft ID, device information, browser information and other metadata. ¶¶3, 25, 31, 44, 45. The Complaint further alleges that both Microsoft and TikTok combine this information with data gathered from other sources to build a robust profile of each user. ¶¶22-29. Clearly, Plaintiffs' claims do not rest on the collection of IP addresses alone as the sum total of Defendants' violation of CIPA. But even if IP addresses were the only information collected, under CIPA the collection of an IP address alone is sufficient for the Web Trackers to constitute a "pen register" in violation of the statute. *Mirmalek*, 2024 WL 5102709, at *4 ("Plaintiff adequately alleges that the Trackers record addressing information in the form of IP addresses."); *Shah*, 754 F. Supp. 3d. at 730-32

(sustaining CIPA claims based solely on collection of IP addresses). The Complaint here includes allegations that IP addresses constitute personally identifiable information. ¶26.

**2. Statutory Violations Alone Are Sufficient To Give Rise To Claims Under CIPA Section 638.51**

Courts applying CIPA, based on decades of California case law, have rejected the requirement for an independent injury, finding that the CIPA provision authorizing civil actions "'is fairly read as establishing that no violation of . . . [CIPA] is to go unpunished'" because "'[a]ny invasion of privacy involves an affront to human dignity'"—and that CIPA's "manifest legislative purpose [is] to accord every citizen's privacy the utmost sanctity." *In re Google Inc.*, 2013 WL 5423918, at *17 (N.D. Cal. Sept. 26, 2013) (quoting *Friddle v. Epstein*, 21 Cal. Rptr. 85, 92 (Cal. Ct. App. 1993) and *Ribas v. Clark*, 38 Cal.3d 355, 365 (Cal. 1985)). Specifically in the context of the pen register statute, courts in this Circuit recognize that "[f]ederal district courts have consistently found that 'violations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact because instead of a bare technical violation of a statute, a CIPA violation involves a violation of privacy rights.'" *Conohan*, 2025 WL 1111246, at *5. *Conohan* – one of the many cases that are directly on point yet simply ignored by Defendants – makes clear that CIPA standing does not require Plaintiffs to have incurred any harm other than the violation of their rights. Similarly, none of the other cases cited herein, which sustained CIPA claims arising from a defendants' secret use of third-party trackers to collect information from website visitors, required any showing of such pecuniary or ancillary harm. *Cf. Zarif*, *Moody*, *Mirmalek*, and *Shah.*

Defendants, as they do throughout their brief, studiously avoid any cases that actually apply Section 638.51 of CIPA – the only statute at issue in this case – and

instead build an argument based on irrelevant cases interpreting other claims.[16] For example, Defendants rely upon *Starkey v. Rushmore Loan Mgmt. Servs. LLC*, 2019 WL 8989907, at *3 (C.D. Cal. Dec. 10, 2019), which involved claims under the federal Fair Credit Reporting Act (15 U.S.C. §1681) and Consumer Credit Reporting Agencies Act (Cal. Civ. Code §1785), and *Kobayashi v. McMullin*, 2023 WL 11822286, at *8 (C.D. Cal. July 7, 2023), which involved claims ranging from false imprisonment to legal malpractice. These cases have nothing to do with CIPA, and no bearing on Plaintiffs' claims. One case Defendants cite that does touch upon CIPA, *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 865 (S.D. Cal. 2023), involved wiretapping claims under distinct provisions of CIPA, unrelated to "pen registers." Such claims turn on the interceptive of the contents of a communication, and the court found that "Plaintiff's conclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information." *Id.* at 864. Notably, the court indicated that wiretapping alone could constitute "concrete" harm if the plaintiff adequately alleged the interception of private information, stating "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest." *Id.* Section 638.51 of CIPA, prohibiting the use of pen registers such as Lowes' Web Trackers, does not turn on a subjective analysis of the private nature of the intercepted communications – merely that it be personally identifiable information – so the analysis in *Mikulsky* is

---

[16] One of the only cases Defendants cite that ***does*** concern the pen register statute involved plaintiffs who acknowledged that the data gathered was "anonymous" absent certain circumstances not present in the litigation. *Hughes v. Vivint*, 2024 WL 5179916, at *5 (N.D. Cal. July 12, 2024). Indeed, a later court found that case inapplicable in circumstances, such as here, where a dispute exists about whether the data was anonymized. *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *4 (N.D. Cal. Mar. 28, 2025).

inapposite.

Similarly, *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023) involved wiretapping claims under CIPA Sections 631(a) and 632.7. The court's conclusion that the plaintiff lacked standing turned on undisputed evidence that defendant had not recorded plaintiff's information. Specifically, the court found that "Defendant produces uncontroverted declaration testimony" that "there is no evidence that Plaintiff engaged in any communication with Defendant's chat feature, much less that she disclosed private information or was injured by any conduct of Defendant." *Id.* at *2. No such evidentiary dispute is at issue here, where the Complaint alleges with particularity the information that Defendants secretly collected in violation of CIPA Section 638.51.[17]

Betraying the weakness of their standing defense, Defendants rely broadly on the U.S. Supreme Court's language in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), that the violation of a federal statute does not automatically give rise to the type of harm that gives a plaintiff standing to sue. But the Ninth Circuit and this Court have already rejected the argument that the CIPA claims Plaintiffs assert here fail under *TransUnion*. Like here, the defendant in *Wakefield v. ViSalus Inc.*, 51 F.4th 1109 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1756 (2023), argued that plaintiffs alleging violations of the TCPA – which prohibits "robocalls" without prior express consent – lacked Article III standing under *TransUnion*. The Ninth Circuit rejected

---

[17] Similarly, *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023), involved claims for alleged wiretapping under a separate provision of CIPA, and the court found that no "concrete injury" was alleged because "Plaintiff does not allege that she disclosed any personal information when she visited the website. As such, no personal information was intercepted and recorded." In *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *4 (S.D.N.Y. Feb. 18, 2025), a New York court held that "the disclosure of an IP address" alone was insufficient to constitute sufficient harm to give the plaintiff standing; here, Plaintiffs allege the capture and disclosure of more information than mere IP addresses by Lowes' Web Trackers.

that argument, holding that *TransUnion* did not undermine the prior cases upholding Article III standing in TCPA and similar statutorily-based privacy cases but, in fact, "strengthened by it" in light of the fact that "(1) Congress created a statutory cause of action for the injury and (2) the injury has a close historical or common-law analog" and the wide-spread recognition among states of the right to privacy. *Id.* at 1118. So too here, as the California legislature created the CIPA cause of action, and the injury suffered has a close "common-law analog to privacy violations" long recognized under the common law. *Id.* Following *Wakefield*, this Court rejected the notion that *TransUnion* somehow "undermined the reasoning" of California federal cases holding that "violations of Plaintiffs' statutory rights under CIPA, without more, constitute injury in fact" because a CIPA violation—by its nature—is "a violation of privacy rights" which is a "more 'concrete and particularized harm.'" *Grace v. Build.com, Inc.*, 2023 WL 4535531, at *3-4 (S.D. Cal. July 13, 2023) (Sabraw, J.) (reaffirming that *TransUnion* did not undermine cases finding CIPA violations constitute concrete injury-in-fact and citing cases).[18]

For this reason, among others, a recent case that Defendants do not cite—*Kishani v. Royal Caribbean Cruises, Ltd.*, 2025 WL 1745726 (N.D. Cal. June 24, 2025)—badly misreads controlling Ninth Circuit law in finding a lack of Article III

[18] The actual analysis applied in *TransUnion* does not support Defendants' argument either. There, the Supreme Court distinguished between purported class members about whom TransUnion disseminated erroneous credit information to third parties, and class members whose credit reports included errors but had not been disseminated. 594 U.S. at 434-435. The Court found that the latter lacked standing, but that the former – whose claim arose from a violation of the Fair Credit Reporting Act and who did not claim to have incurred any monetary or otherwise quantifiable harm from the dissemination of erroneous credit information – had standing to sue TransUnion for its statutory violation. *Id.* Here, Plaintiffs allege that Defendants collected a host of personally identifiable information, actually used that information to refine and target their advertising to the Class, and shared that information with third-parties, at least one of which (TikTok) discloses that it further shares such information with other parties. ¶¶22-49.

standing in a CIPA "track and trace" case, as well as statute's requirements. In *Kishani*, the court cited *TransUnion* to hold that a plaintiff failed to allege Article III standing in a CIPA claim against a website that used a third-party web tracker because the plaintiff did not allege the collection of "specific personal information" that "implicates a protectible privacy interest," instead alleging the collection of "basic contact information." *Id*. at *3-4. In doing so, the District Court ignored the Ninth Circuit's decision in *Wakefield*, as well this Court's holding in *Build.com*, that *TransUnion* does nothing to undermine kind of "concrete injuries" that CIPA seeks to redress.[19]

The *Kishani* further erred by holding that, to allege a Section 638.51 pen register violation, a plaintiff must allege collection of such "personal information" that "implicates a protectible privacy interest." 2025 WL 1745726, at *3. That reading of CIPA would implicitly condone the use of pen registers and make the pen register provision a nullity. As the *Kishani* court recognized, a trap and trace device (or pen register) as defined by CIPA does not capture the substance of a communication; thus, if the plaintiff alleged the collection of substantive

---

[19] Where courts have dismissed CIPA claims – in particular pen register claims – for lack of standing, the standing defects are personal to the plaintiff's complaint in those actions and not applicable here. For example, in *Heiting v. FKA Distrib. Co. LLC*, plaintiff failed to allege "what information Defendant captured, whether she was aware of Defendant's tracking practices, or if she has any reason to believe that she was indeed de-anonymized." 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025). Here, Plaintiff alleges the types of information the trackers collect (¶¶31-35, 44-49), confirms that this collection occurred without notice to plaintiff or other users (¶50), and explains why Plaintiffs believe their data was de-anonymized (¶32 (alleging the TikTok Pixel collects information about Lowes website visitors and matches it with data from other websites that have the TikTok Pixel installed); ¶45 (explaining that the Bat Bing Tracker collects Microsoft IDs, which "can be used to identify individuals")). Indeed, the plaintiff in *Heiting* was able to file an amended complaint that successfully pled standing by asserting that "the software effectively de-anonymizes the website user and has collected tracking information on her." *Heiting v. FKA Distrib. Co. LLC*, 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025).

communications beyond personally identifiable information, the device at issue would not constitute a pen register or trap and trace device under CIPA. *Id.*at *4. The *Kishani* court appears to recognize this (*id.* at *5), but fails to acknowledge that its interpretation – which is contrary to that of several other cases – effectively moots Section 638.51 of CIPA because the *Kishani* court believes that the type of information that could be captured is simply not "personal information" that "implicates a protectible privacy interest." *Compare Zarif*, *Moody*, *Mirmalek*, *Shah*, and *Conohan.*[20] In *Shah*, for example, the court held that "Plaintiffs sufficiently allege statutory standing. Plaintiffs plausibly allege that the collection of their IP addresses through the Trackers allows the third parties to obtain 'personally identifying, non-anonymized information,' and that the IP addresses reveal geographical location and other personal information sufficient for third parties to conduct targeted advertising." 754 F. Supp. 3d at 932. The Court should not disregard Ninth Circuit law or endorse a reading of Section 638.51 that would render it a nullity.

**D. Defendants' Remaining Arguments Fail**

Defendants raise several additional arguments, none of which are supported by Plaintiffs' allegations, the text of CIPA, or relevant case law. For example, Defendants claim that because Lowes consented to place the Web Trackers on the Lowes Website, CIPA does not bar its use of that spy technology. Def. Brief at 27-28. This argument is facially absurd, and ignores the allegations of the Complaint as well as relevant case law. Defendants ignore the plain allegations in the Complaint that the Web Trackers, as part of their spying process, each secretly install technology on the user's browser – an action to which Plaintiffs and the Class did not consent, and for which Lowes' purported consent is irrelevant. ¶¶27, 33, 44.

---

[20] Plaintiffs here allege that the information collected by Defendants included "unique identifiers," including the Microsoft ID collected by the Microsoft Bat Bing Tracker, a web tracker not at issue in *Kishani*. ¶¶44-45.

While CIPA does provide an exception based on the consent of the "user" of the system at issue, the "user" in this case refers to Plaintiffs and the Class, not Defendants. Defendants are providing the Lowes Website to consumers, who are the users of that website. ¶¶2, 5, 22. The plain language of CIPA prohibits a "person" from installing a pen register without the consent of the "user," making clear that the "person" is distinct from the "user" whose information is captured; under Lowes' tortured reading, the person installing the pen register is always consenting to such installation and, if that "person" is also the "user," this provision of CIPA is entirely vitiated. The court in *Moody* expressly rejected this identical argument, finding that "Plaintiff's allegations that he is the user, and that he did not consent, plausibly demonstrate that the consent exception does not apply." 742 F. Supp. 3d at 1077.

Defendants' argument that the Complaint fails to allege scienter is also meritless. Def. Brief at 28 ("Lowe's must have installed the website technology with knowledge and intent that it illegally identifies anonymous visitors without a court order"). Once again, Defendants ignore the well-pleaded allegations of the Complaint and the law governing civil actions under CIPA. None of the CIPA cases cited by Plaintiffs (including *Zarif*, *Moody*, *Mirmalek*, *Shah*, and *Conohan*), which held third-party web trackers to be pen registers under CIPA, applied the pleading standard Defendants propose. The one case Defendants cite in support of their scienter argument, *Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023), is wholly inapposite. As with the few other CIPA cases that appear in Defendants' brief, *Heiting* involves wiretapping allegations (under CIPA Section 631(a), not the pen register claims (under CIPA Section 638.51) at issue here. Moreover, the scienter discussion in *Heiting* related to an allegation that the defendant aided and abetted the violation by a third party, with the court concluding that plaintiff "does not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet Genesys's purported CIPA violation." 709 F. Supp. 3d at 1019. Defendants make no effort to explain why the

intent element of a claim for aiding and abetting a violation of CIPA's wiretapping provisions has any bearing on a claim for a direct violation of CIPA's pen register provisions.

But even if CIPA Section 638.51 required allegations of scienter, the Complaint clearly alleges that Lowes knowingly installed the Web Trackers and shared the information they collected with TikTok and Microsoft. ¶¶2, 3, 5, 25, 27. The Complaint further alleges that Lowes itself used the information secretly collected from Plaintiffs and the Class to further its own business operations. ¶3 ("Lowes used this information to create targeted ads."); ¶28 ("By installing the Trackers, Lowes is able to track users and their interactions on its platform in order to place targeted advertisements, increasing Lowes's brand awareness and sales"). The Complaint thus plainly alleges that Lowes acted intentionally and for its own pecuniary benefit to install devices that collect information from Plaintiffs and the Class, without the consent of those users or a court order, and to share that information with Lowes' business partners. Defendants' scienter argument fails.

Finally, Defendants claim that the Complaint fails to state a claim against Lowe's Companies (as opposed to Lowe's Home Centers), simply because the Complaint defines the two entities as "Lowes" and uses that term throughout. Def. Brief at 29. Notably, Defendants do not raise this argument as to Lowe's Home Centers, which is accused of identical conduct. Here, Plaintiffs' claims arise from the use of Web Trackers on the Lowes Website to spy on Plaintiffs and the Class in violation of CIPA. A plain reading of the Complaint makes clear that both Lowe's Companies and Lowe's Home Centers are responsible for the Lowes Website and the spying technology it uses. Indeed, in response to the jurisdictional arguments raised by Lowe's Companies, Plaintiffs (*supra* at 7-10) discuss multiple publicly available facts which establish that Lowe's Companies, including its senior executives, are responsible for the Lowes Website. Given the narrow scope of the CIPA Section 638.51 violations at issue and the plain allegations of the Complaint,

this is not a situation where it is "impossible for the Court to draw the necessary connection between the actions or omissions of the various defendants," which may have been the situation in the various cases Defendants cite which, of course, do not involve claims under CIPA Section 638.51. Def. Brief at 30. Again, Defendants studiously ignore that the Ninth Circuit has rejected Defendants' precise "collective" pleading argument in privacy cases like this one. *See, e.g., Briskin*, 135 F.4th at 762.[21]

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss should be denied. To the extent the Court requires additional information to assess Defendants' jurisdictional arguments, Plaintiffs respectfully request the opportunity to conduct jurisdictional discovery prior to resolution of those arguments and, consistent with other cases bringing similar claims, Plaintiffs respectfully request that any dismissal be without prejudice to allow Plaintiffs to cure any defect.[22]

---

[21] By contrast, Defendants' cases, *Evans v. Sherman*, 2020 WL 1923176, at *3 (E.D. Cal. Apr. 21, 2020) involved a Section 1983 civil rights claims by a prisoner, and *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) involved 23 causes of action (none under CIPA) against the various companies that developed allegedly defective smartphones.

[22] *See Heiting*, 2025 WL 736594, at *2 (dismissing with leave to amend upon a finding that the defects in plaintiff's complaint "can be cured by amendment); *Heiting*, 2025 WL 1430663, at *2-3 (denying motion to dismiss amended complaint).

DATED: July 3, 2025

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Avi Josefson*
Avi Josefson (admitted *pro hac vice*)
(N.Y. Bar No. 4149407)
(avi@blbglaw.com)
Michael Blatchley (admitted *pro hac vice*)
(N.Y. Bar No. 4747424)
(michaelb@blbglaw.com)
Timothy Fleming (admitted *pro hac vice*)
(N.Y. Bar No. 5413539)
(timothy.fleming@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

-and-

Jonathan D. Uslaner (Cal. Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

**DON BIVENS PLLC**
Don Bivens (*pro hac vice* forthcoming)
(don@donbivens.com)
Teresita T. Mercado (*pro hac vice* forthcoming)
(teresita@donbivens.com)
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Tel: (602) 762-2661

*Counsel for Plaintiffs*