Bethany G. Lukitsch, Bar No. 314376
blukitsch@bakerlaw.com
Andrew C. Burnquist, Bar No. 359076
aburnquist@bakerlaw.com
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, California 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859

Michael A. Kushner, Bar No. 335840
mkushner@bakerlaw.com
**BAKER & HOSTETLER LLP**
600 Anton Blvd, Suite 900
Costa Mesa, California 92626-7221
Telephone: 714.754.6600
Facsimile: 714.754.6611

Attorneys for Defendants
LOWE'S COMPANIES, INC. and
LOWE'S HOME CENTERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JUSTIN BRADSHAW, and GUSTAVO LOPEZ, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LOWE'S COMPANIES, INC., a North Carolina corporation, and LOWE'S HOME CENTERS, LLC, a North Carolina limited liability company,

Defendants.

Case No.: 3:25-cv-00742-DMS-MMP

[*Assigned to the Hon. Dana M. Sabraw*]

**DEFENDANTS LOWE'S COMPANIES, INC., AND LOWE'S HOME CENTERS, LLC'S RESPONSE TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

*[Hearing vacated per Dkt. No. 22]*

Defendants Lowe's Companies, Inc. and Lowe's Home Centers, LLC (collectively, "Lowe's") submit this Response to Plaintiffs Justin Bradshaw and Gustavo Lopez's Opposition to Lowe's Notice of Supplemental Authority [Dkt. No. 25] ("Response").

Faced with the Ninth Circuit's decision in *Popa v. Microsoft Corporation*, No. 2:23-cv-00294-JLR, 2025 WL 2448824 (9th Cir. Aug. 26, 2025), which fatally undermines their efforts to conjure Article III standing, Plaintiffs offer a strained attempt to distinguish *Popa* and reargue their opposition to Lowe's Motion to Dismiss. Specifically, Plaintiffs contend that: (1) Plaintiffs "have alleged a concrete and particularized harm that was not before the Ninth Circuit in" *Popa* (*see* Response, 1:21-22); (2) the session replay technology in *Popa* differs materially from the trackers allegedly used by Lowe's (*see id.*, 2:12-15); and (3) *Popa* reaffirmed pre-*TransUnion LLC v. Ramirez,* 594 U.S. 413, 425 (2021) decisions, including *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 599-601 (9th. Cir. 2020). *See id.*, 3:12-13. None of these arguments withstand scrutiny.

**I. Plaintiffs Have Not Stated Any Tangible Injury Sufficient to Confer Standing**

For the first time, Plaintiffs assert that by alleging Lowe's "secretly collected something of value," they have pled a "monetary injury" sufficient to establish Article III standing. *See* Response, 1:22-2:11. This argument, conspicuously absent from their Opposition to Lowe's Motion to Dismiss, is unavailing.

At the outset, Plaintiffs do not allege that Lowe's collection deprived them of anything. *See generally*, FAC. Even assuming Lowe's collected Plaintiffs' vaguely alleged "unique identifiers" and "browsing information," and further assuming such information has monetary value prior to its disclosure, Plaintiffs do not allege that the value of their information diminished. *See generally, id.*; *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) ("[A]lthough it's true that each user's information is worth a certain amount of money



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to [Defendant], it does not follow that the same information, when not disclosed, has independent economic value to an individual user."). Of course, Plaintiffs still possess the very information they claim Lowe's "took" from them. *See* Response, 2:6-8. Without any allegation of actual loss or tangible harm—let alone any allegations explaining *how* they have suffered any harm—Plaintiffs' theory of "monetary injury" fails. *See, e.g.*, *LaCourt v. Specific Media, Inc.*, No. 10-cv-01256-GW, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (in rejecting allegations of injury for purposes of Article III-standing analysis, explaining that "Plaintiffs do not explain how they were 'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party"); *cf. Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021) ("Although the studies cited by Pruchnicki establish that personal information may have value in general, Pruchnicki failed to adequately allege that *her* personal information actually lost value."); *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024) (granting motion to dismiss and finding no injury alleged where plaintiffs did not allege facts explaining *how* defendant's collection and use of plaintiffs' information reduced the value of that information); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) ("[T]he Amended Complaint fails to allege how either Plaintiff was foreclosed from capitalizing on the value of his personal data.").

Moreover, Plaintiffs' last-ditch attempt to manufacture standing contradicts their own allegations. Plaintiffs try to distinguish *Popa* by arguing that the plaintiff there made no allegation that the information collected from the website was shared with third parties. First, in *Popa*, the plaintiff *did* allege that the information collected was shared with a third party—Microsoft—not just the pet website owner. *See Popa*, 2025 WL 2448824 at *2 (alleging that "if a website user views a certain product offered for sale [on the pet store website], that information is captured by Microsoft Clarity embedded on the website."). But even so, Plaintiffs' FAC makes clear that

Baker & Hostetler LLP
Attorneys at Law
Costa Mesa

the alleged injury occurred "at the moment their information was improperly acquired by Lowes," not when it was shared. *See* FAC, ¶ 57. If Plaintiffs truly believed the nature of their purported harm was monetary, the injury would arise from the sharing of valuable data (as they now appear to assert), not its mere collection. Finally, Plaintiffs' newly asserted theory of monetary harm is fundamentally at odds with their claim of privacy harm. On one hand, Plaintiffs contend that the data at issue holds commercial value because they have sold—or could hypothetically sell—it to third parties. On the other hand, they simultaneously claim that the same data is private and sensitive, warranting protection from disclosure. Plaintiffs cannot have it both ways: information cannot be both commercially exploitable and so private that its mere exposure constitutes a concrete privacy injury.

Because Plaintiffs themselves have not alleged any monetary harm, *Popa*'s silence on these hypothetical tangible harms is immaterial.

## II. **Plaintiffs Still Have Not Established Any Privacy Injury**

Plaintiffs next argue that because the technology at issue in *Popa* (session replay technology) is different from the technology Plaintiffs assert here (labeled as "Web Trackers" by Plaintiffs), *Popa* is inapposite. This distinction is fatally flawed for (at least) two reasons.

*First*, Plaintiffs misapprehend the nature of the Ninth Circuit's analysis in *Popa*. There, the Ninth Circuit examined "the *specific* underlying harm experienced by the plaintiff and compare[d] it, in detail, to a *specific* common-law tort." *Popa*, 2025 WL 2448824 at *4 (emphasis original). Put simply, it is the alleged underlying harm that matters, not the mechanism by which it is delivered. *See id.* ("At base—and all we need to acknowledge to decide this case—is that *TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system."). Here, like in *Popa*, Plaintiffs attempt to analogize their purported harm "to the common-law privacy torts

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

of intrusion upon seclusion and public disclosure of private facts." *Id.*, at *5; Response, 2:26-3:1 ("[T]he privacy violation in this case closely resembles traditional privacy harms recognized at common law of the kind the *Microsoft* court described[.]"). But Plaintiffs' argument here fails for the same reasons it did in *Popa*: Plaintiffs' "[do] not explain how the tracking of [their] interactions with the [Lowe's] website caused [them] to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 2025 WL 2448824 at *4. Indeed, Plaintiffs identify no specific information or contents they shared with Lowe's let alone any "embarrassing, invasive, or otherwise private information collected" or disclosed by Lowe's. *Id.* Like *Popa*, Plaintiffs attempt to analogize the purported intrusion at issue here to the wiretapping and recording of a private telephone conversation stretches credulity to its limits. *See* Response, 3:5-8.

*Second*, Plaintiffs ignore that district courts are already applying *Popa* to the same technologies at issue here in finding no Article III standing. *See Khamooshi, et al. v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (holding that "*Popa* controls the analysis" where plaintiffs' alleged collection of information related to device type, browser type, IP address, geographic information, and "device fingerprints" and dismissing complaint with prejudice for lack of standing); *Price v. Converse, Inc., et al.*, No. 2:24-CV-08091-FLA, 2025 BL 360629 (C.D. Cal. Sept. 30, 2025) (applying *Popa* to dismiss complaint for lack of standing where plaintiff alleged that "'TikTok Software gathers data including browser information, geographic information, and referral tracking,' and that 'Defendant used this information to fingerprint the data and deanonymize Plaintiff by matching it 'with existing data TikTok has acquired and accumulated about hundreds of millions of Americans[.]'"'). This Court should follow *Popa* and, like other courts in the Central and Northern Districts of California, focus its analysis on

the specific harms Plaintiffs allege, not the mechanism by which the harm was purportedly delivered.

### III. ***Popa* Does Not "Reaffirm" *In re Facebook***

Finally, Plaintiffs assert that *Popa* reaffirmed *In re Facebook*, which predates *TransUnion*, for the proposition that a privacy violation alone is sufficient for standing. *See* Response, 3:14-19. It did no such thing. Confronted with an argument identical to the one Plaintiffs raise here, the court in *Price* explained the import of *Popa*'s discussion of *In re Facebook*:

> Plaintiff additionally argues she has standing because "[t]he instant action is remarkably similar to the allegations the Ninth Circuit found sufficient [in] *In re Facebook*." As the Ninth Circuit noted in *Popa*, *In re Facebook* predated *TransUnion* and "the question of concreteness under *TransUnion* was not clearly presented in that case." While the Ninth Circuit chose not to revisit *In re Facebook* in deciding *Popa*, the court distinguished *In re Facebook* on the specific facts of that case and noted specifically that the court "might analyze [the statute at issue] differently today, especially after the Supreme Court's decision in *TransUnion*." This court, therefore, will not deny the Motion on this basis.

*See Price*, 2025 BL 360629, at *3 n.3 (internal citations omitted).

This Court should afford the same weight to *Popa*'s discussion of *In re Facebook* here.

DATED: September 30, 2025

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Michael A. Kushner
Andrew C. Burnquist

*Attorneys for Defendants*
LOWE'S COMPANIES, INC. and
LOWE'S HOME CENTERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA