Bethany G. Lukitsch (SBN 314376)
blukitsch@bakerlaw.com
Kamran B. Ahmadian (SBN 314566)
kahmadian@bakerlaw.com
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310-820-8800
Facsimile: 310-820-8859

Michael A. Kushner (SBN 335840)
mkushner@bakerlaw.com
**BAKER & HOSTETLER LLP**
600 Anton Blvd., Suite 900
Costa Mesa, CA 92626-7221
Telephone: 714-754-6600
Facsimile: 714-754-6611

*Attorneys for Defendant*
LOWE'S HOME CENTERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JUSTIN BRADSHAW, and GUSTAVO LOPEZ, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LOWE'S HOME CENTERS, LLC, a North Carolina limited liability company,

Defendant.

Case No.: 3:25-cv-00742-DMS-MMP

[*Assigned to the Hon. Dana M. Sabraw*]

**DEFENDANT LOWE'S HOME CENTERS, LLC's NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE § 638.51)**

*[Filed concurrently with Declaration of Guillermo Baeza ISO Motion to Dismiss Second Amended Class Action Complaint]*

Date: March 27, 2026
Time: 1:30 p.m.
Courtroom: 13A

**TO THE HONORABLE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 27, 2026 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 13A of the James M. Carter and Judith N. Keep United States Courthouse, located at 333 West Broadway, San Diego, CA 92101, Defendant Lowe's Home Centers, LLC ("Lowe's") will and hereby does move (the "Motion") for an order dismissing Plaintiffs Justin Bradshaw and Gustavo Lopez's (collectively, "Plaintiffs") Second Amended Class Action Complaint for Violation of California Invasion of Privacy Act, Cal. Penal Code § 638.51 ("SAC"). This Motion is made pursuant to Federal Rules of Civil Procedure 8 and 12(b)(1), on the grounds that Plaintiffs have not established Article III standing through either an invasion of privacy or financial injury.

Lowe's bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities, and Proposed Order, the pleadings, papers and records on file in this action, and such oral argument as may be presented at the time of the hearing.

Dated: January 13, 2026

**BAKER & HOSTETLER LLP**

By: *_/s/ Bethany G. Lukitsch_*
Bethany G. Lukitsch
Kamran B. Ahmadian
Michael A. Kushner

*Attorneys for Defendant*
LOWE'S HOME CENTERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Factual Background .......... 2

B. Procedural Background .......... 2

III. LEGAL STANDARD .......... 5

IV. PLAINTIFFS LACK ARTICLE III STANDING .......... 5

A. Plaintiffs Have Not Plausibly Pled An Invasion of Privacy Injury. .......... 6

1. Plaintiffs fail to allege facts about their own visits to the Website. .......... 8

2. Plaintiffs have no legally protected privacy interest in the information allegedly collected. .......... 9

3. Plaintiffs have no reasonable expectation of privacy in the information allegedly collected. .......... 15

4. Nothing Lowe's did was highly offensive. .......... 16

B. Plaintiffs Have Not Suffered Monetary Harm. .......... 18

V. CONCLUSION .......... 21


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of the U.S. for an Order Pursuant to 18 U.S.C. sec. 2703(d)*, 830 F. Supp. 2d 114 (E.D. Va. 2011) ........ 11, 15

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........ 20

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App’x 351 (9th Cir. 2015) ........ 12

*Bradshaw v. Lowe's Companies, Inc.*, No. 25CV0742 DMS (MMP), 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ........ 12

*Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........ 7

*Carolus v. Nexstar Media Inc.*, No. 24-cv-07790, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ........ 6, 9, 12, 19

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) ........ 5

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 19, 20

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ........ 13

*Esparza v. Kohl’s Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024) ........ 13, 17

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 19, 20

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ........ 6

*Ferry v. DF Growth REIT*,
No. 22-cv-02001, 2024 WL 5011949 (S.D. Cal. Dec. 6, 2024) .......................... 5

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (Cal. Ct. App. 2011), *as modified* (June 7, 2011) .......................... 17, 18

*Gabrielli v. Insider, Inc.*,
No. 24-cv-01566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .............. 7, 11, 12

*Gary v. Dynatrace, Inc.*,
747 F.Supp.3d 245 (D. Mass. 2024) .......................... 9

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) .......................... 19

*Hancock v. Urb. Outfitters, Inc.*,
830 F.3d 511 (D.C. Cir. 2016) .......................... 12

*Hart v. TWC Prod. & Tech.*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .......................... 16

*Hartley v. Urb. Outfitters, Inc.*,
No. Civ. 23-4891, 2024 WL 3445004 (E.D. Pa. July 17, 2024) .......................... 9

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465, 2023 WL 3933073 (N.D. Cal. June 9, 2023) .......................... 20

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......................... 12

*Henson v. Turn, Inc.*,
No. C 15-01497 JSW, 2018 WL 6605624 (N.D. Cal. Dec. 17, 2018) .......................... 10

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (Cal. 2009) .......................... 17

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (Cal. 1994) .......................... 15

*Hughes v. Vivint, Inc.*,
No. CV 24-3081, 2024 WL 5179916 (C.D. Cal. July 12, 2024) .................. 7, 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 17

*Ji v. Naver Corp.*,
No. 21 Civ. 5143, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022).......... 13

*Jones v. Tonal Systems, Inc.*,
751 F.Supp.3d 1025 (S.D. Cal. 2024) (Simmons, J.).......... 17

*Klimas v. Comcast Cable Communications, Inc.*,
No. 02-cv-72054, 2003 WL 23472182 (E.D. Mich. 2003).......... 11

*Kobayashi v. McMullin*,
No. 2:19-CV-06591, 2023 WL 11822286 (C.D. Cal. July 7, 2023).......... 7

*Lightoller v. Jetblue Airways Corp.*,
No. 23-cv-00361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) (Huff, J.) .......... 7, 10, 13

*Lineberry v. AddShopper, Inc.*,
No. 23-cv-01996, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .......... 19

*Loder v. City of Glendale*,
14 Cal. 4th 846 (Cal. 1997) .......... 6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. July 12, 2012).......... 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 5

*Massie v. Gen. Motors, LLC*,
No. 21-787, 2022 WL 534468 (D. Del. Feb. 17, 2022) .......... 13

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) (Huff, J.) .......... 7, 10, 18

*Mitchener v. Talkspace Network LLC*,
No. 2:24-cv-07067-JAK, 2025 WL 1822801 (C.D. Cal. June 27, 2025).......... 6, 10, 13

*In re Nickolodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 11

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ........ 15

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........ 18

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 6, 9, 15, 17

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-cv-0402, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) (Lorenz, J.) ........ 10

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) (Battaglia, J.) ........ 6, 9, 12

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ........ 18

*Saeedy v. Microsoft Corp.*,
No. 23-cv-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ........ 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 5, 6

*Starkey v. Rushmore Loan Mgmt. Servs. LLC*,
No. SACV191588, 2019 WL 8989907 (C.D. Cal. Dec. 10, 2019) ........ 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 5, 6, 7

*U.S. v. Christie*,
624 F.3d 558 (3d Cir. 2010) ........ 11

*U.S. v. Latham*,
No. 06-CR-379, 2007 WL 4563459 (D. Nev. Dec. 18, 2007) ........ 11

*United States v. Jenkins*,
No. 1:18-CR-00181, 2019 WL 1568154 (N.D. Ga. Apr. 11, 2019) ........ 11, 12

*United States v. Kidd*,
394 F. Supp. 3d 357 (S.D.N.Y. 2019) ........ 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*United States v. Monroe*,
350 F. Supp. 3d 43 (D.R.I. 2018) ........ 11

*Wooten et al. v. Biolife Plasma Servs. et al.*,
No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) ........ 9, 17

*Wright v. TrueCare Property Holdings, Inc.*,
No. 3:25-cv-00786, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) (Simmons, J.) ........ 9, 17

*Xu v. Reuters News & Media Inc.*,
No. 24 civ. 2466, 2025 WL 488501, at *4 (S.D.N.Y. Feb. 13, 2025) ........ 7, 12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. July 15, 2021) ........ 13

*In re Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018) ........ 10

**Statutes**

Cal. Civ. Code § 1798.140(v)(1)(A) (CCPA) ........ 14

Cal. Penal Code § 638.51 *et seq.* (CIPA) ........ *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) ........ 5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# I. INTRODUCTION

For the third time, Plaintiffs Justin Bradshaw and Gustavo Lopez (collectively, "Plaintiffs") assert a single claim under the California Invasion of Privacy Act ("CIPA") against Defendant Lowe's Home Centers, LLC's ("Lowe's" or "Defendant") attempting to apply the criminal wiretapping law to nearly ubiquitous website analytics and advertising technology ("website technology"). This Court previously dismissed Plaintiffs' First Amended Complaint ("FAC"), finding, among other deficiencies, that Plaintiffs lacked Article III standing. Despite adding allegations, Plaintiffs' Second Amended Complaint ("SAC") remains fundamentally flawed. Like its predecessors, the SAC fails to allege an injury in fact sufficient to establish Article III standing.

As this Court already has recognized, simply alleging a violation of the California Invasion of Privacy Act ("CIPA") is not sufficient on its own to establish an Article III injury. [*See* ECF 39 ("MTD FAC Order") at 10.] Plaintiffs must allege facts showing they suffered the type of privacy harm that has traditionally been actionable in federal courts. Plaintiffs have again failed to allege any such harm. Instead, Plaintiffs allege Lowe's collected basic header information—such as IP addresses, URLs, and browsing or device information—which does not implicate any legally protected privacy interest because it is neither personally identifiable nor private. Plaintiffs cannot have a reasonable expectation of privacy in information that is freely provided, routinely collected by virtually every website operator, and often required to browse the internet in the first place. Even if Plaintiffs do have a privacy interest in this information, Lowe's' collection and dissemination is not highly offensive or an egregious breach of social norms—as Plaintiffs recognize, this practice is ubiquitous across the internet.

In an effort to avoid dismissal, Plaintiffs now, in their third pleading attempt, assert that Lowe's' misappropriation of their information somehow caused them financial harm. Similar allegations of monetary injury have been rejected by courts





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

in website tracking technology cases. Further, the SAC omits key details to sustain a financial injury here, such as: (1) the monetary value of the information Lowe's collected; (2) the loss of value that can be attributable to Lowe's' conduct; (3) whether Plaintiffs intended to sell their information or were no longer able to do so after Lowe's' conduct; and (4) whether there even is a market where they could sell their information. Moreover, Plaintiffs' allegations of financial harm associated with their alleged inability to sell this information is also entirely inconsistent with their claim that this information is private and safely guarded from circulation to third parties. And, Plaintiffs cannot establish standalone value by alleging that Lowe's uses such information to improve its operations and function. Not only are these allegations conclusory and lack factual support but they fail to demonstrate any independent value *to Plaintiffs*.

For these reasons, and because Plaintiffs have failed to amend their complaint to overcome these deficiencies, this Court must grant the instant Motion to Dismiss SAC without leave to amend.

## II. BACKGROUND

### A. Factual Background

Defendant Lowe's Home Centers, LLC operates Lowe's' retail stores across the United States as well as the Website, which is a public, consumer-facing retail website allowing visitors to browse Lowe's' products and services, find Lowe's stores and suppliers, and purchase products sold in the stores, among other related services. *See* Website (last visited: January 13, 2026); Declaration of Guillermo Baeza in Support of Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("Baeza Decl."), ¶¶ 4-5.

### B. Procedural Background

Plaintiffs filed their initial Complaint against Lowe's Companies, Inc. and Lowe's Home Centers, LLC on March 31, 2025. [ECF 1.] After informally meeting and conferring and participating in a telephonic, pre-filing conference with the



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Court, Plaintiffs filed a First Amended Complaint ("FAC") asserting a single claim under CIPA, Cal. Penal Code § 638.51. [ECF 14.] On June 13, 2025, defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint ("MTD FAC") wherein they argued the FAC failed to establish Article III standing, the Court did not have personal jurisdiction over defendant Lowe's Companies, Inc., and Plaintiffs otherwise failed to state a claim upon which relief could be granted. [ECF 17.]

On November 12, 2025, this Court granted in part and denied in part the MTD FAC, with leave to amend. [ECF 39.] The Court found that it did not have personal jurisdiction over then-defendant Lowe's Companies, Inc. [*Id.* at 7:1-4.] The Court also held that Plaintiffs failed to demonstrate that they suffered a concrete injury sufficient for Article III standing. [*Id.* at 11:21-24.] The Court noted that Plaintiffs' claim is necessarily "limited to the capture of their IP addresses," and "case law overwhelmingly supports" the position that Plaintiffs have no reasonable expectation of privacy in one's IP address. [*Id.* at 8:16-9:16.] The Court denied Lowe's' failure to state a claim argument. [*Id.* at 12:4-14:16.] Plaintiffs were granted leave to amend the FAC to cure the pleading deficiencies in the Court's MTD FAC Order. [*Id.* at 14:21-15:1.]

On November 19, 2025, Plaintiffs filed their SAC against Lowe's Home Centers, LLC. [ECF 40.] Just like the FAC, the SAC provides essentially no information about Plaintiffs or their interaction with Lowe's' website, or their relationship with TikTok or Microsoft, to the extent that such relationships exist. The SAC only alleges that Plaintiffs visited the Lowe's Website multiple times, but most recently in March 2025 and January 2025. SAC, ¶¶ 23, 24, 82. Otherwise, the SAC is noticeably silent as to key facts: (1) when Plaintiffs' visited the Website; (2) how many times they visited the Website; (3) the devices and browsers they used to visit the Website; (4) whether they created or signed up for a Lowe's loyalty account; (5) what webpages they visited on the Website; (6) whether they accessed Lowe's' Privacy Statement; (7) whether they entered/typed any information into the Website;

(8) whether they purchased any items on the Website, or (9) whether they opted out of allowing the website technology to collect information.

The remaining allegations are generic to a potential website visitor, not the Plaintiffs. For example, the SAC generally alleges that Lowe's "secretly installed various trackers, including the TikTok Pixel and Microsoft Bing on visitors' internet browsers" that collected "visitors' IP addresses … the full destination URL [of pages visited] on the Website … referring URL … header information describing the browser, operating system, and device used, and placed unique IDs on the visitor's browser or device." *Id.*, at ¶¶ 37-38. Then, Lowes allegedly "funneled the information it collected from visitors to TikTok and Microsoft," allowing TikTok and Microsoft to "match Lowes visitors to their existing, enriched advertising profiles" maintained by TikTok and Microsoft. *Id.* at ¶ 41. TikTok and Microsoft supposedly compiled information to create user profiles on every visitor through their own platforms, partner sites, and third-party sources. *Id.*

The TikTok Pixel ("TikTok Cookie") purportedly may engage "in a process known as 'fingerprinting' through which it collects as much information as possible about the Lowes Website user and matches that information to the existing data from TikTok's database that has been gathered from other websites with the TikTok Pixel installed, which includes millions of users." *Id.*, at ¶ 48. The SAC also alleges the TikTok Cookie can use AutoAdvanced Matching technology, where visitor information "such as name, date of birth, and address" is sent to TikTok when submitted to a website that installed the TikTok Cookie. *Id.*, at ¶ 51. Plaintiffs also identify the Microsoft Bat Bing Tracker ("Microsoft Cookie") as collecting a user's Microsoft ID, a Microsoft identifier set on a user's browser used to collect information about that user. *Id.,* at ¶ 61. Plaintiffs do not specify what identifiers or user actions the Microsoft Cookie collects.

Notably, Plaintiffs do not specifically explain *how or whether* TikTok or Microsoft received *their* personal information to create a consumer profile of each

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

of them. *Id.* The only plausible connection made in the SAC to Plaintiffs is the allegation that Plaintiffs "both had Facebook accounts when they visited the Lowes Website," as TikTok and Microsoft purportedly collect information through data website visitors have shared with Facebook. *Id.* at ¶ 87.

With no cognizable privacy or monetary harm alleged, this Court must grant the instant Motion for failure to satisfy Article III standing.

## III. LEGAL STANDARD

Under Federal Rule 12(b)(1), the Court must dismiss actions that lack subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). At the core of the Court's jurisdictional inquiry is Article III's standing requirement. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). The "'irreducible constitutional minimum' of standing consists of three elements": "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Lujan*, 504 U.S. at 560-61). Where a case is "at the pleading stage, the plaintiff must clearly allege facts demonstrating[] each element." *Ferry v. DF Growth REIT*, No. 22-cv-02001, 2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024) (cit. omitted).

## IV. PLAINTIFFS LACK ARTICLE III STANDING

Just like the FAC, the Court should dismiss Plaintiffs' SAC under Rule 12(b)(1) because Plaintiffs again fail to allege facts that plausibly establish Article III standing. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Whether a harm is "concrete" depends on whether it bears a "close





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

relationship" to a harm "traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 425. In other words, courts must assess whether an individual plaintiff has suffered harm that has traditionally been actionable in our nation's legal system. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). A "bare procedural violation divorced from any concrete harm ... does not suffice for Article III standing." *TransUnion*, 594 U.S. at 440. Indeed, an injury in fact does not necessarily exist merely because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. For Article III standing purposes, "***an injury in law is not an injury in fact***." *Id.* (emph. added).

**A. Plaintiffs Have Not Plausibly Pled An Invasion of Privacy Injury.**

The SAC claims Lowe's violated Plaintiffs' right to privacy. *See* SAC, ¶ 101. The common law analogue for this alleged privacy harm—an invasion of privacy claim under California common law—requires pleading three "threshold issues": "a legally protected privacy interest, reasonable expectation of privacy, and serious invasion of privacy." *Loder v. City of Glendale*, 14 Cal. 4th 846, 891 (Cal. 1997). Courts evaluate these elements by asking whether plaintiffs had a "reasonable expectation of privacy" in the information and whether the intrusion by defendant was "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).

Plaintiffs failed to allege either element. More fundamentally, courts—including the Ninth Circuit—routinely reject similar privacy claims based on website tracking. *See Popa*, 153 F.4th 784; *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) (Battaglia, J.) (no privacy injury from information collected by website tracking technology); *Mitchener v. Talkspace Network LLC*, No. 2:24-cv-07067-JAK, 2025 WL 1822801 (C.D. Cal. June 27, 2025) (no violation of protectable privacy interest from collection of information by website tracking technology); *Carolus v. Nexstar Media*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Inc.*, No. 24-cv-07790, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) (collection of IP address, browser and device data, and other identifying information insufficient for privacy injury); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023) (finding lack of Article III standing where "[p]laintiff does not identify any personal or sensitive information she disclosed on the website"); *Lightoller v. Jetblue Airways Corp.*, No. 23-cv-00361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (Huff, J.) ("Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact."); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023) (Huff, J.) (motion to dismiss CIPA claim for lack of standing granted where no personal information was disclosed to or collected by the defendant); *Hughes v. Vivint, Inc.*, No. CV 24-3081, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (motion to dismiss granted for lack of injury-in-fact from defendant's use of "TikTok Software" on its website); *Gabrielli v. Insider, Inc.*, No. 24-cv-01566, 2025 WL 522515, at *8 (S.D.N.Y. Feb. 18, 2025) (dismissing Section 638.51 claim for lack of standing); *Xu v. Reuters News & Media Inc.*, No. 24 civ. 2466, 2025 WL 488501, at *4 (S.D.N.Y. Feb. 13, 2025) (same).[1]

Courts also reject conclusory allegations of "invasion of privacy" as insufficient to establish standing. *TransUnion*, 594 U.S. at 425; *Kobayashi v. McMullin*, No. 2:19-CV-06591, 2023 WL 11822286, at *8 (C.D. Cal. July 7, 2023),

[1] Plaintiffs' reliance on their speculative "fingerprinting" theory fails. *See* SAC, ¶ 48. Courts reject such claims absent allegations that plaintiffs maintain an account with the third-party platform that could link otherwise anonymous data to an identity. *See Vivint, Inc., supra*, at *5. Plaintiffs allege no such connection. Plaintiffs do not allege that either of them maintained an account with TikTok or Microsoft. Although they admit to having Facebook accounts, they do not allege submitting personal information through those accounts. SAC, ¶ 87. Their "fingerprinting" allegations merely describe what the technology ***could do in theory***, not what happened here. SAC ¶ 48. Moreover, Plaintiffs' theory defies logic: Plaintiffs cannot show harm from TikTok or Microsoft allegedly receiving information—such as name, device type, or email—that those entities may already have through Facebook.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*report and recommendation adopted*, 2023 WL 11822282 (C.D. Cal. Sept. 1, 2023) (claims that are "based upon nothing more than repeated conclusory allegations of 'invasion of privacy'" do not satisfy federal pleading requirements); *Starkey v. Rushmore Loan Mgmt. Servs. LLC*, No. SACV191588, 2019 WL 8989907, at *3 (C.D. Cal. Dec. 10, 2019) (finding use of the phrase "invasion of privacy" insufficient to allege injury-in-fact).

Threshold issues aside, Plaintiffs still have failed to establish any of the three elements necessary for finding an invasion of privacy violation, necessitating dismissal of Plaintiffs' claim for lack of Article III standing.

**1. Plaintiffs fail to allege facts about their own visits to the Website.**

As a threshold matter, Plaintiffs fail to establish standing because they allege ***no facts about their own visits to the Website***. The SAC fails to identify any information that if collected (a fact they do not allege) would arise to the level of a privacy invasion. Plaintiffs ***do not*** allege: (1) when they specifically visited the Website, (2) the devices they used, (3) whether they created or signed into a Lowe's account, (4) what webpages they visited, (5) whether they made searches on the Website, (6) whether they made purchases on the Website, (7) whether they opted out of allowing the Website technology to collect information, (8) whether they have TikTok or Microsoft accounts, (9) what "electronic impulses" of theirs were captured (if any), (10) what information those electronic impulses contained, (11) how they got to the Website, (12) how they accessed the website—e.g., were they on public Wi-Fi, a private network, or were they using a public or private IP address; or (13) whether they entered any personal or identifying information (i.e. name, address) into the Website. *See generally*, SAC.

Plaintiffs' allegations about the TikTok Cookie and Microsoft Cookie are cast in hypothetical and conclusory terms and are entirely untethered to Plaintiffs' own experiences. *See generally, id.* General allegations about what technology *may*





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*be capable* of collecting do not sufficiently establish what the website technology *actually collected* from Plaintiffs (if anything). *See Hartley v. Urb. Outfitters, Inc.*, No. Civ. 23-4891, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."); *Wooten et al. v. Biolife Plasma Servs. et al.*, No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619 at *4 (E.D. Cal. Oct. 22, 2025) (allegations that "third-party trackers have the *capability* to use" information collected "to engage in ID bridging" insufficient for privacy injury); *Gary v. Dynatrace, Inc.*, 747 F.Supp.3d 245, 249 (D. Mass. 2024) (description of how website technology "*could* be used" falls short of concrete injury) (emphasis in original). Aside from these vague allegations, Plaintiffs cannot plausibly claim that any personal information was collected from them or *caused them harm*, because they have not alleged any basic facts about their interactions with the Website.

**2. Plaintiffs have no legally protected privacy interest in the information allegedly collected.**

Courts consistently hold that bare invasion of privacy allegations cannot establish Article III standing when no personally identifiable or private information is disclosed. *See Popa*, 153 F.4th at 791 ("[Plaintiff] identifies no embarrassing, invasive, or otherwise private information collected" by website technology); *Culligan*, 2025 WL 3064113 at *3 (no privacy interest in website collection of IP address, operating system information, browser information, "screen resolution, geolocation data, email address, mobile ad IDs, social media identities, customer and/or loyalty IDs, cookies and device signature – as well as the connections between them"); *Wright v. TrueCare Property Holdings, Inc.*, No. 3:25-cv-00786, 2025 WL 3248749 at *4 (S.D. Cal. Nov. 21, 2025) (Simmons, J.) (website tracker's collection of page visit information is not sufficiently "specific private information" for invasion of privacy, even when merged with Facebook profile information); *Carolus*, 2025 WL 1338193 at *1 (website tracker's collection of IP addresses,



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"browser and device data," and "other identifying information" is insufficient for invasion of privacy injury); *Talkspace*, 2025 WL 1822801 at *8 ("Plaintiff has not sufficiently alleged the collection or disclosure of any of her personal information that would violate a protectable privacy interest" from website tracking technology); *Lightoller*, 2023 WL 3963823 (S.D. Cal. June 12, 2023) (no injury-in-fact from collection of website activity because plaintiff did not allege he disclosed personal information when visiting the website); *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-cv-0402, 2024 WL 5114133 at *4 (S.D. Cal. Dec. 13, 2024) (Lorenz, J.) ("Rather than identify personal information he shared during his visit to the Website, Plaintiff makes generalized and conclusory allegations" that "are insufficient to assert that Plaintiff suffered a concrete injury."); *Mikulsky*, 682 F. Supp. 3d at 864 (no injury-in-fact because Plaintiff did not identify the specific personal information she disclosed that implicates a protectable privacy interest.); *Hughes*, 2024 WL 5179916 at *5 (same); *Henson v. Turn, Inc.*, No. C 15-01497 JSW, 2018 WL 6605624, at *4 (N.D. Cal. Dec. 17, 2018) (same).

Here, Plaintiffs cannot show any invasion of privacy because they do not—and cannot—allege that Lowe's collected information that actually *identifies* them. Plaintiffs do not allege that their name, postal address, email address, telephone number, birthdate or any other of their personal identifiers were collected. While Plaintiffs assert Lowe's can collect Website visitors' IP addresses, "unique IDs," and "Device and Browsing Data," (SAC, ¶ 47), none of these ***identify Plaintiffs***. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1023 (9th Cir. 2018) (listing "personal identifying information" as "names, account numbers, passwords, email addresses, billing and shipping addresses."). Consequently, Plaintiffs' invasion of privacy claim fails. *See Hughes*, 2024 WL 5179916, at *5 (if "Plaintiff's identity would not be connected with the anonymous information, … [then] seemingly no harm would have occurred.").

Courts repeatedly confirm that an IP address does not "personally identify"



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

any one person. *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. sec. 2703(d),* 830 F. Supp. 2d 114, 120 (E.D. Va. 2011) ("IP address information, by itself, cannot identify a particular person."); *see Gabrielli*, 2025 WL 522515 at *4 ("Not only does an IP address fail to identify the actual individual user, but the geographic information that can be gleaned from the IP address is only 'as granular as a zip code'"); *In re Nickolodeon Consumer Priv. Litig.*, 827 F.3d 262, 283 (3d Cir. 2016) ("an IP address … would likely be of little help in trying to identify an actual person."). At most, an IP address identifies the *general* location of a gateway or router, but not a specific user or device. *United States v. Kidd*, 394 F. Supp. 3d 357, 366 (S.D.N.Y. 2019) ("To be sure, an IP address does not refer to a physical location itself.").

Moreover, an IP address does not indicate *who* is using the device or even identify any specific *device* on a network. Multiple devices can share the same IP address, and one person can use multiple IP addresses by connecting from different locations. *See id.* at 363-64 (IP address provides only "location at which one of *any number of computer devices* may be deployed") (emphasis added) (citing *United States v. Monroe*, 350 F. Supp. 3d 43, 49 (D.R.I. 2018)); *U.S. v. Latham*, No. 06-CR-379, 2007 WL 4563459, at *4 (D. Nev. Dec. 18, 2007) ("a single IP address usually supports multiple computer devices"); *United States v. Jenkins*, No. 1:18-CR-00181, 2019 WL 1568154 at *4 (N.D. Ga. Apr. 11, 2019) ("IP address information … does not follow [a] person around. Indeed, *it does not even identify the user*, just the location of internet access.") (emphasis added).

And IP addresses can change over time, as they are owned by internet service providers and simply leased to particular gateway devices. *See In re Application of the U.S. for an Order Pursuant to 18 U.S.C. sec. 2703(d),* 830 F. Supp. 2d at 120 ("Depending on the ISP, a customer's IP address can change each time he logs on to the internet.") (citing *U.S. v. Christie*, 624 F.3d 558, 563 (3d Cir. 2010)); *Klimas v. Comcast Cable Communications, Inc.*, No. 02-cv-72054, 2003 WL 23472182 at *5

(E.D. Mich. 2003) ("[d]ynamic IP addresses constantly change and unless an IP address is correlated to some other information … it does not identify any single subscriber by itself."). In short, an IP address is ***neither device-specific nor user-specific.***

Because an IP address does not identify a person, this Court and others have repeatedly rejected any notion of a cognizable injury based upon their collection. *See Bradshaw v. Lowe's Companies, Inc.*, No. 25CV0742 DMS (MMP), 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025) (Recognizing that "the case law overwhelmingly supports th[e] argument" that there is no reasonable expectation of privacy in an IP address); *Culligan*, 2025 WL 3064113 at *4 ("Courts have consistently held that internet users have no expectation of privacy in their IP addresses"); *Carolus*, 2025 WL 1338193 at *1 (website tracker's collection of visitor's IP address "does not cause the kind of harm that can be vindicated in federal court."); *Gabrielli*, 2025 WL 522515 at *4 ("…an IP address which cannot identify an individual user and at most conveys general geographic information does not justify [that a legally protected privacy interest is implicated]"); *Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) ("There is no legally protected privacy interest in IP addresses alone[.]"); *Jenkins*, 2019 WL 1568154, at *5 ("Defendant Jenkins had no reasonable expectation of privacy in an IP address assigned by the Internet Service Provider[.]"); *Xu*, 2025 WL 488501 at *4 (collecting cases).[2]

[2] Given these characteristics, an IP address is analogous to a ZIP code. With only a ZIP code, one can identify the general area where something is located but cannot glean where exactly in that ZIP code something is located. Courts in California and elsewhere have routinely found that disclosure of a ZIP code alone does not result in an invasion of privacy. *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App'x 351, 354 (9th Cir. 2015) ("California does not recognize any common law or constitutional privacy right causes of action for requesting, sending, transmitting, communicating, distributing, or commercially using ZIP Codes."); *Hancock v. Urb. Outfitters, Inc.,* 830 F.3d 511, 514 (D.C. Cir. 2016) ("If, as the Supreme Court advised, disclosure of an incorrect zip code is not a concrete Article III injury, then even less so is Hancock and White's naked assertion that a zip code was requested and recorded without any concrete consequence.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

For the same reason, Lowe's' alleged collection of "unique IDs," or "Device and Browsing Data," (SAC, ¶ 27), cannot establish an invasion of privacy when that data is tied only to an IP address that does not identify Plaintiffs.[3] *See, e.g.*, *Massie v. Gen. Motors, LLC*, No. 21-787, 2022 WL 534468 (D. Del. Feb. 17, 2022) ("Plaintiffs fail to explain how either GM's or Decibel's possession of anonymized, non-personal data regarding their browsing activities on GM's website harms their privacy interests in any way."). Courts routinely hold that the sharing of anonymized, non-personal browsing data does not harm a protectable privacy interest. *See Talkspace*, 2025 WL 1822801 at *4 (device, browser, and geographic information is not personal information and collection does not violate a protectable privacy interest); *Lightoller*, 2023 WL 3963823, at *4 (no standing to allege CIPA claim because text "entered into an information field" and pages visited were not "private" information); *Esparza v. Kohl's Inc.,* 723 F. Supp. 3d 934, 945-46 (S.D. Cal. 2024) (browser history is not sensitive, personally identifiable information); *Saeedy v. Microsoft Corp.*, No. 23-cv-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) ("[M]ouse movements, clicks, keystrokes, keywords, URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities" are insufficiently personal); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. July 12, 2012) ("The information disclosed to third parties … including a numeric code associated with a user and the URL of the profile page viewed, does not meet the standard set by California courts."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. July 15, 2021) (finding no cognizable privacy interest in keystrokes, page clicks, page views, and browsing activities); *Ji v. Naver Corp.*, No. 21 Civ. 5143, 2022 WL

[3] As the name would suggest, a device identifier identifies only a *device* and not a specific person and can be shared by multiple persons. It cannot identify an individual without being connected to some other personal identifier, not alleged here. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (collection of device serial number cannot, on its own, identify an individual).





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "user and device identifiers" could not give rise to "a privacy injury"). At most, this data reveals information about the *devices* used to access the website—not the person using it.

Plaintiffs' last-ditch effort to invoke the California Consumer Privacy Act's ("CCPA") definition of "personal information" similarly fails. Plaintiffs will ostensibly argue that based on the CCPA's definition, certain identifiers such as unique IDs, online identifiers, and IP addresses qualify as "personal information" because they "identify or could reasonably be linked" to a consumer or household. SAC, ¶¶ 91-92 (citing Cal. Civ. Code § 1798.140(v)(1)(A)). This argument fails for two reasons.

*First*, the CCPA's definition of "personal information" applies only within the statute. Before defining any terms, Section 1798.140 starts with the phrase, "For purposes of this title[.]" Plaintiff improperly applies this term of art outside its statutory context to try and establish an Article III injury. The plain text of section 1798.140 forecloses such use.

*Second*, even if the CCPA definition applied in this context (it does not), Plaintiffs plainly misinterpret it. The CCPA does not presume *all* IP addresses or identifiers are personal information. Instead, they qualify *only if* they "relate to, describe, [are] reasonably capable of being associated with, or could be reasonably linked" to a particular consumer or household. Cal. Civ. Code § 1798.140(v)(1)(A). Plaintiffs allege no facts showing that any IP address, identifier, or browsing activity collected relates to or can be linked to them. The SAC does not specify what data was collected or explain how it connects to either Plaintiff.

Accordingly, even if the CCPA's definition of "personal information" applies in the Article III context for a CIPA claim (it does not), the SAC falls short in detailing the specific information collected from Plaintiffs and how it can be related or linked back to them.

**3. Plaintiffs have no reasonable expectation of privacy in the information allegedly collected.**

Even if the Court overlooks Plaintiffs' failure to allege that Lowe's collected information identifying them and implicating a privacy interest, Plaintiffs still do not establish the reasonable expectation of privacy element necessary to establish a privacy injury. That expectation depends on "the sort of information revealed" by the purported invasion. *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1271 n. 17 (9th Cir. 1998). Factors such as "customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (Cal. 1994).

Because Plaintiffs fail to identify *any* personal information captured by the website technology, they cannot establish a reasonable expectation of privacy in the basic browsing information from Plaintiffs' visits to the Website. The Ninth Circuit's decision in *Popa* aptly illustrates why no such expectation exists. There, the defendant's collection and sharing of visitors' mouse movements, clicks, keystrokes, URLs of webpages visited, and other communications did not constitute an Article III injury. *Popa*, 153 F.4th at 786. The *Popa* court likened this data "to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* at 791.

This analogy is equally applicable to this case and underscores the absence of any reasonable expectation of privacy in the information Lowe's collected. Here, as in *Popa*'s example, a visitor to the website is essentially browsing the innocuous, non-sensitive aisles of a Lowe's store. Moreover, the reasonable expectation of privacy is even lower here where electronic records are more easily collected and stored and IP addresses are automatically exchanged with the website operator as a necessary step for website access. *See, e.g., In re Application*, 830 F. Supp. 2d at 120 ("Most websites maintain standard logs of connecting IP addresses, along with date

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and time information, and may even include information about the user associated with the connection"). Unlike a physical store, entry online requires providing certain information (like IP address) to function.

Plaintiffs' own allegations further undermine their claim that a reasonable expectation of privacy exists. The SAC asserts that website tracking is ubiquitous, alleging that TikTok and Microsoft collect visitor data through their "vast networks of publishers and third-party data sources." SAC, ¶ 93. Plaintiffs claim these profiles are "populated with *Internet-wide* browsing activity," targeting website visitors "across the internet." *Id.* at ¶¶ 10, 11 (emph. added). They further allege that this website technology is installed on "hundreds of thousands of other, non-Lowes websites" to populate datasets. *Id.* at ¶ 13. If this practice is as widespread as Plaintiffs contend, it follows that internet users have a diminished expectation of privacy in information routinely collected and shared by other third parties. *See Hart v. TWC Prod. & Tech.*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (reasonable expectation of privacy "rests on customs" and "practices" surrounding particular activities"). The prevalence of this practice confirms that the information at issue does not enjoy a reasonable expectation of privacy.

And finally, even if Plaintiffs could show a *subjective* belief that unidentified information was somehow private, they must also establish that their belief was objectively *reasonable*. They cannot. The Website is publicly available and does not handle particularly sensitive data, like an online medical portal. It is unreasonable to claim an expectation of privacy in unspecified information collected from a home improvement retailer's website.[4]

**4. Nothing Lowe's did was highly offensive.**

[4] Plaintiffs cite Lowe's' Privacy Statement, claiming it promised to share visitors' information only with their consent. SAC, ¶ 94. But the SAC does not allege that either Plaintiff read or even knew about the Privacy Statement during their visits. Simply put, the Privacy Statement cannot shape Plaintiffs' expectation of privacy when they neither read it nor were aware of it. This argument therefore fails.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Even if Plaintiffs could establish that any information collected was identifiable and attributable to them (versus a device or IP address) and that they had a reasonable expectation of privacy in the information collected (they cannot), they still fail to show that Lowe's engaged in "highly offensive" conduct. Although the highly offensive test is context-specific, the alleged invasion must be "sufficiently serious and unwarranted as to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (Cal. 2009).

Courts have routinely maintained that the collection and disclosure of general location information, like the information obtained from an IP address or ZIP code, device identifiers, or general browsing information on a public, unauthenticated website are not "highly offensive." *See Popa,* 741 F.4th at 791 (website tracker's collection of information not "remotely similar to the 'highly offensive' interferences or disclosures actionable at common law"); *Wright*, 2025 WL 3248749 at *4 (invasion of privacy claim dismissed for failure to identify specific private information that was intruded on for 'highly offensive' inquiry); *Wooten*, 2025 WL 2979619 at *3 (disclosure of email and IP address "does not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law"); *Jones v. Tonal Systems, Inc.*, 751 F.Supp.3d 1025, 1043 (S.D. Cal. 2024) (Simmons, J.) ("conclusory allegations" lacking "requisite specificity" with "only sparing references to the nature of the communications" insufficient for invasion of privacy claim); *Esparza,* 723 F. Supp. 3d at 946 (capture of "Plaintiff's 'personal details' and 'browsing history,'…and IP address…is insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest."); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (Cal. Ct. App. 2011), *as modified* (June 7, 2011) (finding that the collection and use of ZIP codes "does not meet the standard of 'highly offensive'") (internal quotes omitted); *In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of "the unique device identifier number, personal data, and geolocation information from



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs' iDevices…does not constitute an egregious breach of social norms").

In fact, California courts have dismissed invasion of privacy claims (under both California's Constitution and common law) when far more sensitive data allegedly was collected and disclosed. *See, e.g., Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (disclosure of Social Security Numbers "do[es] not constitute an egregious breach" of social norms); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d at 864 (no standing because "basic contact information does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts").

Further, as discussed above, the SAC's own allegations undermine any claim of highly offensive conduct. *See* Section IV.A.3. Plaintiffs emphasize the ubiquity of website tracking across the internet, alleging that TikTok and Microsoft collect data from "hundreds of thousands" of websites affecting "millions of users." SAC, ¶ 48. An "intrusion" that occurs routinely across the internet cannot constitute an intrusion that is an egregious breach of social norms. *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1077 (N.D. Cal. 2016) (offensive based on "degree of intrusion" and "context, conduct, and circumstances" surrounding intrusion); *Folgelstrom*, 195 Cal. App. 4th at 992 (no egregious breach of social norms from "*routine* commercial behavior") (emph. added).

Because Plaintiffs fail to allege facts showing that the technology at issue collected *their own identifying information*, that they had a reasonable expectation of privacy, or that Lowe's' conduct was highly offensive, they have not alleged a cognizable privacy injury-in-fact and lack Article III standing. As such, the SAC must be dismissed.

### B. <u>Plaintiffs Have Not Suffered Monetary Harm.</u>

The SAC introduces *new* allegations for the first time that Plaintiffs allegedly suffered monetary harm from Lowe's' conduct. SAC, ¶¶ 102-104. Plaintiffs vaguely assert that Lowe's "misappropriated Plaintiffs' data without providing



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

compensation, despite there being a market for such data." *Id.* at ¶ 103. Plaintiffs claim that this misappropriation caused them economic injury sufficient for Article III standing because "it frustrated their ability either to sell their data or pay to prevent its disclosure." *Id.*

Courts routinely reject this economic injury theory in website technology cases. *See Carolus*, 2025 WL 1338193 at *1 (lost economic interest in data injury fails when "no allegations about the potential monetary value of [plaintiffs'] IP addresses nor any theory for how (or to what degree) the value of that information decreases" when tracked on website); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024) (misappropriation of personal information not economic injury when failure to allege third-party acquisition of information would "necessarily mean that the plaintiffs could not sell their data in the market they allege exists"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (deprivation of economic value of personal information argument rejected for failure to show information has "independent economic value" outside of value that company gives to it and plaintiffs do not plausibly allege they intended to sell, or someone else would have bought, their personal information); *Lineberry v. AddShopper, Inc.*, No. 23-cv-01996, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) (misappropriation of data injury fails in the CDAFA context when there is no allegation of a market for browsing activity or the "actual value of the plaintiffs' data", nor any allegation as to whether data can still be sold if a third party has it or how data decreases in value when misappropriated); *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 913 (7th Cir. 2017) (describing personal information economic value argument as "strange[]" and stating it is "gibberish").

Even in the rare instances when this theory is permitted, the SAC omits factual allegations that courts deem essential: (1) the potential monetary value of each type of information Lowe's allegedly collected; (2) how Lowe's' collection diminished that value; (3) Plaintiffs' intent to sell the data – a concept inconsistent with the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

notion that they simultaneously hold it private; (4) the existence of a buyer of that data; and (5) Plaintiffs' inability to sell their data after Lowe's' collection. The omission of these facts alone doom Plaintiffs' theory.

Plaintiffs also argue in a conclusory fashion that Lowe's was unjustly enriched because the data allegedly fueled advertising efforts that "increased Lowes's [sic] revenue" and "allowed the company to sell hyper-targeted advertisements." SAC, ¶¶ 15, 104. Essentially, the SAC argues that because Lowe's profits from the collection of the information, the information has standalone value. Courts likewise have squarely rejected this logic. In *Doe I v. Google, Inc.*, which involved similar allegations, the court held that a defendant's profit from data "does not mean the plaintiff has 'lost money or property as a result.'" 741 F. Supp. 3d at 836. The *Doe I* court found that, even though plaintiffs alleged that the defendant profited from the collection of information, plaintiffs did not lose money or property as a result. *Id.* Similarly in *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465, 2023 WL 3933073 at *6 (N.D. Cal. June 9, 2023), the court held that "just because Plaintiffs' data is valuable in the abstract, and because [defendant] might have made money from it, does not mean that Plaintiffs have 'lost money or property' [for standing purposes] as a result." *See Bass v. Facebook, Inc.,* 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property"); *In re Facebook*, 402 F. Supp. 3d at 804 ("Facebook may have gained money through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs lost money.").

Finally, Plaintiffs' own allegations about the ubiquity of website tracking also undermine their claim of financial harm. If similar data has already been collected by "hundreds of thousands" websites and logged into consumer profiles (SAC, ¶ 13), it is implausible that the data (Plaintiffs browsing history from a home improvement store website) retained any independent market when Lowe's allegedly collected it.

Accordingly, Plaintiffs have failed to allege they suffered a financial injury, sufficient to satisfy Article III standing. The SAC should be dismissed with prejudice.

## V. CONCLUSION

For all of the foregoing reasons, Lowe's respectfully requests that the Court dismiss Plaintiff's SAC in its entirety with prejudice.

Dated: January 13, 2026

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Kamran B. Ahmadian
Michael A. Kushner

*Attorneys for Defendant*
LOWE'S HOME CENTERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES