**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Avi Josefson (*pro hac vice*)
NYS Bar No. 4149407
avi@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

**DON BIVENS PLLC**
Don Bivens (*pro hac vice* forthcoming)
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Tel: (602) 762-2661

*Counsel for Plaintiffs*

[Additional counsel listed on signature page.]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN BRADSHAW, and GUSTAVO LOPEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LOWE'S HOMES CENTERS, LLC, a North Carolina limited liability company,<br><br>Defendant. | Case No.: 3:25-cv-00742-DMS-MMP<br><br>*Assigned to the Hon. Dana M. Sabraw*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT LOWE'S HOME CENTERS, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE §638.51)**<br><br>Date: March 27, 2026<br>Time: 1:30 p.m.<br>Courtroom: 13A |

## TABLE OF CONTENTS


**Page**

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

A. Plaintiffs Allege A Concrete Injury To Their Privacy Interests ........ 6

1. Plaintiffs Suffered A Concrete Injury Through Lowes's Interference With Their Ability To Control The Dissemination Of Their Personal Information ........ 8

2. Plaintiffs Allege A Concrete Injury By Pleading The Elements Of An Intrusion Upon Seclusion Claim ........ 12

a. Plaintiffs Allege A Reasonable Expectation Of Privacy In The Data Lowes Collected And Its Use ........ 12

b. Plaintiffs Allege Lowes's Collection And Use Of Their Data Was A Highly Offensive Intrusion ........ 17

3. Defendant's Remaining Arguments Are Unpersuasive ........ 18

B. Plaintiffs Allege A Concrete Economic Injury ........ 21

1. Lowes Retains An Unlawful Economic Benefit ........ 21

2. Lowes Deprived Plaintiffs Of Their Right To Exclude ........ 23

3. Lowes Deprived Plaintiffs Of The Benefit Of Their Bargain ........ 24

4. Lowes Deprived Plaintiffs Of The Right To Control Their Personal Information ........ 25

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) .......... 8

*Ass'n of Irritated Residents v. EPA*,
10 F.4th 937 (9th Cir. 2021) .......... 11

*Backus v. Gen. Mills, Inc.*,
122 F. Supp. 3d 909 (N.D. Cal. 2015) .......... 24

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 23

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .......... 24, 25

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 19

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 23

*Camplisson v. Adidas Am., Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) .......... 1, 2, 8, 11

*Carolus v. Nextstar Media, Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 19

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......... 8, 10, 11, 18

*Deivaprakash v. Conde Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) .......... 7, 11, 12

*Doe I v. Google, Inc.*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 23

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 17, 23

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................passim

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ....................6

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ....................passim

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ....................19

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ....................13, 18

*Gary v. Dynatrace, Inc.*,
747 F. Supp. 3d 245 (D. Mass. 2024) ....................18

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ....................13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................22

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ....................3, 13, 14

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 26, 2026) ....................8, 9, 10

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ....................22

*Hartley v. Urban Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. 2024) ....................18

*Hassid v. Alex and Ani, LLC*,
2026 WL 160535 (C.D. Cal. Jan. 20, 2026) ....................11

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) ....................23

*Henson v. Turn, Inc.*,
2018 WL 6605624 (N.D. Cal. Dec. 17, 2018) ....................20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....15

*Hughes v. Vivint Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024)....19

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026)....21

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025)....13, 16, 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....7

*Lightoller v. JetBlue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ....19

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)....23, 24

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)....19

*Mitchener v. Talkspace Network LLC*,
2025 WL 1822801 (C.D. Cal. June 27, 2025)....19

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ....11

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....passim

*Posadas v. Goodyear Tire & Rubber Co.*,
2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ....19

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024)....14

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....17

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d. 1075 (N.D. Cal. 2025)....22

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......................................... 19

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......................................... 15

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......................................... 6

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......................................... 13, 21

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......................................... 6

*In re TikTok, Inc., Minor Priv. Litig.*,
2025 WL 3628598 (C.D. Cal. Nov. 5, 2025), *adopted sub nom.*, 2025 WL 3628448 (C.D. Cal. Nov. 6, 2025) .......................................... 20, 23, 24, 25

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......................................... 2, 7

*Turner v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) .......................................... 25

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*,
489 U.S. 749 (1989) .......................................... 8

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .......................................... passim

*Wiley v. Universal Music Group, Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......................................... 14, 16

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) .......................................... 6

*Wooten v. Biolife Plasma Services*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......................................... 18, 19

*Wright v. TrueCare Prop. Holdings, Inc.*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) .......................................... 20

*Xu v. Reuters News & Media, Inc.*,
2025 WL 3035016 (Super. Ct. Santa Clara Cty. Oct. 24, 2025) .......................................... 12

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ....................................................19

**STATUTES**

Cal. Bus. & Prof. Code §17200 ..........................................................23, 24

Cal. Civ. Code § 1798.140(v)(1)(A), (F), (G), (K)................................................16

Cal. Penal Code § 637.2(c) ..........................................................................23

Cal. Penal Code § 638.51...........................................................................passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1)...........................................................................5

## INTRODUCTION

Defendant moves to dismiss the Complaint it wanted Plaintiffs to file, not the one they did. Lowe's Home Centers, LLC ("Lowes") secretly installed third-party tracking technology on its Website that gave Lowes a comprehensive picture of everything visitors were doing: "who they were, what they were doing, when they visited, where they were when they visited, why they were visiting, and how they got there." ¶3. Lowes then shared this information with TikTok and Microsoft, which used the data to de-anonymize visitors, connecting them to pre-existing consumer profiles populated with data the companies had collected first-hand and obtained from their vast networks of publishers, partners, and data brokers. ¶¶8-10. Lowes also tracked visitors' movements ***long after they left the Website***, gaining information about what visitors did as they traversed the Internet. ¶13.[1]

Lowes did this without Plaintiffs' consent and to its own financial benefit. ¶¶15-16. Lowes spends millions per month on digital advertising (¶79), and the visitor data it collected from Plaintiffs and the Class enhanced the performance, efficiency, and profitability of its advertising through strategies like retargeting and conversion tracking. ¶¶73-81. As Lowes was siphoning and sharing visitor data, its Website falsely stated that Lowes only shared personal information with "'unaffiliated entities (companies outside the Lowe's family)' … 'with [visitors'] consent'"—language Lowes promptly deleted when Plaintiffs filed this suit. ¶¶14-16; ¶94. Both Plaintiffs visited the Website and were therefore subject to Lowes secret data collection practices. ¶¶82-87.

These facts establish standing under Article III and state a claim under Section 638.51 of the California Invasion of Privacy Act ("CIPA"). *Camplisson v. Adidas*

---

[1] Citations to "¶_" are to the Second Amended Complaint (ECF No. 40) ("Complaint") and "MTD" are to Defendant's Motion to Dismiss (ECF No. 51). All internal citations are omitted and emphasis is added unless otherwise noted. Capitalized terms have the meanings ascribed in the Complaint.

*Am., Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) (concluding, on near identical allegations about the TikTok Pixel and Microsoft Bat Bing, that plaintiffs had Article III standing). This Court previously dismissed Plaintiffs' First Amended Complaint in light of *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), concluding that Plaintiffs' CIPA claim was limited to the collection of their IP addresses, that they failed to argue that the resulting privacy harm was analogous to a common-law injury, and that they had not alleged an economic injury. ECF No. 39 at 7-12. Plaintiffs' amended complaint addresses precisely these concerns.[2]

Plaintiffs allege a concrete privacy injury. Under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), Plaintiffs need only identify a harm similar in kind to a harm actionable at common law, not an exact duplicate. *Id.* at 424. They need not plead, element by element, an underlying common-law claim to support standing. After *Popa*, courts applying this approach have found a concrete privacy injury on allegations concerning the very same Trackers at issue here. *See, e.g.*, *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *10 (N.D. Cal. Oct. 16, 2025) (Article III standing for CIPA pen register claim involving Microsoft Bat Bing); *Camplisson*, 2025 WL 3228949, at *6 (same, concerning Bat Bing and TikTok Pixel). But even if the Court requires Plaintiffs to plead each element of a common-law privacy tort, Plaintiffs have done so: Lowes intruded upon Plaintiffs' reasonable privacy expectations in a highly offensive manner, which is enough to state a claim for intrusion upon seclusion. Indeed, courts have refused to dismiss intrusion upon seclusion claims related to the same Trackers Lowes uses. *See, e.g.*, *Walsh*, 2025 WL 2939229, at *14-15 (sustaining intrusion upon seclusion claim

---

[2] Defendant concedes that the Trackers are devices or processes that captured "routing, addressing, or signaling information"—IP addresses, Unique IDs, and Device and Browsing Data—and so are pen registers that violate CIPA. Defendant argues only that Plaintiffs lack a concrete injury under Article III. MTD at 1. The sole question, then, is where this case will be heard: here or in state court.

based in part on defendant's use of Microsoft Bat Bing tracker); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 969-72 (C.D. Cal. 2023) (same, concerning TikTok Pixel).

Plaintiffs also allege a concrete economic injury under four independent theories, any one of which is sufficient for Article III standing: (i) Lowes derived an unlawful economic benefit through the Trackers, and Plaintiffs are entitled to related profits; (ii) Plaintiffs have a property interest in their personal information, such that Lowes's secret collection of that information deprived them of their right to exclude; (iii) Lowes deprived Plaintiffs of the benefit of their bargain; and (iv) Lowes deprived Plaintiffs of the ability to control their personal information.

## STATEMENT OF FACTS

In California alone, over one million unique visitors use the Lowes Website every year. ¶109. Without informing those visitors, Lowes secretly installed the TikTok Pixel and Microsoft Bat Bing (the "Trackers") on their browsers as soon as they visited the Website. ¶3. Those Trackers placed persistent Unique IDs on each visitor's browser (¶4) and collected visitors' IP addresses (¶37). They also collected the referring URL (*i.e.*, the website visitors were browsing before navigating to Lowes' Website). That is, whether a user was visiting websites related to mental health, personal finances, political or religious beliefs, online dating, or other intimate topics, Lowes secretly collected that information. ¶¶4-7, 38. And they collected numerous additional pieces of personal information, including: (i) the full destination URL of the page requested on the Lowes Website (*i.e.*, what visitors browsed); (ii) precise timestamps for each request; and (iii) header information describing the browsers, operating systems, and devices visitors used to access the Website (together with referring URLs "Device and Browsing Data"). *Id*. In Lowes's Privacy Statement effective at the time of Plaintiffs' visits, Lowes represented that it would only share personal information "'with unaffiliated entities (companies outside the Lowe's family)' … 'with [visitors'] consent.'" ¶94. Plaintiffs and the Class never consented to any data collection or sharing (¶¶ 85-86),

yet Lowes collected and shared their data anyway (¶¶82-87). Tellingly, after Plaintiffs filed their lawsuit, Lowes deleted this language. ¶16.

When Lowes shared the Tracker data with TikTok and Microsoft, those companies used it to de-anonymize visitors by linking them to pre-existing consumer profiles. ¶¶8, 94. Both TikTok and Microsoft maintain libraries of extensive consumer profiles that are populated with any and all data the companies can procure, either first-hand or from their vast networks of publishers, partners, and data brokers. ¶¶10, 69. These profiles contain Internet-wide browsing activity, app usage, Unique IDs, location data, search history, purchase history, inferred interests, sensitive demographic data, and social media activity. ¶10. In other words, TikTok and Microsoft have stockpiled cradle-to-grave profiles that they make available to companies that utilize their Trackers. *Id.* The Tracker data Lowes passed along was the key that enabled TikTok and Microsoft to match visitors to these existing consumer profiles. ¶11. When TikTok and Microsoft received the Tracker data, they ran it through their systems to connect the Lowes visitors to their existing consumer profiles. *Id.* For Lowes, this de-anonymization was valuable because it meant access to troves of personal data, which Lowes used to increase the efficiency and profitability of its advertising spend—including through retargeting (*i.e.*, later showing visitors advertisements on non-Lowes websites for items they viewed on the Lowes Website), conversion tracking (*i.e.*, measuring how many people who clicked on ads actually made purchases), and precise targeting (*i.e.*, using personal information like inferred interests and socioeconomic status to increase sales). ¶¶11, 34-45, 73-81. In effect, Lowes bartered the valuable data collected from Website visitors to Microsoft and TikTok, and received in exchange more valuable data on those visitors that it could use to its financial benefit, including through advertising.

The Trackers enabled Lowes to stalk visitors after they left its Website. Once the Trackers placed Unique IDs on visitors' browsers, TikTok and Microsoft could recognize visitors when they returned to the Lowes Website or visited any of the

hundreds of thousands of non-Lowes websites on which the Trackers were installed. ¶13. TikTok and Microsoft added this browsing data to visitors' consumer profiles, expanding the information available to Lowes and other Tracker users. ¶¶14, 78.

Plaintiffs detailed specific allegations about their experiences with the Website. ¶¶82-87. Justin Bradshaw visited multiple times, as recently as March 2025. ¶82. So did Gustavo Lopez, as recently as January 2025. *Id.* When they did:

- "[T]he Website, pursuant to Lowes's direction, installed the Trackers on Plaintiffs' browsers." ¶82.
- "The Trackers collected Plaintiffs' IP addresses, Device and Browsing Data, and placed Unique IDs on their browsers that allowed Lowes to track Plaintiffs' interactions with the Lowes Website, and TikTok and Microsoft to track Plaintiffs' interactions with both the Lowes Website and all other websites that Plaintiffs visited on which the Trackers were installed." ¶83.
- "TikTok and Microsoft used the collected data to match Plaintiffs to pre-existing profiles by syncing Plaintiffs' data that they received from the Lowes Website with data they and other third-party tracking companies had already collected from Plaintiffs." *Id.*
- "Lowes, TikTok, and Microsoft used the data collected from Plaintiffs (i) to identify Plaintiffs and either create new profiles for Plaintiffs in Microsoft and TikTok's databases or match Plaintiffs to pre-existing profiles; (ii) to target Plaintiffs with advertising based in part on their location; and (iii) to increase the effectiveness and profitability of Lowes's advertising campaigns." ¶84.

Both Plaintiffs had Facebook accounts when they visited the Lowes Website. ¶87. Because TikTok and Microsoft had access to information Plaintiffs had shared with social media platforms, Lowes was also able to use this information for its financial gain. ¶10. Plaintiffs neither knew of nor consented to Lowes's collection of their personal data, let alone the transmission of that data to others. ¶¶85-86.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) for lack of standing challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a defendant can bring either a factual challenge, disputing the truth of the

jurisdictional allegations, or a facial one, asserting instead that the allegations are "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, a defendant brings a facial attack, the court "assume[s] [the plaintiff's] allegations to be true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), *overruled on other grounds by* 91 F.4th 977 (9th Cir. 2024).

## ARGUMENT

Plaintiffs have standing to bring their CIPA claim. To bring a claim in federal court, Article III requires that Plaintiffs "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs have alleged both a concrete privacy injury and, under four separate theories, an economic injury. Any one suffices for standing.

### A. Plaintiffs Allege A Concrete Injury To Their Privacy Interests

Defendant mischaracterizes the Complaint and badly misstates Plaintiffs' well-pleaded allegations about their injury, insisting that the harm resulting from Lowes's CIPA violation involved only "basic header information—such as IP addresses, URLs, and browsing or device information." MTD at 1. To be clear, Plaintiffs allege—and Lowes does not dispute—that the Trackers are pen registers because they captured "routing, addressing, or signaling information," including "IP address[es]," "Device and Browsing Data," and "Unique IDs," and therefore state a claim under CIPA. ¶¶118-119; *see also Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *4-5 (N.D. Cal. Oct. 9, 2025) (IP addresses, device and browser type, and Unique IDs are "dialing, routing, addressing, or signaling" information).

While the collection of this data alone violates CIPA, Plaintiffs' Complaint alleges ***harm*** that extends far beyond the collection of "routing, addressing, or signaling information," including the harm caused by what Defendant did with that data and what it allowed others to do. Specifically, Lowes made the information it

collected through the Trackers available to TikTok and Microsoft, which they used to match Plaintiffs to pre-existing, comprehensive, cradle-to-grave consumer profiles and to track Plaintiffs on and off the Lowes Website. ¶83. Lowes, in turn, used this full complement of information to "target Plaintiffs with advertising" across the Internet, thereby obtaining a significant financial benefit from the information it secretly collected. ¶84. Lowes did this without Plaintiffs' consent. ¶16. These profile matching and off-website tracking allegations are traceable to Lowes's CIPA violation, and thus are relevant to Plaintiff's injury under Article III. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct."); *Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100, 1107 (N.D. Cal. 2025) ("Condé ignores [that] it enabled the third parties to amass information about [plaintiff] by embedding the code in its websites that surreptitiously installed the trackers on [plaintiff's] browser in the first place.").

"[I]ntangible harms can … be concrete[,] … includ[ing], for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. "History [is] the touchstone for concreteness." *Popa*, 153 F.4th at 789. Thus, to determine concreteness, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id*. An "exact duplicate in American history and tradition" is not required. 594 U.S. at 424. While some circuits interpret *TransUnion*'s "close relationship" requirement to mean a plaintiff must satisfy each element of a common law cause of action to establish standing, "[o]thers have adopted a less rigid approach that focuses on whether the harm experienced by a plaintiff is similar in kind to a harm protected by" a common-law tort. *Popa*, 153 F.4th at 790. The Ninth Circuit declined to adopt the element-by element approach in *Popa*. *Id.* at 790-91. That makes sense, since applying that

approach "would necessarily require an exact duplicate." *See, e.g.*, *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13 (N.D. Cal. Sept. 30, 2025).

After *Popa*, Courts that have properly interpreted its holding have concluded, on allegations concerning the very Trackers and tracking technology at issue here, that plaintiffs suffered a sufficiently concrete privacy invasion to support CIPA pen register claims. *Walsh*, 2025 WL 2939229, at *10 (Microsoft Bat Bing); *Camplisson*, 2025 WL 3228949, at *6 (Bat Bing and TikTok Pixel); *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025) (TikTok Pixel); *Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *2 (N.D. Cal. Jan. 26, 2026) (near identical tracking technology).[3] This Court should take the same approach. But even if the Court requires Plaintiffs to plead each element of a common-law privacy tort, Plaintiffs did: Lowes intruded upon their reasonable privacy expectations in a highly offensive way, enough for intrusion upon seclusion.

#### 1. Plaintiffs Suffered A Concrete Injury Through Lowes's Interference With Their Ability To Control The Dissemination Of Their Personal Information

"[V]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). That right "encompasses the individual's control of information concerning his or her person." *Id.*; *see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989) ("[T]he common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."). When websites use trackers to access "personally identifiable browsing history" and "cradle-to-grave profile[s]" without consent, a person's privacy interests are sufficiently harmed for standing. 956 F.3d at 598-99.

---

[3] The decisions do not always specify the tracker used, but the complaints do. *See, e.g.*, Class Action Complaint, at 25, *Walsh*, 5:25-cv-01601 (N.D. Cal.), ECF No. 1.

*In re Facebook* is foundational on this issue. There, Facebook users sued Facebook after discovering it used tracking technologies to monitor users' browsing activity on third-party websites. 956 F.3d at 596. Facebook did so even when users were logged out of their accounts, and used the collected data to create personal advertising profiles. *Id.* Facebook collected this data by embedding code onto the third-party websites, which sent data to Facebook about the users' behavior. *Id.* Plaintiffs brought several claims, including claims under CIPA and for intrusion upon seclusion, which Facebook challenged on standing grounds. *Id.* at 597-98. The Ninth Circuit rejected its standing argument because plaintiffs alleged "Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information." *Id.* at 599. "[B]y correlating users' browsing history with users' personal Facebook profiles—profiles that could include a user's employment history and political and religious affiliations—Facebook gained a cradle-to-grave profile without users' consent," which the Ninth Circuit called "a clear invasion of the historically recognized right to privacy." *Id.*

Courts have continued to rely on *Facebook* after *Popa*. In *Harris*, iHeartMedia placed "third-party trackers onto its users' browsers when they visit[ed] iHeart's website" that "store[d] unique identifiers on the user's browser, and cause[d] the browser to send identifying information, including the user's IP address and device metadata, to … third parties." 2026 WL 247875, at *1. Using that information, the third parties "track[ed] users 'across the internet.'" *Id.* They also "synced" the information with data collected from other sources "to build the most comprehensive user profiles possible" and made those profiles available for use in targeted advertising. *Id.* The plaintiffs had Article III standing for their CIPA pen register claim because they "los[t] the ability to control information about [themselves] and to avoid the broad dissemination of that information." *Id.* at 2.

The Court rejected iHeart's argument that *Popa* required a different result for two reasons. "First, the extent of tracking in *Popa* was significantly less intrusive

than the tracking at issue in" *Harris*. *Id.* at 2. The session-replay technology in *Popa* monitored browsing activity only "while on the defendant's website," which the Ninth Circuit found analogous to a "'store clerk[] observing shoppers … to identify aisles that are particularly popular or to spot problems that disrupt sales.'" *Id.* But the technology in *Harris* did more, making it akin to the "'cradle-to-grave profile' discussed in *In re Facebook*." *Id.* Similarly, the information collected by Lowes goes far beyond what a store clerk might observe, including the website a user visited before navigating to the Lowes Website. Second, "*Popa* did not involve any dissemination of the 'session-replay' beyond Defendant's own use." *Id.* But the *Harris* plaintiff alleged that the information iHeart collected was passed to third parties, which used it to match him to consumer profiles. Here, Plaintiffs' allegations are materially identical. ¶¶8-10. "Therefore, the scope of tracking and dissemination at issue in this case is not analogous to the tracking in *Popa*." *Id.*[4]

*Harris* is not an outlier. In *de Ayora*, for example, the plaintiffs sued various fast-food companies for using third-party trackers on their websites without visitor consent—including the TikTok Pixel. The trackers "caused cookies and tracking technologies to be placed on [plaintiffs'] devices without their knowledge." 2025 WL 3707561, at *2. As a result, the trackers allowed third parties to collect visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." *Id.* The Court dismissed defendants' Article III standing arguments, concluding that the plaintiffs had adequately alleged a concrete privacy injury—namely, that

---

[4] Session replay allows website operators to recreate a visitor's interactions for insight into how they are using the website. *Popa*, 153 F.4th at 786. "In essence, session-replay technology helps a business to determine which parts of its website are effective with customers and which are not." *Id.* Trackers, in contrast, collect information about who those users are, what users do on a website, the website they came from, and what they do after they leave the website. ¶¶34-72.

"Defendants deprived them of control of personal information." *Id.* at *3, n.6.

So too in *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025). In *Haleon*, the defendant installed third-party tracking cookies on various websites it operated. *Id.* at *1. Those trackers "'permit[ted] … Third Parties to use cookies and other tracking technologies to collect, track, and compile users' … browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data.'" *Id.* at *6. "As other courts in [the Ninth] Circuit have held in similar cases," the court concluded that the plaintiff's allegations that the defendant "deprived him control of personal information regarding his digital activity and profile [were] enough to show a concrete injury to his right to privacy and, subsequently, Article III standing." *Id.* (collecting cases). Indeed, a host of courts have reached the same conclusion. *See, e.g.*, *Camplisson*, 2025 WL 3228949, at *6; *Deivaprakash*, 798 F. Supp. 3d at 1107 n.4 (plaintiff "likely satisf[ied] Article III's injury requirement" where he "allege[d] a privacy invasion based on the creation of a detailed profile and his reduced capacity to remain anonymous" because "violation … encompasses how that collection allegedly allowed [] third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous."); *Hassid v. Alex and Ani, LLC*, 2026 WL 160535, at *2-3 (C.D. Cal. Jan. 20, 2026) (Article III standing for CIPA claim concerning TikTok Pixel); *accord Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1078 (C.D. Cal. 2024) (same).

The harm Plaintiffs and the Class suffered is traceable to Lowes's conduct. "An injury is fairly traceable to a challenged action as long as the links in the proffered chain of causation 'are not hypothetical or tenuous' and remain 'plausib[le].'" *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 943 (9th Cir. 2021). Plaintiffs have alleged that Lowes "enabled [TikTok and Microsoft] to amass information about [them] by embedding the code in its website[] that surreptitiously

installed the trackers on [Plaintiffs'] browser[s] in the first place." *Deivaprakash*, 798 F. Supp. 3d at 1107. Their injury "would not have occurred without [Lowes's] installation of the trackers that provided the addressing information used in building the third parties' profiles." *Id.*; *see also Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *3 (Super. Ct. Santa Clara Cty. Oct. 24, 2025) ("Defendant argues that the conduct of Third Parties is not relevant to Plaintiff's claim against it. However, it appears Defendant does not account for Plaintiff's allegation that it was responsible for the installation of the Trackers.").

### 2. Plaintiffs Allege A Concrete Injury By Pleading The Elements Of An Intrusion Upon Seclusion Claim

While not required by *Popa* or other controlling precedent, Plaintiffs also plead, element by element, that they have suffered a harm cognizable in tort. ¶¶88-101. Lowes invaded Plaintiffs' reasonable expectations of privacy in a highly offensive manner, conduct that is actionable as intrusion upon seclusion. To state a common law claim for intrusion upon seclusion under California law, a plaintiff must plead (1) a reasonable expectation of privacy and (2) an intrusion of that privacy that was highly offensive. *In re Facebook*, 956 F.3d at 601.

#### a. Plaintiffs Allege A Reasonable Expectation Of Privacy In The Data Lowes Collected And Its Use

"The existence of a reasonable expectation of privacy, given the circumstances of each case, is a mixed question of law and fact." *In re Facebook*, 956 F.3d at 601. Courts consider a variety of factors to determine if a plaintiff's privacy expectations were reasonable, "including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id.* at 602. In cases involving Internet tracking, the question is "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *Id.* at 601-02.

The amount of data collected can inform reasonable expectations of privacy.

*Id.* at 603. So can the type of data collected. Courts consistently find a reasonable expectation of privacy in the kind of "detailed URL[s]" that Plaintiffs allege were collected here. *Id.* at 605–06 (finding plaintiffs adequately pleaded a reasonable expectation of privacy in "full-string detailed URLs" which contain "the name of a website, folder and sub-folders on the web-server, and the name of the precise file requested."); ¶38 ("The Trackers also collect … the full destination URL of the page requested on the Lowes Website, including the path and query string."). Here again, Defendant asks this Court to close its eyes to the full scope of Plaintiffs' alleged harm, insisting instead that the Complaint concerns only "basic browsing information from Plaintiffs' visits to the Website." MTD at 15. "But that's only the beginning of the story." ¶8. "Through the Trackers, Lowes enabled TikTok and Microsoft to match Website visitors to existing profiles in their extensive user databases and track these visitors after they left the Lowes Website. Lowes then leveraged this data for targeted advertising." *Id.* The Trackers also collected data on the websites users visited before landing at the Lowes Website.

On allegations like Plaintiffs', courts have found a reasonable expectation of privacy. *In re Facebook*, 956 F. 3d at 603; *see also Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *8 (C.D. Cal. Dec. 4, 2025) (reasonable expectation where defendant "effectively deanonymized Plaintiffs and created 'digital fingerprints' for them"); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (Article III standing and intrusion upon seclusion claim pled where trackers installed on browsers facilitated creation of profiles monitoring browsing activity across the internet); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *4-7 (N.D. Cal. Jan. 27, 2026) (same); *Haleon*, 2025 WL 2494368, at *8 (denying motion to dismiss intrusion upon seclusion claim); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025) (same).

*Griffith v. TikTok* is instructive. A non-TikTok user sued TikTok for installing the TikTok Pixel on third-party websites, which sent data back to TikTok about the

plaintiff's browsing habits as she moved across the Internet, thereby enabling TikTok to develop a profile of her. 697 F. Supp. 3d at 966-68; *id*. at 967 n.2 ("the focus of Plaintiff's allegations is really [TikTok's] 'Pixel' code"). Plaintiff brought an intrusion upon seclusion claim, among others. *Id.* at 968. TikTok moved to dismiss on the grounds that the plaintiff lacked a reasonable expectation of privacy in the information TikTok collected through the Pixel. But the Court denied the motion to dismiss. Relying on the analysis in *In re Facebook*, the court concluded the plaintiff had sufficiently alleged that TikTok had "gained unwanted access to [her] data by electronic or other covert means, in violation of the law or social norms,' thereby violating [her] reasonable expectation of privacy." *Id.* at 971.

So too in *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347 (S.D. Cal. 2024). Carnival used Microsoft's session replay code to observe visitors' browsing activity on the website and fingerprinted them to observe their behavior across the Internet. *Id.* at 1353-54. Carnival sought to dismiss plaintiffs' privacy claims, arguing the alleged conduct was mere routine commercial behavior. *Id.* at 1362-63. But as Judge Curiel explained, "courts decline to dismiss invasion of privacy claims where plaintiffs allege that the intercepted information is used to compile a user's browsing history across other websites." *Id.* at 1363 (collecting cases).

A defendant's own actions can also "create[] a reasonable expectation of privacy[.]" *Walsh*, 2025 WL 2939229, at *14. Lowes created such expectations. First, Lowes did not use a pop-up screen to give visitors notice of the company's tracking practices or an opportunity to opt-out of such tracking. ¶68. It was therefore reasonable for visitors to assume that no tracking was occurring. "When California users visit a website, they can expect to see a popup screen giving them the option to opt out of various types of tracking." *Wiley v. Universal Music Group, Inc.*, 2025 WL 3654085, at *4-5 (N.D. Cal. Dec. 17, 2025) (sustaining intrusion upon seclusion claim based on website's use of third-party tracking technology). Second, in its Privacy Statement, Lowes represented that it would only share personal information

"'with unaffiliated entities (companies outside the Lowe's family)' … '**with [visitors'] consent**.'" ¶94. "Plaintiffs in no way consented to the data collection, sharing, and tracking that occurred" (¶16), but Lowes collected and shared their data anyway (¶¶82-87). Only after Plaintiffs filed this lawsuit did Lowes remove that language from its Website. ¶16. Lowes cannot now disavow the reasonable expectation of privacy it sought to reinforce. *See Walsh*, 2025 WL 2939229, at *14 (sustaining intrusion upon seclusion claim where website used banner that assured visitors they would not be tracked); *see also Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1104 (N.D. Cal. 2025) (denying MSJ because Google said it would not save data, creating a material dispute on reasonable expectation of privacy).

Defendant's sole response is that the Privacy Statement language is irrelevant to Plaintiffs' reasonable expectations because ***Plaintiffs*** were not aware of it when they visited the Website. MTD at 16 n.4. But that misunderstands the law. Courts' assessment of a reasonable expectation of privacy is an ***objective*** analysis that does not turn on Plaintiffs' subjective individual knowledge or expectations. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Once again, *In re Facebook* illustrates the point. There, Facebook moved to dismiss plaintiffs' intrusion upon seclusion claim for lack of a reasonable privacy expectation. In response, plaintiffs argued that Facebook had created the expectation because its "disclosures at the time … failed to acknowledge its tracking of logged-out users, suggesting that users' information would not be tracked[.]" 956 F.3d at 602. To assess this argument, the panel did not ask if the plaintiffs had individually read the documents. Instead, it considered only whether "an individual reading Facebook's promise … might [have] assume[d] that only logged-in user data would be collected." *Id.* In other words, it undertook an objective reader analysis. Because plaintiffs "alleged that the applicable Help Center page affirmatively stated that logged-out user data would not be collected," they "plausibly alleged that Facebook set an expectation that logged-out user data would not be collected[,] but then collected it anyway." *Id.* So their

expectation of privacy was reasonable. *Id.* at 602-03. The same result obtains here.

Last, underscoring the weakness of Defendant's position, Defendant argues the fact that California law defines all the data Lowes collected from Plaintiffs as "personal information" does not inform any expectation of privacy. Cal. Civ. Code § 1798.140(v)(1)(A), (F), (G), (K) (defining as "personal information" unique personal identifiers, IP addresses, browsing history, search history, and information regarding a consumer's website interactions). This is wrong. First, Defendant argues the California Consumer Privacy Act's definition of personal information has no application outside CCPA and thus no relevance to Article III. MTD at 14. Not so. "When evaluating Californians' reasonable privacy expectations, the CCPA's provisions are ***highly relevant*** 'customs, practices, and circumstances,' because they provide Californians with the reasonable expectation that they will have some control over their data and necessarily shape users' expectations." *Wiley*, 2025 WL 3654085, at *4. Second, Defendant makes the noncontroversial point that CCPA's definitions apply only when the information collected is linked to a "particular consumer or household." MTD at 14 (quoting Cal. Civ. Code § 1798.140(v)(1)(A)). But that is precisely what Plaintiffs allege: Lowes collected their Unique IDs, IP addresses, and Device and Browsing information and sent that information to TikTok and Microsoft, which TikTok and Microsoft used to identify visitors. ¶8.

Defendant's remaining argument is not persuasive. Lowes says there can be no reasonable expectation of privacy because the tracking technologies it deployed are widely used. MTD at 16. But courts have squarely rejected this argument, particularly where the defendant itself has done something to create the reasonable expectation. *See, e.g.*, *Walsh*, 2025 WL 2939229, at *14 (rejecting argument that "because the type of tracking information at issue here 'is routinely collected by websites across the internet,' Plaintiffs cannot have a reasonable expectation of privacy."); *Lewis*, 2025 WL 3687546, at *8 (rejecting argument that there can be no reasonable expectation of privacy in online information simply because "tracking

internet activity has become commonplace”).

**b. Plaintiffs Allege Lowes’s Collection And Use Of Their Data Was A Highly Offensive Intrusion**

Turning to the second prong, Lowes’s intrusion into Plaintiffs’ reasonable expectations of privacy was highly offensive. To assess whether an intrusion was highly offensive, “courts consider ‘the degree and setting of the intrusion,’ along with ‘the intruder’s motives and objectives.’” *Haleon*, 2025 WL 2494368, at *8. Whether a given invasion was highly offensive is a “factually intensive” inquiry. *Id*. As a result, “‘courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.’” *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019). “Only if the allegations ‘show no reasonable expectation of privacy or an insubstantial impact on privacy interests’ can the ‘question of [a serious or highly offensive] invasion [] be adjudicated as a matter of law.’” *Haleon*, 2025 WL 2494368, at *8. Plaintiffs’ allegations amply clear that bar.

It is enough to allege that a defendant secretly collected data even when plaintiffs were not on the defendant’s website. *In re Facebook*, 956 F.3d at 606 (“Plaintiffs’ allegations of surreptitious data collection when individuals were not using Facebook are sufficient to survive” MTD); *see also Lewis*, 2025 WL 3687546, at *9 (“[C]onduct is more likely to be highly offensive where the defendant surreptitiously collect[ed] sensitive information[.]”). Plaintiffs make that very allegation. ¶¶2, 3, 18, 43, 61, 86. A plaintiff can also establish “a highly offensive breach of norms” sufficient to survive dismissal where he alleges that a defendant used software that enabled a third-party “to associate [plaintiff’s] browsing habits with his identity.” *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). Here again, Plaintiffs did so. *See supra* at 3-5. Finally, “‘deceit can be a kind of ‘plus’ factor that is significant in making a privacy intrusion especially offensive.’” *Walsh*, 2025 WL 2939229, at *14. In *Walsh*, it was sufficient

that Plaintiffs alleged Dollar Tree collected data that it said on its website it would not collect without consent. *Id.* Here, Lowes did that too. ¶¶94, 95.

At minimum, Defendant's dispute over these facts cannot be resolved as a matter of law now. *See In re Facebook*, 956 F.3d at 606 (whether tracking would highly offend a reasonable individual cannot be resolved at the pleading stage); *Haleon*, 2025 WL 2494368, at *8 (same); *de Ayora*, 2025 WL 3707561, at *3 (same); *Motorola Mobility LLC*, 2025 WL 1939957, at *10 (same).

**3. Defendant's Remaining Arguments Are Unpersuasive**

Defendant's remaining arguments similarly require the Court to ignore Plaintiffs' well-pled allegations, which it cannot do at this stage.

Lowes argues Plaintiffs allege "no facts about their own visits to the Website" (MTD at 8), never mind that an entire section of the Complaint is dedicated to "Plaintiffs' Use of the Lowes Website." ¶¶82-87. In support of this argument, Defendant lists thirteen pieces of information Plaintiffs purportedly omitted from their Complaint. Several of these are plain wrong. *Compare* MTD at 8 ("Plaintiffs ***do not*** allege: (1) when they specifically visited the Website … (9) what 'electronic impulses' of theirs were captured (if any)") *with* ¶¶82, 83 (providing that very information). But, more fundamentally, Defendant cites no authority for the position that its identified defects are necessary to establish standing, relying instead on inapposite cases. *Hartley v. Urban Outfitters, Inc.*, 740 F. Supp. 3d 410 (E.D. Pa. 2024) is an out of Circuit decision involving different technology that the court explicitly stated could not be "compared to other tracking-pixel cases involving third-party disclosures." *Id.* at 419. Same in *Gary v. Dynatrace, Inc.*, 747 F. Supp. 3d 245 (D. Mass. 2024), where the Massachusetts court distinguished the session-replay technology at issue from allegations concerning tracking technology for targeted advertising, which suffices for Article III. *Id.* at 249. That leaves *Wooten v. Biolife Plasma Services*, 807 F. Supp. 3d 1139 (E.D. Cal. 2025), where the plaintiffs alleged only the "one-time collection of their IP and email addresses" (*id.*

at 1145), far less invasive privacy violations than what Plaintiffs allege. ¶¶83-84.

Defendant also cites cases it says stand for the general proposition that courts reject privacy claims based on website tracking. MTD at 6-8. Each is distinguishable. In *Rodriguez v. Culligan International Company*, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025), the plaintiff only adequately pled IP address collection and made "no effort to establish a close relationship between her purported injury and a traditional harm," relying principally on statutory standing. *Id.* at *3; *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *2-5 (S.D.N.Y. Feb. 13, 2025) (same). In *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801 (C.D. Cal. June 27, 2025), meanwhile, the plaintiff alleged only what tracking technology could have done to her, not what it did. *Id.* at *7; *see also Hughes v. Vivint Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (same); *Posadas v. Goodyear Tire & Rubber Co.*, 2024 WL 5114133, at *3-4 (S.D. Cal. Dec. 13, 2024) (same). Several courts based their rulings on a failure to plead that third parties were able to use the collected data to link browsing information to consumer profiles—again, the opposite of what Plaintiffs allege here. *Carolus v. Nextstar Media, Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (distinguishing case from others where "a privacy injury involved disclosure of several types of personal information all linked together, not just IP addresses"); *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *5 (S.D.N.Y. Feb. 18, 2025) (distinguishing case from others where defendants' trackers "allowed them to monitor their web browsing across multiple websites and build detailed profiles based on their internet activity."). Still others concerned different claims and technologies. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (wiretapping claim, where overheard contents not alleged); *Lightoller v. JetBlue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (same, and involving session-replay technology); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 862-865 (S.D. Cal. 2023) (same).

Next, Defendant claims that Plaintiffs lack a legally protected privacy interest

in their IP addresses, Unique IDs, and Device and Browsing Information, and thus cannot have suffered a cognizable privacy injury. MTD 9-13. As an initial matter, a legally protected privacy interest is not a pleading requirement for Article III standing, or even for intrusion upon seclusion; it is, rather, an element of a California *constitutional* claim for invasion of privacy. *See In re Facebook*, 956 F.3d at 601. Moreover, the cases Defendant cites in support are relevant only if you accept Defendant's recasting of the scope of Plaintiffs' alleged harm. None stands for the proposition that a plaintiff lacks Article III standing when he alleges a website collected his IP address, Unique IDs, and Device and Browsing Information, without warning and notwithstanding a contrary promise; shared that information with third parties to resolve his identity and sync him to existing demographic and biographical data; tracked him across the Internet; and used the information to serve him targeted ads, all to a defendant's financial benefit. "[E]ven assuming any particular category of data would in it of itself be insufficient to implicate a reasonable expectation of privacy, 'with the ever-rapid progression of technology and data processing, courts in various contexts have acknowledged the heightened privacy interests implicated by the aggregation of data over time to create detailed profiles about individuals.'" *In re TikTok, Inc., Minor Priv. Litig.*, 2025 WL 3628598, at *16 (C.D. Cal. Nov. 5, 2025), *adopted sub nom.*, 2025 WL 3628448 (C.D. Cal. Nov. 6, 2025).[5]

Finally, assuming the information a website collects is not, in the first instance, personally identifying, it can nevertheless cause a cognizable privacy

[5] *Wright v. TrueCare Property Holdings, Inc.*, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025), which Lowes cites for the proposition that a "tracker's collection of page visit information is not sufficiently 'specific private information' for invasion of privacy, even when merged with Facebook profile information" (MTD at 9), underscores this point. *Wright* does not concern standing. It is a 12(b)(6) case. The court dismissed a constitutional invasion of privacy claim but sustained a CIPA pen register claim on the very same facts. *Id.* at *4-5; *see also* MTD at 10 (citing *Henson v. Turn, Inc.*, 2018 WL 6605624, at *3-4 (N.D. Cal. Dec. 17, 2018) (discussing statutory injury requirement under New York General Business Law)).

injury if it is used to de-anonymize the visitor. *See Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026), at *4 (cognizable privacy harm where "the complaint allege[d] that defendant effectively deanonymized plaintiffs by using the information it gather[ed] to tie plaintiffs to individual profiles."); *Semien*, 2026 WL 216333, at *5 ("Where anonymity is rendered 'functionally meaningless,' lower courts have found 'pseudonymization' arguments unpersuasive."). To the extent Defendant argues the data Lowes collected could not, under any circumstances and in any combination, be used to de-anonymize Plaintiffs as alleged, that is a factual argument—not a legal one—that cannot be resolved now.

### B. Plaintiffs Allege A Concrete Economic Injury

Plaintiffs' concrete privacy injury is sufficient to establish standing, and the Court need not proceed further. But Plaintiffs have also suffered an economic injury, which provides an independent basis for standing under Article III. That economic injury is itself supported by four distinct theories. First, Lowes derived an unlawful economic benefit through the Trackers, and Plaintiffs are entitled to related profits Lowes earned at their expense. Second, because Plaintiffs have a property interest in their personal information, Lowes's secret collection of that information deprived them of their right to exclude others from their property. Third, Lowes caused Plaintiffs harm under a benefit-of-the-bargain theory. And fourth, Lowes deprived Plaintiffs of the ability to control their personal information. Should the Court credit even one of these theories, Defendant's Motion must be denied.

#### 1. Lowes Retains An Unlawful Economic Benefit

Plaintiffs alleged that Lowes installed the Trackers without their consent, that the Trackers "allowed Lowes, in conjunction with TikTok and Microsoft, to match Plaintiffs to pre-existing profiles and track their activity," and that Lowes "used that information to serve Plaintiffs targeted advertisements, which increased Lowes's revenue." ¶104; *see also* ¶¶73-81. Since Plaintiffs "conferred a benefit on Defendant through the use and dissemination of Plaintiff[s'] … personal information

… which Defendant used and disseminated for its own monetary benefit," Defendant caused Plaintiffs a concrete injury. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1038 (S.D. Cal. 2023); *see also Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d. 1075, 1095 (N.D. Cal. 2025) (sustaining unjust enrichment claim where plaintiffs alleged defendant "unjustly profited from tracking, disclosing, and profiting from Plaintiffs … internet activity and real-world activity to third parties without [their] knowledge or consent"); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 605 (N.D. Cal. 2021) (same). In *Greenley*, the plaintiff brought a CIPA pen register claim against a data broker who used tracking technology to secretly collect location and consumer behavior data from app users, aggregated that data, used it to de-anonymize the users, and then sold it for advertising. 684 F. Supp. 3d at 1035-36. Defendant sought to dismiss the complaint for lack of standing because the plaintiff failed to allege "that the collection of data diminished the economic value of Plaintiff's data," but the court rejected the effort. Because "California law recognizes 'an entitlement to unjustly earned profits,' to establish standing, plaintiffs must only establish a stake in profits garnered from their personal data and that it is unjust for the defendant to retain those profits." *Id.* at 1038. Judge Bashant concluded the *Greenley* plaintiff did so, and this Court should too.

Defendant insists that Plaintiffs must allege that they lost money or property. But a plaintiff's right to share in the financial benefits a defendant reaped at his expense "exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *In re Facebook*, 956 F.3d at 600. California law requires disgorgement of unjustly earned profits regardless of whether a plaintiff "directly expend[ed] his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *Id.* It is enough for Article III that a plaintiff plead "unauthorized use of their information for profit." *Id.* at 601; *see also Haleon*, 2025 WL 2494368, at *15 ("even if plaintiffs have suffered no economic loss from the disclosure of their

plausibly private information, they are allowed to proceed through the pleadings stage"). Here, Lowes used visitors' valuable information in advertising, and also traded that information to Microsoft and TikTok in exchange for additional consumer data. The cases Defendant cites to the contrary are inapposite. They are not Article III cases and instead discuss economic loss in the context of statutory standing under California's Unfair Competition Law ("UCL"), which requires plaintiffs have "lost money or property as a result of the unfair competition." In any event, Plaintiffs have adequately pled lost money or property. *See infra* B(2)-(4).[6]

**2. Lowes Deprived Plaintiffs Of Their Right To Exclude**

"California courts have … acknowledged that users have a property interest in their personal information." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021). While some courts have taken a contrary view, "'the prevailing trend' is to recognize a property interest in personal information." *In re TikTok, Inc.*, 2025 WL 3628598, at *21. "'[O]ne of the main rights attaching to property is the right to exclude others.'" *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024). As a result, when a website deprives visitors of their right to exclude the website from their personal information, or deprives them of their right to prevent the disclosure of that same information to third parties, the website causes visitors a cognizable economic injury. *Id.* In *Meta Pixel*, the court concluded that the tracking technology—which collected information from the plaintiffs as they visited third-party websites—deprived plaintiffs of their right to exclude Meta from their intangible property (*i.e.*, their personal information), and thus gave rise to an economic injury under California's UCL. *Id.* at 1024-25. So too in *In re TikTok.*

---

[6] *Doe I v. Google, Inc.*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024) (discussing UCL economic injury requirement); *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (same); *In re Facebook*, 402 F. Supp. at 804 (same); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039-40 (N.D. Cal. 2019) (same). CIPA does not require actual damages (Cal. Penal Code § 637.2(c)), and even if it did, that would raise a question of statutory, not constitutional, standing.

2025 WL 3628598, at *21-22 ("Plaintiffs have … alleged sufficient facts from which the Court may infer a deprivation of their right to exclude."). Here, Plaintiffs allege that Lowes "misappropriated Plaintiffs' data," deprived them of their right to "prevent its disclosure" (¶103), facilitated their de-anonymization (¶84), and did so without Plaintiffs' consent (¶16). In other words, Lowes deprived Plaintiffs of their right to exclude Lowes from their personal information—an economic injury sufficient to support standing under Article III.[7]

### 3. Lowes Deprived Plaintiffs Of The Benefit Of Their Bargain

A website user suffers an injury to money or property when she enters a transaction "with an understanding that certain data will not be collected or shared but the data is in fact collected or shared." *In re Meta Pixel*, 724 F. Supp. 3d at 1024. "This logic applies with equal force to free services, because a user willing to provide certain information with expectations of security in exchange for a free service may not have been willing to do so without compensation if they realized what would actually happen to their information." *Id.* "Any time a user transacts with a business or other entity and their expectations regarding their personal data are not met … they can establish … standing by showing that they had to 'surrender ... more, or acquire ... less' than they otherwise would have." *Id.*; *see also Brown v. Google LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (plaintiffs adequately alleged economic injury because they "provided valuable data to Google and … received *no money* in return"). Plaintiffs' allegations fit squarely within this theory. They visited the Website with "no way of knowing that Lowes was collecting their personally identifying and addressing information, including their IP addresses, Device and Browsing Data, and Unique IDs" (¶86), data which was quantifiably

[7] *TikTok* and *Meta Pixel* both discuss economic injury in the context of statutory standing under the UCL. They are nonetheless relevant because "the injury of lost money or property that is required for a UCL claim is also sufficient for Article III standing." *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 920 (N.D. Cal. 2015).

valuable to Lowes (¶¶73-81).

### 4. Lowes Deprived Plaintiffs Of The Right To Control Their Personal Information

Last, the diminution in the market value of a plaintiff's personal information resulting from the loss of control of their property constitutes economic injury. *See In re TikTok*, 2025 WL 3628598, at *19-20. To plead a loss of control theory, it is enough to identify a market for the data—*i.e.*, that it is "valuable generally and … specifically valuable to [the] Defendant[]." *Id.* at *20. A plaintiff need not plead additional facts, "such as an attempt to regain control of their data." *Id.*; *cf. Brown*, 2021 WL 6064009, at *15 (finding that plaintiffs had alleged economic injury, on a diminution in value theory, because "it is plausible that Plaintiffs will decide to sell their data at some point."); *Turner v. Google LLC*, 737 F. Supp. 3d 869, 881-82 (N.D. Cal. 2024) (sufficient for standing to allege "a market for their data" where defendants collected personal information from app users without consent). Plaintiffs have done so here. They alleged the existence of "a market for [their] data" (¶103), the "appropriate value" in that market being either "the consumer's willingness to accept compensation to sell her data or the consumer's willingness to pay to protect her information." ¶80. They have also alleged the data was specifically valuable to Lowes. ¶¶73-81. Lowes's misappropriation of their information "caused [Plaintiffs] to suffer an economic injury because it frustrated their ability either to sell their data or pay to prevent its disclosure"—i.e., to participate in that market. ¶103. Plaintiffs thus "adequately plead[ed] an economic injury under their loss of control theory." *In re TikTok*, 2025 WL 3628598, at *20.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied.

DATED: March 13, 2026

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Avi Josefson*
Avi Josefson (admitted *pro hac vice*)
N.Y. Bar No. 4149407
avi@blbglaw.com
Michael Blatchley (admitted *pro hac vice*)
N.Y. Bar No. 4747424
michaelb@blbglaw.com
Todd Clayton (admitted *pro hac vice*)
N.Y. Bar No. 5757679
todd.clayton@blbglaw.com
Tal E. Avrhami (admitted *pro hac vice*)
N.Y. Bar No. 6105399
tal.avrhami@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

-and-

Jonathan D. Uslaner (Cal. Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

**DON BIVENS PLLC**
Don Bivens (*pro hac vice* forthcoming)
don@donbivens.com
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Tel: (602) 762-2661

*Counsel for Plaintiffs*