Bethany G. Lukitsch (SBN 314376)
blukitsch@bakerlaw.com
Kamran B. Ahmadian (SBN 314566)
kahmadian@bakerlaw.com
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310-820-8800
Facsimile: 310-820-8859

Michael A. Kushner (SBN 335840)
mkushner@bakerlaw.com
**BAKER & HOSTETLER LLP**
600 Anton Blvd., Suite 900
Costa Mesa, CA 92626-7221
Telephone: 714-754-6600
Facsimile: 714-754-6611

*Attorneys for Defendant*
LOWE'S HOME CENTERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JUSTIN BRADSHAW and GUSTAVO LOPEZ, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LOWE'S HOME CENTERS, LLC, a North Carolina limited liability company,

Defendant.

Case No.: 3:25-cv-00742-DMS-MMP

[*Assigned to the Hon. Dana M. Sabraw*]

**DEFENDANT LOWE'S HOME CENTERS, LLC's REPLY TO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE § 638.51)**

Date: March 27, 2026
Time: 1:30 p.m.
Courtroom: 13A

# I. INTRODUCTION

Despite two opportunities to amend their Complaint and a specific roadmap from the Court's Motion to Dismiss First Amended Complaint Order ("MTD FAC Order"), Plaintiffs' SAC fails to allege **any plaintiff-specific facts** showing that *their* data (rather than a hypothetical visitor's) was collected, disclosed, or linked to an identifiable profile. That failure is dispositive under Article III and this Court's prior order. Plaintiffs' Opposition claims their amendments supply the missing detail about their own experiences. It does not. The six paragraphs of the SAC specifically addressing Plaintiffs' use of the Website (SAC, ¶¶ 82-87) still lack any meaningful detail regarding the alleged "data" collection for the Court to analyze or conclude that standing exists under *Popa*.[1]

This Court already has rejected standing where Plaintiffs' claim was "limited to the capture of their IP addresses" and similar non-identifying data. The SAC does not cure that defect - it repackages the same alleged data (IP address, device information, URLs) while adding only speculative assertions about what third-party technology *could* do. These pleading gaps dictate that Plaintiffs have failed to allege a concrete privacy or economic harm for Article III standing, necessitating dismissal.

# II. ARGUMENT

## A. Plaintiffs Still Have Not Alleged a Cognizable Article III Harm.

### 1. Plaintiffs have not alleged a concrete privacy harm.

Plaintiffs fail to provide any specific facts regarding the information allegedly collected by the Trackers to raise plausible harm. (SAC, ¶¶ 82-87; Opposition to MTD SAC ("Opp."), 5.) Other than adding a few dates, these paragraphs merely allege more conclusory, and even contradictory, generalities.[2] For example,

---

[1] Contrary to Plaintiffs' assertion, Lowe's does not concede that the trackers which are alleged to collect IP address, device and browsing data and unique IDs, constitute a trap and trace device under CIPA. However, because the Court previously found that these barebones allegations that existed in the FAC were sufficient to state a claim, Lowe's did not reargue its original motion on 12(b)(6) grounds. That, however, does not preclude subsequent arguments at the summary judgment phase should the SAC survive the current standing challenge.

[2] Even Plaintiffs' conclusory allegations as to whether "pre-existing, comprehensive, cradle-to-grave consumer profiles" existed for these Plaintiffs contradict each other. *Compare* SAC, ¶ 83 ("TikTok and Microsoft used the

Plaintiffs do not allege: (1) creating or operating TikTok or Microsoft accounts (such that any profile could be matched); (2) visiting any non-Lowe's website that contained a referral link to the Lowe's website such that a referral url was tracked; (3) visiting any non-Lowe's website that use the TikTok or Microsoft trackers (so as to collect information for consumer profiles); (4) submitting personal identifiers (e.g. name, address, email address, etc.) to the Website; (5) visiting any other webpage of the Lowe's website other than the homepage; or (6) what specific "personal" or "private" information about Plaintiffs was collected through any web activity.

Without *any* of this information, Plaintiffs' argument that they suffered the requisite harm fails. *Ashcroft v. Iqbal* demands more than "naked assertions devoid of further factual enhancement," 556 U.S. 662, 678 (2009), and *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), demands analyzing those specific factual allegations as to the named Plaintiffs for standing.[3] That some collection of referrers, sensitive data or complete "cradle-to-grave" profiles *could have* been created for an unnamed class member does not establish standing as to Plaintiffs.[4]

Like the MTD FAC Order, many post-*Popa* decisions echo *Popa*'s sentiment that there is no cognizable harm caused by the collection of data from website trackers, *even when more specifically alleged collected information is shared with third-parties* to create consumer profiles. *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) (Battaglia, J.) (no standing for information collected via trackers on verywellhealth.com and used to construct "detailed consumer profiles"); *Dawidzik v. Telsa, Inc.*, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) (no standing for information collected via trackers and circulated for creating

---

collected data to match Plaintiffs to pre-existing profiles") with SAC, ¶ 84 ("Lowes, TikTok, and Microsoft used the data collected from Plaintiffs (i) to identify Plaintiffs *and either create new profiles for Plaintiffs* or match Plaintiffs to pre-existing profiles." (emph. added).).

[3] Plaintiffs' "de-anonymization" theory is likewise entirely speculative. It assumes (without factual allegations) that (1) Plaintiffs' data was transmitted, (2) that data was linked to an existing profile, and (3) that such a profile identified Plaintiffs as individuals. The SAC pleads none of these steps as to Plaintiffs.

[4] *Pence v. Andrus*, 586 F.2d 733, 737-38 (9th Cir. 1978) (named plaintiff "'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class.'").





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"comprehensive user profiles"); *Rodriguez v. Brushfire Records*, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) (no standing for information collected via trackers and circulated for matching with existing data); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) (Battaglia, J.) (no standing for information collected via trackers and circulated to create "behavioral profile"); *Wooten v. BioLife Plasma Services L.P.,* 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) (no standing for information collected via trackers and circulated for "ID Bridging" process that aggregates identifiers).

***a. Plaintiffs did not suffer a loss of control of their information.***

Plaintiffs allege a cognizable harm based on interference with the ability to control the dissemination of their information. As support, Plaintiffs rely heavily on *In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook*"), 956 F.3d 589 (9th Cir. 2020), a case already distinguished by this Court's MTD FAC Order. As previously acknowledged by this Court, *Facebook*'s facts are distinguishable from any non-conclusory facts in the SAC regarding Plaintiffs' visits, and their reliance on *Facebook* is misplaced. Critically, *Facebook* involved the collection of identifiable and sensitive user information tied to specific individuals, including detailed personal attributes. Here, Plaintiffs allege only anonymized technical identifiers with no facts showing linkage to their identities. That distinction is dispositive.

In *Popa*, an e-commerce pet shop installed Microsoft's session-replay technology on its website, collecting mouse movements, clicks, keystrokes, URLs, and other browsing information. *Id.* at 786. Plaintiffs argued that Article III standing was satisfied simply by suing under a statute protecting a substantive right to privacy, per *Facebook*. The Ninth Circuit disagreed, finding that "[*Facebook*'s] analysis finds no support in *TransUnion*." *Id.* at 794. The Ninth Circuit clarified that *Facebook* did not "greenlight[] a per se rule for privacy statutes." *Id.*

/ / /



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Importantly, the Court in *Popa* analyzed the specific data alleged to have been collected during plaintiff's visit to the e-commerce website and concluded that none of that data could create a privacy harm sufficient to confer standing. *Id.* at 791 (mouse movements, clicks, keystrokes, URLs of webpages visited, and other electronic communications do not constitute "embarrassing, invasive, or otherwise private information" for privacy injury). The same is true here. Plaintiffs allege collection of only basic browsing data (IP addresses, URLs, and device information) that is materially indistinguishable from the non-sensitive data in *Popa*.

Sister courts have already rejected applying *Facebook* to website tracking cases like this one. In *Wooten*, plaintiffs alleged a one-time collection of their IP and email addresses through trackers on defendant's website. 807 F.Supp.3d at 1141. Plaintiff argued *Facebook* justified an intrusion upon seclusion injury for standing purposes, but Judge Sherriff disagreed, noting that plaintiff misinterpreted *Facebook* because "the invasive nature of the information collected [in *Facebook*] was crucial to Facebook's holding." *Id.* at 1145. Unlike *Facebook*, the *Wooten* plaintiff did not allege the third-party trackers collected any "embarrassing, invasive, or otherwise private information," (*Id.*) which was fatal to plaintiff's standing argument. *See also Maghoney*, 2026 WL 497402 at *5 (search queries, page navigation history, and metadata associated with site visit, including IP address and device identifiers, do not constitute personally identifiable information).

This Court need not reference sister courts to find *Facebook* inapplicable: *it has already done so* by finding two critical differences that make *Facebook* inapt: (1) there is no similar well-pled allegation here of continuous collection *of Plaintiffs' data* by defendant after leaving the Website; and (2) the nature of information collected in *Facebook* is much more invasive. (MTD FAC Order, 11:3-20.) These distinctions still ring true, even as to the SAC. Plaintiffs do not allege any specific data was collected, only repeating generic categories like IP addresses, device data and undefined "browsing history." (*See* SAC, ¶¶ 82-87.) Moreover, even if the Court

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

considered SAC allegations regarding a hypothetical visitor's experience with the Website to analyze Plaintiffs' standing (it should not), Lowe's only collected information from *its own Website* (*Id.*, ¶¶ 47, 64), and the information collected is a far cry in sensitivity from the information in *Facebook*, which included employment history and political and religious affiliations. Because Plaintiffs' SAC amendments do not cure these distinctions, *Facebook* is inapt.

Plaintiffs' other cited cases (also already considered) are distinguishable. *De Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025), dismissed on Rule 12(b)(6) grounds, involved the alleged collection of various personal data despite Plaintiffs' express rejection of that collection through the websites' cookie banner. *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025), previously considered, is inapt for the same reason—plaintiff alleged defendant ignored his affirmative express request to reject cookies, thereby collecting data against his wishes. *Haleon*'s websites also involved medications and health, such that the court found "information put into Haleon's website is likely more sensitive than [information on a pet food website]." *Id.* at *7; *cf. Maghoney*, 2026 WL 497402 at *5 (informational health website is "not a patient portal").

***b. Plaintiffs have not pled an intrusion upon seclusion.***

*(1) No reasonable expectation of privacy existed.*

There is no reasonable expectation of privacy in the information Lowe's collected. This Court found no reasonable expectation of privacy in an IP address. (MTD FAC Order, 9:1-27.) Plaintiffs, however, added no detail in their SAC that would suggest that other categories of Plaintiffs' data—"Device and Browsing Data" and "Unique IDs"—allegedly collected by the trackers, deserve such protections. (SAC ¶¶ 82-87.) For example, Plaintiffs allege in a conclusory fashion that a referral url from a sensitive website (i.e. browsing history) *could be* collected. But they do not allege coming to the Lowe's website from any such website where they had a reasonable expectation of privacy in the referral url, let alone a plausible explanation



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

why a sensitive website would link to Lowe's' website. Similarly, while Plaintiffs allege Lowe's sells some health-related supplies (i.e. crutches), Plaintiffs fail to allege they visited webpages containing those supplies or that there was some data identifying them (not their device) collected in conjunction with that browsing history. *Cf Maghoney*, 2026 WL 497402 at *5 ("*search*[ing] sensitive health related terms" on health website cannot be tied to website visitor's personal medical history and does not constitute a legally protected privacy interest. (emph. added)). Absent such showing, even if the data alleged to be collected is "routing, addressing or signaling information"—a fact disputed by Lowe's, any collection of this undefined data cannot sustain standing. (MTD FAC Order, 9:23-25.)

The SAC attempts to address this void by adding in a conclusory fashion that "Unique IDs are 'routing, addressing, or signaling' information because they are used to tie a Website user to TikTok and Microsoft's databases and repositories of information about the user, determine the user's identity, and follow the user as he moves across the internet." (SAC, ¶ 119.) But Plaintiffs do not explain *how* having said qualities make Unique IDs 'routing, addressing, or signaling' information as to Plaintiffs who do not allege they have TikTok or Microsoft accounts. The only other support for this assessment is from a single sentence from an unpublished sister court in *Fregosa v. Mashable*, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025), concluding that "[d]evice 'fingerprints' likewise serve as unique identifiers across websites and browsing sessions." *Id.* at *5. Even assuming that device 'fingerprints' are the same as the vaguely pled "device information" collected, this non-binding assertion is conclusory and should be disregarded.[5]

Likewise, Lowe's' Privacy Policy's terms should not influence a reasonable expectation of privacy as to Plaintiffs ***because Plaintiffs do not allege reading them***. While courts assess a reasonable expectation of privacy objectively, the objective

---

[5] *See Loritz v. U.S. Ct. of Appeals for the Ninth Cir.*, 382 F.3d 990, 992 (9th Cir. 2004) (plaintiff has "burden of alleging specific facts sufficient to satisfy the standing elements.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

analysis still must consider and be interpreted as to Plaintiffs' specific circumstances. Accordingly, proper framing of the reasonable expectation of privacy analysis means assessing, from an objective standard, whether plaintiffs *that have not read the Privacy Policy* would possess a reasonable expectation of privacy in the information collected from a visit to the public website. In other words, the Privacy Policy terms still should not affect the reasonable expectation of privacy analysis because the Plaintiffs' specific circumstances did not include reading those terms. *See Rodriguez v. Google LLC*, (N.D. Cal. Jan. 3, 2024) (objective test permits examination of "the surrounding circumstances" for reasonable expectation of privacy analysis); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994) (privacy interest "is not independent of the circumstances").

In addition, though Plaintiffs argue the CCPA's definition of "personal information" may factor into "customs, practices, and circumstances" surrounding data collection, Plaintiffs have failed to explain *how* any information collected regarding Plaintiffs "can be linked to a particular consumer or household," which Lowe's has provided strong arguments against. Indeed, given that a single IP address or device can be used by multiple people and Plaintiffs make no allegations that they typed in their name, e-mail or any other potentially identifying information into the Website, Plaintiffs' conclusory allegation is insufficient to make that showing.

The ubiquity of such data collection undermines any claimed reasonable expectation of privacy exists, fitting squarely within the "customs, practices, and circumstances" of the purported collection. *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (dismissal of privacy claims because "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much."); *In re Nickolodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016) ("Most of us understand that what we do on the Internet is not completely private"); *Popa v. Harriet Carter Gifts, Inc.*, 772 F.Supp.3d 592, 602 (W.D. Pa. 2025) (lower



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

expectation of privacy on internet than on telephone, which "lacks the 'entire system of trackers, cookies, and algorithms' commonly, if not ubiquitously, implicated in the use of a website").

Plaintiffs' cases cited are distinguishable. *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) is inapt because the court found a reasonable expectation of privacy based on a cookie banner describing cookie practices and permitting visitors to reject cookies, a critical fact not present here. *Lewis v. Magnite, Inc.* 2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) also differs as far more intrusive information was allegedly collected there, including "personal characteristics, modes of living, purchase decisions, app selections, [and] spending habits." *Id.* at *3.

*(2) Lowe's did not commit a highly offensive intrusion.*

The SAC does not allege facts showing a highly offensive intrusion and the cases cited as support are inapposite. *Facebook*'s intrusion was a "continuous" collection of browsing histories "no matter how sensitive or personal," including employment history and political and religious affiliations, and occurring after users logged off Facebook; none of these factors are present here. *Lewis* also included a greater intrusion with more sensitive information collected, as did *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), where the website technology scanned plaintiff's computer files for identifiable information. *Id. at *3.* *Walsh*'s point that deceit can be a "plus factor" is inapt even if the Privacy Policy were to contradict Defendant's sharing practices (a point Lowe's disputes) as Plaintiffs do not allege reading it. 2025 WL 2939229, at *14.

**2. <u>Plaintiffs have not alleged a cognizable economic harm.</u>**

Plaintiffs raise four distinct economic harms that they purportedly suffered: (1) Lowe's retained an unlawful economic benefit; (2) Lowe's deprived Plaintiffs of their right to exclude others from accessing their information; (3) Lowe's deprived Plaintiffs of their benefit of the bargain; and (4) Lowe's deprived

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs of the right to control their personal information. (Opp., Section B.) To succeed on any theory, Plaintiffs must show, *at the very least*, that the information collected—IP address, MUID, device information, or browser information—either (1) constitutes "personal information"; (2) holds standalone value; or (3) was unlawfully collected by Lowe's. Plaintiffs cannot do so.

***a. Lowe's did not retain an unlawful economic benefit.***

Plaintiffs allege that Lowe's was conferred a monetary benefit by using and disseminating Plaintiffs' "personal information." Plaintiffs rely heavily on *Greenley v. Kochava,* 684 F. Supp. 3d 1024, 1038 (S.D. Cal. 2023), a non-binding decision that did not establish a *per se* rule for cognizable financial harm, but instead involved a data broker who allegedly sold the collected personal data for profit. *Id.* at 1035. No similar facts exist here. Plaintiffs have not alleged any specific personal data of theirs that was collected, let alone sold by Lowe's or used by Lowe's in some way to advertise. *Facebook* and *Haleon* plead an *unjust enrichment* injury, which requires an "unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (Cal. Ct. App. 2000). Plaintiffs have failed to allege that Lowe's' collection was either unjust or at Plaintiffs' expense. Lastly, Plaintiffs have already identified that UCL standing claims are relevant for Article III standing. (*See* Opp., 24:26-28, fn. 7).

***b. Lowe's did not deprive Plaintiffs of their right to exclude.***

Plaintiffs also claim Lowe's purportedly deprived them from excluding others from their "personal information." But again, Plaintiffs fail to plead that the information collected—IP address, MUID, device information, and browser information—is "personal information." *In re Meta Pixel Tax Filing Cases*, 724 F.Supp.3d 987, 1024 (N.D. Cal. 2024), actually supports Lowe's' position. There, the court found only that "*certain kinds* of personal data" enjoy a privacy right (their tax return information), such that they also enjoy an accompanying right to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

exclude. *Id.* at 1024 (emph. added). Because Plaintiffs there alleged Meta collected "personally identifiable financial and tax data and communications" deemed "confidential and valuable," a right to exclude was conferred. That is a far cry from the IP address, MUID, non-specific device information, and undefined browser information of Plaintiffs here. *In re TikTok, Inc., Minor Priv. Litig.* is also amiss, as that case involved collecting faceprints and voiceprints of children on TikTok, profile information, videos viewed and created, messages, and purchase information. 2025 WL 3628598 (N.D. Cal. 2025).

#### c. *Lowe's did not deprive Plaintiffs' benefit of their bargain.*

Plaintiffs do not allege what "transaction" was entered by visiting Lowe's' free Website that would give rise to any plausible economic harm. And, no such "transaction" exists.

#### d. *Lowe's did not deprive Plaintiffs of the right to control their personal information.*

Lastly, Plaintiffs argue that Lowe's' collection ostensibly caused a "diminution in the market value" of their "personal information" via the "loss of control" of their property. While the SAC generally alleges a market exists for certain data collected, it does not plead Plaintiffs were willing to sell their own data (a concept contrary to their allegations) or that they suffered any diminution in market value to *their* own personal data. *Maghoney*, 2026 WL 497402, at *6 (informational injury only when "statute provides a right to information" and deprivation of right "result[s] in an informational harm").

## III. <u>CONCLUSION</u>

Plaintiffs have now had multiple opportunities— and a clear roadmap from this Court—to allege a concrete injury. Their continued reliance on speculation and generalized allegations confirms that further amendment would be futile. Thus, Lowe's respectfully requests that the Court dismiss Plaintiffs' SAC with prejudice.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Dated: March 20, 2026

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Kamran B. Ahmadian
Michael A. Kushner

*Attorneys for Defendant*
LOWE'S HOME CENTERS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES